# Exhibit B



**CAPES • SOKOL**

Attorneys at Law

Michelle F. Schwerin
Phone: ████████
Fax: ████████
Email: ████████████

April 1, 2020

<u>Certified Mail-Return Receipt Requested</u>
Internal Revenue Service Center
████████
Ogden, UT 84409

Re:     Raju Mukhi **–** SS# ████-8618
        Claim for Refund **–**  Form 3520 Penalties (2005 through 2008)
                        Form 3520-A Penalties (2005 through 2010)

Dear Sir or Madam:

      We are counsel for above-referenced taxpayer. A Form 2848 Power of Attorney is on file with the Internal Revenue Service.

      Enclosed please find ten (10) Forms 843, Claim for Refund/Request for Abatement, along with Attachments. Below is a summary of each of the Forms 843:

| Tax Year | Penalty | Amount to be Refunded | Amount to be Abated |
|----------|---------|----------------------|---------------------|
| 2005 | 3520 | $5,000.00 | $1,639,975.00 |
| 2006 | 3520 | $5,000.00 | $991,148.00 |
| 2007 | 3520 | $5,000.00 | $798,624.00 |
| 2008 | 3520 | $5,000.00 | $1,649,702.00 |
| 2005 | 3520-A | $5,000.00 | $791,273.00 |
| 2006 | 3520-A | $5,000.00 | $2,281,882.00 |
| 2007 | 3520-A | $5,000.00 | $2,137,028.00 |
| 2008 | 3520-A | $5,000.00 | $469,496.00 |
| 2009 | 3520-A | $118,118.00 | $118,118.00 |
| 2010 | 3520-A | $5,000.00 | $122,622.00 |

# CAPES · SOKOL

Each the Forms 843 has a corresponding payment check. Each check includes a note on its face indicating which period and to which penalty the payment should be applied.  Please apply the payments as noted on the check and summarized below:

| Check Number | Check Amount | To be applied to Tax Year: | To be applied to Penalty: |
|---|---|---|---|
| 1270 | $5,000.00 | 2005 | 3520 |
| 1271 | $5,000.00 | 2006 | 3520 |
| 1272 | $5,000.00 | 2007 | 3520 |
| 1273 | $5,000.00 | 2008 | 3520 |
| 1274 | $5,000.00 | 2005 | 3520-A |
| 1275 | $5,000.00 | 2006 | 3520-A |
| 1276 | $5,000.00 | 2007 | 3520-A |
| 1277 | $5,000.00 | 2008 | 3520-A |
| 1278 | $118,118.00 | 2009 | 3520-A |
| 1279 | $5,000.00 | 2010 | 3520-A |

Please file and process on behalf of taxpayer.  Thank you.

Very Truly Yours,

Michelle Schwerin

Enclosures, as stated

Form **843**
(Rev. August 2011)
Department of the Treasury
Internal Revenue Service

## Claim for Refund and Request for Abatement

▶ See separate instructions.

OMB No. 1545-0024

Use Form 843 if your claim or request involves:

(a) a refund of one of the taxes (other than income taxes or an employer's claim for FICA tax, RRTA tax, or income tax withholding) or a fee, shown on line 3,

(b) an abatement of FUTA tax or certain excise taxes, or

(c) a refund or abatement of interest, penalties, or additions to tax for one of the reasons shown on line 5a.

Do not use Form 843 if your claim or request involves:

(a) an overpayment of income taxes or an employer's claim for FICA tax, RRTA tax, or income tax withholding (use the appropriate amended tax return),

(b) a refund of excise taxes based on the nontaxable use or sale of fuels, or

(c) an overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.

| Name(s) | Your social security number |
|---|---|
| Raju J. Mukhi | |
| Address (number, street, and room or suite no.) | Spouse's social security number |
| | |
| City or town, state, and ZIP code | Employer identification number (EIN) |
| St. Louis, MO 63141 | |
| Name and address shown on return if different from above | Daytime telephone number |
| | |

| | | | |
|---|---|---|---|
| **1** | **Period.** Prepare a separate Form 843 for each tax period or fee year. | **2** | **Amount** to be refunded or abated: |
| | From  01/01/2005  to  12/31/2005 | | $  5,000.00/$1,639,975.00 |

**3** **Type of tax or fee.** Indicate the type of tax or fee to be refunded or abated or to which the interest, penalty, or addition to tax is related.

☐ Employment    ☐ Estate    ☐ Gift    ☐ Excise    ☐ Income    ☐ Fee

**4** **Type of penalty.** If the claim or request involves a penalty, enter the Internal Revenue Code section on which the penalty is based (see instructions). IRC section:  6677(a)

**5a** **Interest, penalties, and additions to tax.** Check the box that indicates your reason for the request for refund or abatement. (If none apply, go to line 6.)

☐ Interest was assessed as a result of IRS errors or delays.

☐ A penalty or addition to tax was the result of erroneous written advice from the IRS.

☑ Reasonable cause or other reason allowed under the law (other than erroneous written advice) can be shown for not assessing a penalty or addition to tax.

**b** Date(s) of payment(s) ▶ _____ 04/01/2020

**6** **Original return.** Indicate the type of fee or return, if any, filed to which the tax, interest, penalty, or addition to tax relates.

☐ 706    ☐ 709    ☐ 940    ☐ 941    ☐ 943    ☐ 945
☐ 990-PF    ☐ 1040    ☐ 1120    ☐ 4720    ☑ Other (specify) ▶  3520

**7** **Explanation.** Explain why you believe this claim or request should be allowed and show the computation of the amount shown on line 2. If you need more space, attach additional sheets.

Please see attached statement.

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the officer's title must be shown.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature (Title, if applicable. Claims by corporations must be signed by an officer.)      Date  3/31/20,

Signature (spouse, if joint return)      Date

| **Paid Preparer Use Only** | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | Firm's name  ▶ | | | Firm's EIN ▶ | |
| | Firm's address ▶ | | | Phone no. | |

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.      Cat. No. 10180R      Form **843** (Rev. 8-2011)

## EXPLANATION OF CIRCUMSTANCES IN SUPPORT OF FORMS 843

Taxpayer, Raju Mukhi, is claiming a refund and abatement[1] of Form 3520 penalties listed on the face of this Form 843. The Form 3520 penalties were assessed under 26 U.S.C. § 6677, as set forth in the IRS's Letter 3946 with enclosures dated September 6, 2017. A copy of that Letter (without enclosures[2]) in enclosed as *Exhibit 1*.

In asserting these penalties, the Government erroneously assumed that Sukhmani Gurkukh Nivas Foundation ("SGN Foundation") was a foreign trust that engaged in transactions with and held assets of foreign entities.

The penalties assessed are improper. The payments made toward those penalties should be refunded and the penalties abated in their entirety for the following reasons:

1.  No Penalty Should be Imposed

    a.  *The Government cannot demonstrate that the SGN Foundation is a Foreign Trust, a prerequisite to asserting a 3520 penalty*

As an initial matter, the Government bears the burden of proof to establish that a taxpayer owes a penalty. "Notwithstanding any other provision of this title, the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty . . . imposed by this title." IRC §7491(c). To meet its burden, and for the presumption of correctness to apply to the proposed penalties, the government must produce "sufficient evidence indicating that it is appropriate to impose the relevant penalty." *Higbee v. Comm'r*, 116 T.C. 438, 446 (2001). *See also* Non Docketed Service Advice Review, IRS NSAR 20062701F (applying this standard to a penalty imposed under section 6677). The Taxpayer respectfully contends that the Government cannot sustain its burden.

In this case, the Government must first show that the Taxpayer had a duty to file a Form 3520 for any of the years in question. The Government claims that the Taxpayer had a duty, under IRC §6048(a), because the Taxpayer was a United States person who transferred money to the Sukhmani Gurkukh Nivas Foundation, a foreign trust. The Government also claims that the Taxpayer had a duty, under IRC §6048(c), because the Taxpayer was a United States person who received distributions from the Foundation.

The Government, however, cannot sustain its burden of proof because the Government cannot establish that the Foundation constitutes a trust under the internal revenue laws. "[T]he term 'trust' as used in the Internal Revenue Code refers to an arrangement created either by a will or by an inter vivos declaration whereby trustees take title to property for the purpose of protecting or conserving it for the beneficiaries." Treas.Reg. §301.7701-4(a). *See also* Rev.Rul. 2013-14,

---

[1] Taxpayer included two amounts in Box 2 on the face of Form 843. The first amount is the amount to be refunded. The second amount is the amount to be abated.

[2] Upon request, Taxpayer will provide a copy of the enclosures.

2013-26 IRB 1267 (where a trustee's only responsibility was to hold property and transfer title to it at the direction of the taxpayer, "a trust was not established" for federal tax purposes even though arrangement was formally denominated a trust and even though local law might have recognized the arrangement as a trust; "the trustee was a mere agent for the holding and transfer of title to the real property, and the taxpayer retained direct ownership of the real property for federal income tax purposes"). As the Revenue Agent noted, the Government has been unable to obtain the creation documents for the Foundation. *See Exhibit 1*. The Taxpayer respectfully submits that without these documents the Government cannot establish that the Foundation meets the definition of a trust. Absent proof of a trust, no obligation to file Forms 3520 can exist, and, therefore, no penalty for failing to file such forms can be sustained.

> b. *The Government's assertion of 3520 Penalties is Fundamentally Inconsistent with its position in the Prior Criminal Matter*

Moreover, for the Government to assert now that the bank accounts in question were actually held by a trust would contradict the theory upon which the government proceeded in its criminal case against the Taxpayer, captioned <u>United States v. Muhki</u>, 4:14-cr-00173-AGF. In that case the Government took the position that all bank accounts in question belonged to the Taxpayer and that any entity that purported to hold the accounts was a sham. The government should not now be permitted to invoke the purported existence of the Foundation as the basis for the assertion of millions and millions of dollars in penalties against the Taxpayer.

Certain reports and filings in the course of the criminal case substantiate this position and, if required, the Taxpayer will petition the Court to unseal the records for purposes of this Claim for Refund.

The Criminal Tax Manual, Section 5.01(8), interpreting *Santobello v. New York*, 404 U.S. 257 (1971), recognizes that the plea agreement is a contract between the government and the individual:

> Plea agreements are more than mere contracts, though. Because they necessarily implicate a criminal defendant's fundamental constitutional rights, and in light of the investigative and prosecutorial power of the government, the interpretation of plea agreements is subject to due process constraints to ensure that the plea bargaining defendant receives all that is due from the government.

Here, the Government and the Taxpayer agreed to treat as a sham certain foreign entities, and further agreed that the income generated by those putative entities was attributable directly to Taxpayer. Taxpayer relied on the Government's representations and position in entering into the Plea Agreement. The Government's position binds the government, including the IRS, in future determinations concerning Taxpayer and the tax years currently at issue.

c. *The Government's assertion of Penalties Violates Taxpayer's Rights under the Eighth Amendment*

Taxpayer respectfully submits that imposition of a Form 3520 penalty in excess of $5 million would represent an unconstitutional excessive fine under the Eighth Amendment to the United States Constitution. "Excessive bail shall not be required, *nor excessive fines imposed*, nor cruel or unusual punishments inflicted." U.S.CONST. AMEND. VIII (emphasis added). One Court recently stated that it does not believe that the Eighth Amendment applies to civil tax penalties but that if the Eighth Amendment does so apply, then penalties imposed for failure to file forms Form 3520-A could, in particular instances, be deemed excessive and unconstitutional. *See In re Wyly*, 552 B.R. 338, 602-24 (Bankr. N.D.Tex. 2016).

Additionally, the penalties are not acceptable under the Eighth Amendment because they do not meet the two-prong test, first set forth in first set forth in *Helvering v. Mitchell*, 303 U.S. 391 (1938): that (a) penalties must exist to protect revenue and (b) penalties must bear a relationship to the government's direct loss. "[T]ax penalties are remedial because they exist as "a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Dewees v. United States*, 272 F. Supp. 3d 96, 100-01 (D.C. Cir. 2019). The penalties asserted here are arbitrary and capricious because they bear no relationship to the loss to the government. Otherwise stated, the penalty structure violates Taxpayer's constitutional rights because the statue under which the penalties are imposed is flawed and does not comply with the requirements of *Helvering v. Mitchell. C.f., Timbs v. Indiana*, 139 S. Ct. 682 (2019).

d. *The Government's assertion of Penalties Violates Taxpayer's Due Process Rights under the Fifth Amendment*

A $5 million penalty under the facts and circumstances of this case constitutes a deprivation of property without due process of law, in contravention of the Fifth Amendment to the Constitution. In this case, the Government would be asking the Taxpayer to pay a huge penalty, calculated on the basis of monies that may have existed during the 2005 through 2008 timeframe but which no longer exist today because they were misappropriated by ING Bank and its personnel in 2010. That is patently unreasonable.

e. *Reasonable Cause Exists to Excuse Taxpayer's Non-Filing of a Form 3520*

In addition, the Taxpayer maintains that, if he had an obligation to File Form 3520, then his failure to have filed the form is excused by reasonable cause. "No penalty shall be imposed by this section on any failure which is shown to be due to reasonable cause and not due to willful neglect." Code §6677(d). "Whether reasonable cause exists depends upon all of the facts and circumstances of the case, including the taxpayer's reason for failing to properly file, and the extent of his efforts to comply . . . . [I]gnorance of the law may provide reasonable cause if . . . '[t]he taxpayer was unaware of a requirement and could not reasonably be expected to know of the requirement.'" *James v. United States*, No. 8-11-cv-271-T-30AEP (M.D.Fla. August 14, 2012)

(available at 2012 WL 3522610) (quoting Internal Revenue Manual). "The determination of whether a taxpayer acted with reasonable cause . . . is made on a case-by-case basis, taking into account all pertinent facts and circumstances . . . . Circumstances that may indicate reasonable cause . . . include an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including the experience, knowledge and education of the taxpayer." Treas.Reg. §1.6664-4(b)(1). In this case, the Taxpayer had no knowledge whatsoever with respect to any kind of filing or reporting obligation he might have had regarding the Foundation. The first time he ever heard of a Form 3520 was in 2016 during the civil examination of this matter. It is not the case that he knew of the obligation and decided not to meet it. It is not the case that he knew of the obligation and erroneously determined that he did not have to comply with it. It is the case that he simply had no personal knowledge as to such an obligation.

2. The Penalty Amount was Improperly Calculated

While the Taxpayer believes, for reasons stated above, that no penalty should be imposed, the Taxpayer also wishes to point out certain errors in the calculation of the penalty that have caused the proposed penalty to be overstated.

First, the calculation, to the extent it is based on money allegedly contributed to the Foundation, overstates that amount. The Revenue Agent's Report identified $9,729,249 as going into the Foundation. Of that amount, the Revenue Agent's Report determined that Sukhmani Partners II Ltd ("SPII"), a British Virgin Islands entity, contributed $5,577,465. The Report, however, calculated the Form 3520 based on all contributions to the Foundation, including those made by SP II. However, only contributions made by a United States person are required to be reported, so the penalty calculation should have excluded the amounts contributed by the non-U.S. business entity.

Second, the calculation is also based on money allegedly distributed by the Foundation to the Taxpayer. The Taxpayer respectfully submits, however, that the Government cannot sustain its burden of proving that all the funds identified as moving from the Foundation to the Taxpayer did, in fact, go to the Taxpayer. Moreover, the Taxpayer respectfully submits that the Government cannot sustain its burden of proving that, if money went to the Taxpayer, such payments represented "distributions", as that terms is used in IRC §6048(c) (United States person must report "distributions" received from a foreign trust). To the extent the Taxpayer received payments from the Foundation that were something other than "distributions," those amounts should not be included in the penalty calculation.

**Internal Revenue Service**                    **Department of the Treasury**

Date:
 09/06/2017
Taxpayer Identification Number:
 xxx-xx-8618
IRS Contact Information:
 Joyce Serangeli

Raju Mukhi

St Louis MO 63141                               M/S 4115/OVDI
                                                Chesterfield, MO 63017
                                                Telephone Number:

                                                Fax Number:

                                                IRS Employee ID Number:

                                                Respond by:


Dear Taxpayer:

**Why We Are Writing to You**
We received your statement for Sukhmani Gurkukh Nivas Foundation        dated September 30, 2016
and found that it does not establish reasonable cause.

You may delegate the duties of filing tax returns; however, it is your responsibility to ensure that all returns are
timely and accurately filed.

You have fulfilled your filing obligations for Sukhmani Gurkukh Nivas Foundation, but you filed the returns
late. Therefore, we will assess the Initial Penalty as explained in our letter dated May 31, 2016.

**What You Will Be Assessed**
The tables on page 3 show how we calculated the penalties for each return and each taxable year. As of
September 6 , 2017 , you will owe $ 10,999,868

**What You Need To Do**
- If you have not filed your complete and accurate return(s), you must send them to the IRS contact
  information as listed on page 1, to avoid additional penalties. We must receive your returns by

- If you accept our decision, you should pay $ 10,999,868 by October 6, 2017    . Make your check
  payable to the **"U.S. Treasury."** Write your taxpayer identification number, "civil penalties," and taxable
  year(s) on the memo line of the check. Mail your payment using the IRS contact information on page 1.

- If you disagree with our decision and plan to appeal, you can avoid future interest on these penalties by
  paying $ 10,999,868 .

Ex1

Letter 3946 (Rev. 9-2011)
Catalog Number 39098A

## Penalty Calculations

| Required Returns | Penalty (IRC section 6677) | | How We Calculate the Penalty |
|---|---|---|---|
| Form 3520 | Initial | | The greater of $10,000 or 35% of gross reportable amount |
| | Continuing | | $10,000 every 30 days until gross reportable amount reached |
| Form 3520-A | Initial | | The greater of $10,000 or 5% of gross reportable amount |
| | Continuing | | $10,000 every 30 days until gross reportable amount reached |

Penalties Apply to Following Return(s)

How We Calculated the Initial Penalty

| Form | Taxable Year | Gross Reportable Amount | Penalty Rate % | Amount of Penalty | |
|---|---|---|---|---|---|
| 3520 | 200512-200812 | 14,512,713 | 35 | $ | 5,079,449 |
| 3520A | 200512-201012 | 118,408,377 | 5 | $ | 5,920,419 |
| | | | | $ | |
| | | | | $ | |
| | | | Total | $ | 10,999,868 |

How We Calculated the Continuing Penalty

| Form | Taxable Year | Number of 30-Day Periods | Amount of Penalty | |
|---|---|---|---|---|
| | not applicable | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | Total | $ | 0 |

As of **September 6, 2017** , Total Penalties You Will Owe:  $ 10,999,868

**Letter 3946 (Rev. 9-2011)**
Catalog Number 39098A

**Taxpayer Name:** Mukhi, Raju       **Examiner:** Serangeli, Joyce
**TIN:** ▮▮-8618
**Tax Form:** 1040       **Date:**   10/21/16; 07/11/17
**Tax Year (s):** 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012

## Form 3520 Penalty Issue Lead Sheet

| Tax Period | Per Return | Per Exam | Adjustment | Reference |
|---|---|---|---|---|
| 200512 | 0.00 | 1,639,975.00 | 1,639,975.00 | |
| 200612 | 0.00 | 991,148.00 | 991,148.00 | |
| 200712 | 0.00 | 798,624.00 | 798,624.00 | |
| 200812 | 0.00 | 1,649,702.00 | 1,649,702.00 | |

**Conclusion:**

The Service has determined that failure to report distributions and contributions apply under § 6048 and § 6677(a).

**Facts:**

Raju Mukhi is a citizen of the United States currently residing in Saint Louis, MO. He owns a US business, Contract Management Services LLC that earns income from manufacturing and selling uniforms overseas. Mr. Mukhi's primary source of income reported on his originally filed 1040 tax returns are wages from Contract Management Services LLC.

Throughout 2001 and 2010, Mr. Mukhi established relationships with foreign and domestic companies to create a network of companies, trusts, and bank accounts.

Prior to 2001 Mr. Mukhi entered into a relationship with Interadvice Directorate Ltd, a British Virgin Isle company owned by Trident Trust Company

**Foreign Entity: Sukhmani Partners II Ltd**
**Entity Classification: Foreign Corporation**
**Number of Foreign Accounts Owned: 2**
**Date Incorporated: 11/21/2001**
**Date Dissolved: Still Active**

On November 21st, 2001, Sukhmani Partners II Ltd was incorporated in the British Virgin Isles as an international business corporation (Exhibit 1). According to the Memorandum of Association, Sukhmani listed Trident Trust Company Limited as its Registered Agent and Interadvice Directorate Ltd as the First Director of the Company. The primary address for Sukhmani Partners II Ltd is Landstreasse 25 PO Box 439, Vaduz LS FL 9490.



In or around 2002, Mr. Mukhi used Sukhmani Partners II Ltd to open, or cause to be open, two foreign accounts. One account was held at Clariden Leu in Switzerland. The other account was at Goldman, Sachs & Company Bank in Singapore. During a conversation with the Power of Attorney Boxerman, from Capes Sokol, on

Form 3520 Penalty Issue Lead Sheet       Workpaper #    300  -1

**Taxpayer Name:** Mukhi, Raju          **Examiner:** Serangeli, Joyce
**TIN:** ▮▮▮▮▮8618
**Tax Form:** 1040          **Date:** 10/21/16; 07/11/17
**Tax Year (s):** 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012

## Form 3520 Penalty Issue Lead Sheet



Excerpt from the Goldman, Sachs & Company Bank statement from January 31, 2009. *"The calculations noted above (other than contributions and distributions since the last capital statement) are taken from the applicable partnership capital value statement as provided by the fund administrator. A partnership capital value statement is available upon request from your investment professional. Tax information regarding these investments, including allocations of income and realized and unrealized gains and losses will be available through a Schedule K-1 which will be mailed to you after year end."*

Through the Goldman, Sachs & Company Bank, Sukhmani Partners II Ltd was a limited foreign partner in two domestic US partnerships, Mezzanine and Technology. Goldman, Sachs & Company Bank only provided the capital account balance, all income details were to be provided by the partnerships themselves.

The examiner issued pattern letters requesting Form 5471s.

| 5471 Pattern Letter Issued | Years Requested | 5471 received date |
|---|---|---|
| April 2015 | 2006-2013 | July 21, 2015 |
| August 2015 | 2002-2005 | January 2016 |

The examiner also requested copies of the Schedule K-1's for both Mezzanine and Technology on April 6, 2015. The Power of Attorney Boxerman stated they had the K-1's for Mezzanine but not for Technology. However they did have the financial statements for Technology. When the

Form 3520 Penalty Issue Lead Sheet                    Workpaper #     300  -3

| | | | |
|---|---|---|---|
| **Taxpayer Name:** | Mukhi, Raju | **Examiner:** | Serangeli, Joyce |
| **TIN:** | ▀▀▀-8618 | | |
| **Tax Form:** | 1040 | **Date:** | 10/21/16; 07/11/17 |
| **Tax Year (s):** | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520 Penalty Issue Lead Sheet



In early 2002, Sukhmani Gurkukh Nivas Foundation was formed listing Mr. Mukhi as the primary beneficiary. Originally the secondary beneficiaries were his then wife, Sonia Mukhi, and his two children, Seema and Rishi Mukhi. Sonia passed away November 17, 2009 and is believed to have been a US person. Seema and Rishi are the taxpayer's children and are believed to be US persons: both were issued social security numbers within two years of their birth and they both have US residences. On August 14, 2002 the secondary beneficiaries were changed to Mr. Mukhi's mother, Kamal Mukhi (not sure if she is a US person) and Sadhu Vaswani Mission, a foreign trust held for the benefit of Kamal. Interadvice Directorate Ltd is named as the members on the Foundation's board. (See Exhibit 3)

The property in the Foundation is not identified specifically in Exhibit 3 but beneficiaries and trustees have been identified which would indicate under the IRC that there is a foreign trust.

Sukhmani Gurkukh Nivas Foundation (the "Foundation") was formed in Lichtenstein January 9, 2002 per Form 3520 prepared for the examination. The taxpayer has been unable to provide the foundation creation documents. Per the German document referred to above, the foundation was created in January 2002. On August 14, 2002, the Trustees were agreed to make changes to the beneficiaries. The property in the Foundation is not identified specifically in the German document but beneficiaries and trustees have been identified which would indicate under the IRC that there is a foreign trust.

Per the taxpayer, the Foundation did not directly hold any foreign accounts and on November 26, 2005, the foundation obtained 100% ownership of Gurdas International, by holding 100 bearer shares. Gurdas International ("Gurdas") is a corporation formed in 2005 under the laws of Panama. (Exhibit 4) Any bank accounts of Gurdas therefore, are accounts of the Foundation

**Taxpayer Name:** Mukhi, Raju      **Examiner:** Serangeli, Joyce
**TIN:** ▇▇-8618
**Tax Form:** 1040      **Date:** 10/21/16; 07/11/17
**Tax Year (s):** 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012

## Form 3520 Penalty Issue Lead Sheet

In addition to moving money from his offshore accounts held by Sukhmani Partners II Ltd, Mr. Mukhi also electronically transferred funds individually. Mr. Mukhi electronically transferred $2,000,000 to the Gurdas' ING account on November 22, 2006, the ING bank statement notated the transfer with "From UBS Stamford Branch CP". On March 8, 2007 Mr. Mukhi transferred $748,000 to Gurdas and 11 days later he transferred $1,198,228.52 with the notation "From SW UBSWU33XXX). On November 5, 2007 Contract Management Services, the domestic entity owned by Mr. Mukhi, transferred $205,556.70 to Gurdas' ING account.



In total Gurdas International received directly and indirectly through Mr. Mukhi's foreign and domestic entities, $9,729,249.

From a review of the bank statements of Gurdas' ING Bank account, there are several entries per month of term loans being made and paid off. The loans were used to purchase securities. In October 2005, Gurdas purchased $4 million in securities through ING Bank; at the time they had $4,678,848.68 in Fixed Deposits from additional electronic transfers from Sukhmani Partners II Ltd via the Clariden Leu account. Per the October 2005 bank statement, ING Bank reflects Gurdas as having Total Assets of $10,938,801.06 and Total Liabilities of $4,001,291.99. The Gurdas account has reflected a range of loans from $2,387,255.52 in November 2005 to a high of $38,451,209.31 in October 2006 and a low in Feb 2009 of $1,646,534.44. After February 2009, there are no loans in the Gurdas account.

ING Bank statements which list Gurdas International as the owner were provided. There are cash withdrawals, transfers and payments that the government asked about.
- Cash withdrawal of $20,030 on 07/24/2006
- Cash withdrawal of $20,000 on 11/21/2006
- Cash withdrawal of $10,000 on 09/14/2007
- Swift payment to Mukhi of $213,114 on 01/09/2008
- Swift payment to Mukhi of $4,098,360 on 02/05/2008
- Swift payment to Mukhi of $401,960 on 2/27/2008

In a December 2016 letter, Mr. Boxerman stated "Without necessarily agreeing with the IDR's statement that 'Raju withdrew $4.7 mil in 2008,' Taxpayer states that the three (3) transfers totaling approximately $4,700,000 (1.9/08, 2/4/08 and 2/27/08) referred to in the IDR went to a

| | | | |
|---|---|---|---|
| **Taxpayer Name:** | Mukhi, Raju | **Examiner:** | Serangeli, Joyce |
| **TIN:** | ▮▮▮-8618 | | |
| **Tax Form:** | 1040 | **Date:** | 10/21/16; 07/11/17 |
| **Tax Year (s):** | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520 Penalty Issue Lead Sheet

Disclosure Program. Ebert never saw any bank statements or anything else relating to Mr. Mukhi's offshore accounts.

Mr. Mukhi attempted to enter the Offshore Voluntary Disclosure Program after he received a letter from Clariden Leu. Mr. Boxerman does not know the exact date the Clariden Leu letter was received, but he confirms it was after 2010. According to Mr. Boxerman, Mr. Mukhi was rejected for the offshore program during his pre-clearance phase because Goldman, Sachs, & Company Bank had submitted information to Criminal Investigation. At that point, Mr. Mukhi was under examination for failing to file report income earned by his foreign holdings. During his examination, Mr. Mukhi did not disclose his involvement in the foundation or the foundation's ownership of Gurdas International.

### Forms 3520

IDR 8 was issued April 1, 2016 requesting Form 3520's. Letter 3804 was issued 5/31/2016 which is the pattern letter requesting Forms 3520 and 3520A for the years 2005 through 2013. Mr. Boxerman asked for and was granted an extension until 9/30/2016. Form 3520's and 3520A's were received via courier on 9/30/2016 for tax years 2005-2013.

Taxpayer has submitted delinquent Form 3520's which detail the following distributions:
- $20,000 in December 2005
- $51,559 in 2006 -- various distributions in July and November
- $46,646 in 2007 -- a distribution in August and September
- $28,253 in 2008 -- a distribution in January and July

### Service's Position:

#### Issue #1

**Issue #1:** whether Mr. Mukhi has a filing requirement for Form 3520.
**Government's Position regarding Issue #1:** it is the government's position that Mr. Mukhi has a filing requirement for Form 3520.

#### Argument regarding Issue #1:

Form 3520 must be filed by
- a US person who is treated as the owner of any part of the assets of a foreign trust
- a US person who received a distribution from a foreign trust

Mr. Mukhi is a US citizen.

IRC § 301.7701-4(a) defines a trust as an arrangement by which title to property is held by a person or persons, with a fiduciary responsibility to conserve or protect the property for the beneficiaries. Memorandum of association (creation documents) has been provided for Sukhmani Gurkukh Nivas Foundation. The Foundation was incorporated on November 21, 2001 in the British Virgin Islands. (In the case file, these documents are stamped as "Treaty Information". However, these documents came from Mr. Mukhi's power of attorney.) Mr. Mukhi

| | | |
|---|---|---|
| **Taxpayer Name:** | Mukhi, Raju | **Examiner:** Serangeli, Joyce |
| **TIN:** | ▆▆▆-8618 | |
| **Tax Form:** | 1040 | **Date:** 10/21/16; 07/11/17 |
| **Tax Year (s):** | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | |

## Form 3520 Penalty Issue Lead Sheet

| | | |
|---|---|---|
| contribution | 5/19/2006 | 272,000 |
| distribution | 7/24/2006 | 20,030 |
| contribution | 8/29/2006 | 70,012 |
| contribution | 9/1/2006 | 90,124 |
| contribution | 9/4/2006 | 81,686 |
| contribution | 10/11/2006 | 110,000 |
| distribution | 11/21/2006 | 20,000 |
| contribution | 11/22/2006 | 2,000,000 |
| penalty base | | 2,831,852 |
| penalty rate 35% | | 0.35 |
| 3520 penalty-2006 | | 991,148 |
| | | |
| contribution | 1/18/2007 | 120,000 |
| contribution | 3/8/2007 | 748,000 |
| contribution | 3/19/2007 | 1,198,228 |
| distribution | 9/14/2007 | 10,000 |
| contribution | 11/5/2007 | 205,556 |
| penalty base | | 2,281,784 |
| penalty rate 35% | | 0.35 |
| 3520 penalty-2007 | | 798,624 |
| | | |
| payment to TP | 1/9/2008 | 213,114 |
| payment to TP | 2/4/2008 | 4,098,360 |
| payment to TP | 2/27/2008 | 401,960 |
| | | |
| penalty base | | 4,713,434 |
| penalty rate 35% | | 0.35 |
| 3520 penalty-2008 | | 1,649,702 |

Note: distributions are what the taxpayer's accountant included on Form 3520's. Contributions are from the bank statements and the narrative on the bank statement includes the taxpayer's name.

Taxpayer indicates on Form 3520's filed that he only filed them to avoid the harsh penalty structure set out in the IRC. However, taxpayer has received distributions from and made contributions to what the IRS has determined to be a foreign trust. Therefore, Form 3520's are required to be filed.

**Taxpayer Name:** Mukhi, Raju          **Examiner:** Serangeli, Joyce
**TIN:**                 -8618
**Tax Form:** 1040                       **Date:** 10/21/16; 07/11/17
**Tax Year (s):**        200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012

## Form 3520 Penalty Issue Lead Sheet

**IRC § 6677(c) (3)** – Defines the "gross reportable amount" as the gross amount of distributions in the failure relating to IRC 6048(c).

**IRC § 6048 – Information reporting with respect to certain foreign trusts:**

**IRC § 6048(c) (1)** – Requires a U.S person that receives a distribution from a foreign trust to furnish certain information about the trust and the distribution to the secretary.

**IRC § 7701(a)(30)** – defines "United States person" as:
   (A) a citizen or resident of the United States,
   (B) a domestic partnership,
   (C) a domestic corporation,
   (D) any estate [other than a foreign estate within the meaning of paragraph (31)], and
   (E) any trust over which a United States court may exercise primary supervision and which one or more United States persons control all substantial decisions of the trust.

**IRC § 7701(a)(31)** defines the term a "foreign trust" broadly to mean any trust other than a trust treated as a US person.

**26 CFR 301.7701-4** defines a trust as an arrangement whereby trustees take title to property for the purpose of protecting or conserving it for the beneficiaries.

**IRC § 6501(c) (8)** – Provides exceptions to the normal 3-year statute of limitations for failures to provide the Secretary with the information required under IRC §§ 6038, 6038A, 6038B, 6046, 6046A, or 6048. The time for assessment of tax related to such failures shall not expire prior to the date which is three years after the date the Secretary was provided with the required information.

**Taxpayer Name:** Mukhi, Raju      **Examiner:** Serangeli, Joyce

**TIN:** ■■■■-8618

**Tax Form:** 1040      **Date:** 10/27/16; 06/09/17; 07/11/17

**Tax Year (s):** 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012

| Form 3520-A Penalty Issue Lead Sheet | | | |
|---|---|---|---|
| Transactions with Foreign Trusts | Tax Year 2005 | Tax Year 2006 | Tax Year 2007 | Tax Year 2008 |
| IRC 6677 (PRN 660)- Initial | 791,273.00 | 2,281,882.00 | 2,137,028.00 | 469,496.00 |
| Transactions with Foreign Trusts | Tax Year 2009 | Tax Year 2010 | | |
| IRC 6677 (PRN 660)- Initial | 118,118.00 | 122,622.00 | N/A | N/A |
| IRC 6677 (PRN 703)- Continuation | 0 | 0 | 0 | 0 |
| | | | | |

**Conclusion:** *(Reflects the final determination on the issue.)*

The Service has concluded penalties under § 6677 apply and should be assessed.

| Taxpayer Name: | Mukhi, Raju | Examiner: | Serangeli, Joyce |
| TIN: | ▉▉▉-8618 | | |
| Tax Form: | 1040 | Date: | 10/27/16; 06/09/17; 07/11/17 |
| Tax Year (s): | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520-A Penalty Issue Lead Sheet

Clariden Bank

| Date | Balance |
|------|---------|
| 12/31/2003 | $ 8,306,440.00 |
| 12/31/2004 | $11,588,740.00 |
| 12/31/2005 | $ 3,448,363.00 |
| 3/31/2006 | $ 627,501.00 |
| 9/30/2007 | $ 322,254.00 |
| 12/31/2008 | $ 299,463.00 |
| 12/31/2009 | $ 208,761.00 |
| 12/31/2010 | $ 154,000.00 |

Goldman, Sachs, & Company Bank

| Date | Balance |
|------|---------|
| 8/31/2005 | $ 3,037,524.00 |
| 4/30/2006 | $ 272,746.00 |
| 12/31/2007 | $ 195,592.00 |
| 9/30/2008 | $ 1,377,415.00 |
| 1/31/2009 | $ 1,360,401.00 |
| 2/28/2010 | $ 1,240,910.00 |

At the time the accounts at Goldman, Sachs & Company Bank and Clariden Leu were opened, Mr. Mukhi had been filing US tax returns since 1988.

On April 2, 2015, the examiner reviewed Clariden Leu and Goldman, Sachs & Company Bank statements for tax years 2009 and 2010. The 2006 bank statements were provided on April 13, 2015.

According to the bank statements, the two foreign accounts generated investment income ranging from interest, dividends, and capital losses to gains from PFIC (Passive Foreign Investment Companies).

As the examiner was reviewing the bank statements she noted that the Goldman, Sachs & Company Bank account was reporting two investment activities in a category titled "Alternative Investments". The activities were identified as GS Mezzanine Partners II Offshore LP(Mezzanine) and GS Private Equity Partners Technology 2000 Fund Offshore LP(Technology), see excerpt below from the 2006 Goldman, Sachs & Company Bank account statement.

| Taxpayer Name: | Mukhi, Raju | Examiner: | Serangeli, Joyce |
|---|---|---|---|
| TIN: | ▆▆▆-8618 | | |
| Tax Form: | 1040 | Date: | 10/27/16; 06/09/17; 07/11/17 |
| Tax Year (s): | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520-A Penalty Issue Lead Sheet

Power of Attorney stated that the items were not provided, no explanation was given as to why the statements were withheld from the Special Agent.

Mezzanine issued Schedule K-1's to Sukhmani Partners II Ltd to report their share of income and expenses. The address listed on the K-1 was Trident Chambers Road Town, Tortola, British Virgin Islands. The K-1's were not filed with the IRS.

Technology provided a Capital Analysis statement to Mr. Mukhi for tax years 2009 and 2010. Using this information the examiner was able to identify the various types of flow thru income taxable to Mr. Mukhi.

Per the financial statements for Technology and the Schedule K-1's for Mezzanine and the bank statements for Clariden Leu and Goldman, Sachs & Company Bank, Mr. Mukhi failed to report $2,044,671.00 in Subpart F Income years 2003, 2004, 2005, 2006, 2007, 2008, 2009, and 2010. In addition Mr. Mukhi failed to meet his foreign filing requirements under IRC § 6038A, by not filing form 5471 *Information Return of a US Person with Respect to Certain Foreign Corporations.*

| | | | | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|---|---|
| Subpart F Income (1040 Ord Div) | | | | $170,602.00 | $601,414.00 | $959,429.00 | $158,961.00 | $61,146.00 | $47,718.00 |

| | | | | 2009 | 2010 | 2011 | 2012 | 2013 | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | $ 20,766.00 | $ - | $ - | $ 12,243.00 | $12,397.00 | |

**Foreign Entity: Sukhmani Gurkukh Nivas Foundation**
**Entity Classification: Foreign Grantor Trust**
**Number of Foreign Accounts Owned: 0**
**Date Incorporated: Jan 2002**
**Date Dissolved: Still Active**

| | | | |
|---|---|---|---|
| **Taxpayer Name:** | Mukhi, Raju | **Examiner:** | Serangeli, Joyce |
| **TIN:** | ▇▇▇-8618 | | |
| **Tax Form:** | 1040 | **Date:** | 10/27/16; 06/09/17; 07/11/17 |
| **Tax Year (s):** | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520-A Penalty Issue Lead Sheet

Foundation…" (Exhibit 5)

**Foreign Entity: Gurdas International Ltd SA**
**Entity Classification: Foreign Corporation**
**Number of Foreign Accounts Owned: 1**
**Date Incorporated: 9/28/2005**
**Date Dissolved: Still Active**

On September 28, 2005 Gurdas International Ltd SA was incorporated in Panama (Exhibit 6). Per the Articles of Incorporation, Interadvice Directorate Ltd is listed as the Initial Officers and Directors.



On June 10, 2005 Interadvice Directorate Ltd signed account opening documents at ING Bank to open the account 400843-1 at their ING Asia Private Bank branch under Gurdas International. The account held a $0 balance until $2 mil was transferred from the Goldman Sachs account held by Sukhmani Partners II Ltd on September 29, 2005. In total the Clariden Leu account held by Sukhmani Partners II Ltd transferred $2,297,779 to the ING account held by Gurdas International in 2005 and 2006. The Goldman, Sachs & Company Bank account transferred over $3,198,000 to Gurdas' ING account between 2005 and 2007. All transfers were electronic. (Exhibit 7)

In addition to moving money from his offshore accounts held by Sukhmani Partners II Ltd, Mr. Mukhi also electronically transferred funds individually. Mr. Mukhi electronically transferred $2,000,000 to the Gurdas' ING account on November 22, 2006, the ING bank statement notated the transfer with "From UBS Stamford Branch CP". On March 8, 2007 Mr. Mukhi transferred $748,000 to Gurdas and 11 days later he transferred $1,198,228.52 with the notation "From SW UBSWU33XXX". On November 5, 2007 Contract Management Services, the domestic entity owned by Mr. Mukhi, transferred $205,556.70 to Gurdas' ING account.

| Taxpayer Name: | Mukhi, Raju | Examiner: | Serangeli, Joyce |
|---|---|---|---|
| TIN: | ____8618 | | |
| Tax Form: | 1040 | Date: | 10/27/16; 06/09/17; 07/11/17 |
| Tax Year (s): | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520-A Penalty Issue Lead Sheet

based in Seattle, with offices in Singapore, who advertises life insurance policies for high wealth individuals. Per their website, "RE Lee has innovative strategies to increase the advantages of life insurance in a tax-efficient manner." Kabool 1 LLC was incorporated in the state of Washington on March 28, 2006 listing RE Lee as the registering agent, Kabool has been inactive since July 1, 2010.

Mr. Mukhi signed and filed a life insurance application with ING Security Life of Denver Insurance Policy Company on April 17, 2006. The application lists Kabool Trust as the beneficiary of the life insurance policy, according to the application the trust was established on March 15, 2006. Mr. Mukhi identifies the owner of the trust as Kabool 1 LLC (See Exhibit 8).

On May 5, 2006 Kabool 1 LLC wire transferred $6,495,058.67 to ING Security Life of Denver Insurance Policy Company to purchase the $16.5 mil life insurance policy listing Mr. Mukhi as the insured party. (See Exhibit 9)

According to the ING Bank December 2006 bank statements for Kabool 1 LLC's account 401137-1, the entity took out a Term Loan for $6,559,585.94. Following the same pattern as Gurdas, Kabool 1 LLC began taking out and paying back multiple short term loans to purchase and sell currencies. On the October 2007, Portfolio Distribution Overview, an External – Insurance Policy for $6,150,572.08 is listed as an asset with over $7 Million in loans. In April 2009, the Insurance Policy is listed with a value of $6,321,943.15. In May 2009, the line item for the insurance policy is zero. A payment is made to Security Life of Denver Ins Co for $6,336,686.76 and the account balance is a negative $2,388,995.98. (See Exhibit 10)

**Tax Preparation**

Between 2004 through 2010, Mr. Mukhi had two different paid tax preparers handling his individual income tax returns. John Brandvein, CPA prepared the 2004 individual income tax return, and Reece Ebert, CPA prepared the returns between 2005 through 2010. The returns did not disclose Mr. Mukhi's involvement with the foreign entities or the foreign bank account.

According to a statement made by Mr. Boxerman, Ebert told the Special Agent he sent out tax organizers every year which included questions about foreign accounts and income. Ebert verified that Mr. Mukhi filled out and sent back the organizers indicating he did not have any foreign accounts or income. Ebert states he was not aware Mr. Mukhi had any connection to foreign accounts until Mr. Mukhi approached him about entering the Offshore Voluntary Disclosure Program. Ebert never saw any bank statements or anything else relating to Mr. Mukhi's offshore accounts.

Mr. Mukhi attempted to enter the Offshore Voluntary Disclosure Program after he received a letter from Clariden Leu. Mr. Boxerman does not know the exact date the Clariden Leu letter was received, but he confirms it was after 2010. According to Mr. Boxerman, Mr. Mukhi was rejected for the offshore program during his pre-clearance phase because Goldman, Sachs, & Company Bank had submitted information to Criminal Investigation. At that point, Mr. Mukhi was under examination for failing to file report income earned by his foreign holdings. During his examination, Mr. Mukhi did not disclose his involvement in the foundation or the foundation's ownership of Gurdas International.

| **Taxpayer Name:** | Mukhi, Raju | **Examiner:** | Serangeli, Joyce |
|---|---|---|---|
| **TIN:** | ▉▉-8618 | | |
| **Tax Form:** | 1040 | **Date:** | 10/27/16; 06/09/17; 07/11/17 |
| **Tax Year (s):** | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520-A Penalty Issue Lead Sheet

**Issues and Government's Position:**

### Issue #1:

**Issue #1:** whether Mr. Mukhi has a filing requirement for Form 3520A

**Position regarding issue #1:** It is the government's position that Mr. Mukhi has a filing requirement for Form 3520A

Form 3520-A must be filed by a foreign trust with a US owner in order for the US owner to satisfy its annual information reporting requirements under IRC 6048(b). Each person treated as an owner of any portion of a foreign trust under the grantor trust rules is responsible for ensuring that the foreign trust files 3520-A and furnishes the required annual statements to is US owners.

IRC § 301.7701-4(a) defines a trust as an arrangement by which title to property is held by a person or persons, with a fiduciary responsibility to conserve or protect the property for the beneficiaries. Sukhmani Gurkukh Nivas Foundation was formed and listed Mr. Muhki as the primary beneficiary. Per Mr. Mukhi, the foundation does not directly hold any foreign accounts. The foundation owns 100% of Gurdas International. Gurdas has a bank account with ING. Mr. Mukhi directly transferred funds into the Gurdas account and made withdrawals directly. Within the Gurdas bank account, investment securities were purchased. Per the 3520As, interest, capital gains (losses), dividends, and foreign exchange gains (losses) were earned in the Gurdas bank account. Because the Foundation owns Gurdas and Mr. Mukhi is the beneficiary of the Foundation, the income per the 3520As flow through to Mr. Mukhi's 1040 tax return.

The Foundation is a trust per internal revenue laws. Because the foundation is the owner of all of the stock of Gurdas International and Sukhmani Partners II LTD, then the only assets owned by the Foundation is the stock of Gurdas and Sukhmani. The bank accounts of Gurdas and Sukhmani then are tantamount to being accounts of the Foundation.

The "grantor trust rules" of IRC §§671-679 may operate to treat the grantor or another person as owner of all, or a portion, of a trust. The grantor trust rules are based upon the idea that a trust should not be recognized as a separate taxable entity if some person has such dominion and control over it as to create an identity of interest between that person and the trust. The grantor or other owner should be taxed on the income of the trust assets.

It is the government's position that Sukhmani Gurkukh Nikas Foundation be treated as a foreign grantor trust and Mr. Mukhi has a filing requirement for Form 3520A.

### Issue #2:

**Issue #2:** whether Mr. Mukhi is subject to penalties under § 6677

**Position regarding issue #2:** it is the government's position that Mr. Mukhi is subject to penalties under § 6677 for his failure to file timely Forms 3520A. Letter 3804, Notice Required by IRC 6677, was issued in May 2016, requesting Forms 3520 and Forms 3520-A for tax years 2005-2013. POA requested extensions and forms were secured in September 2016.

Penalty_Form_3520-A_Lead_Sheet update 11_18

**Workpaper #  300**

1.11

11-2013 SAA Draft Job Aid

| Taxpayer Name: | Mukhi, Raju | Examiner: | Serangeli, Joyce |
|---|---|---|---|
| TIN: | ▉▉▉-8618 | | |
| Tax Form: | 1040 | Date: | 10/27/16; 06/09/17; 07/11/17 |
| Tax Year (s): | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520-A Penalty Issue Lead Sheet

31, 2016, requesting Forms 3520 and Forms 3520-A for tax years 2006-2012. Sanford Boxerman, POA from Capes Sokol,  asked for an extension which was granted and Forms 3520 and 3520-A for tax years 2005 through 2013 were received by IRS in September 30m 2016.

### Taxpayer Position: (If applicable)

Mr. Mukhi has submitted delinquent Form 3520As under protest and does not concede that he had or has an obligation to file any of the forms demanded of him in Letter 3804. Mr. Mukhi has filed them because of the harsh penalty structure described in Letter 3804 with the understanding that the submission of the forms does not represent a concession of any kind and does not admit that he has or had any obligation to file them.

Mr. Sandy Boxerman and Mr. David Capes represent Mr. Mukhi before the IRS.
In June 2017, Mr. Capes says that Mr. Mukhi did not set up the foreign entities. He says that the funds in the foreign account are gone and they have not been able to find out where the funds went. They are not even certain if the life insurance policy is in place.  They have not provided any kind of loss figures to the Revenue Agent but want those "losses" taken into account against any income tax changes that the IRS proposes.



3520 PENALTY IN TAX YEAR 2005

**RAJU J MUKHI**
**REV LIV TRT** DTD 9/3/2002

CREVE COEUR, MO 63141

80-6942/0610
660

3/27/20
date

Pay to the
Order of UNITED STATES TREASURY $ 5000

Five Thousand Dollars only _____ dollars

FIRST BANK
Creve Coeur
11901 Olive Blvd.
Creve Coeur, MO 63141
1-800-760-BANK (2265)

Form **843**
(Rev. August 2011)
Department of the Treasury
Internal Revenue Service

## Claim for Refund and Request for Abatement

▶ See separate instructions.

OMB No. 1545-0024

Use Form 843 if your claim or request involves:

(a) a refund of one of the taxes (other than income taxes or an employer's claim for FICA tax, RRTA tax, or income tax withholding) or a fee, shown on line 3,

(b) an abatement of FUTA tax or certain excise taxes, or

(c) a refund or abatement of interest, penalties, or additions to tax for one of the reasons shown on line 5a.

Do not use Form 843 if your claim or request involves:

(a) an overpayment of income taxes or an employer's claim for FICA tax, RRTA tax, or income tax withholding (use the appropriate amended tax return),

(b) a refund of excise taxes based on the nontaxable use or sale of fuels, or

(c) an overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.

| | |
|---|---|
| Name(s) <br> Raju J. Mukhi | Your social security number <br> ▮▮-8618 |
| Address (number, street, and room or suite no.) <br> ▮▮▮▮▮▮d | Spouse's social security number |
| City or town, state, and ZIP code <br> St. Louis, MO 63141 | Employer identification number (EIN) |
| Name and address shown on return if different from above | Daytime telephone number <br> ▮▮▮▮▮▮ |

| 1 | **Period.** Prepare a separate Form 843 for each tax period or fee year. <br> From  01/01/2006   to   12/31/2006 | **2** | **Amount** to be refunded or abated: <br> $  5,000.00/$991,148.00 |
|---|---|---|---|

3  **Type of tax or fee.** Indicate the type of tax or fee to be refunded or abated or to which the interest, penalty, or addition to tax is related.

☐ Employment    ☐ Estate    ☐ Gift    ☐ Excise    ☐ Income    ☐ Fee

4  **Type of penalty.** If the claim or request involves a penalty, enter the Internal Revenue Code section on which the penalty is based (see instructions). IRC section:   6677(a)

5a  **Interest, penalties, and additions to tax.** Check the box that indicates your reason for the request for refund or abatement. (If none apply, go to line 6.)

☐ Interest was assessed as a result of IRS errors or delays.

☐ A penalty or addition to tax was the result of erroneous written advice from the IRS.

☑ Reasonable cause or other reason allowed under the law (other than erroneous written advice) can be shown for not assessing a penalty or addition to tax.

b  Date(s) of payment(s) ▶ _____ 04/01/2020

6  **Original return.** Indicate the type of fee or return, if any, filed to which the tax, interest, penalty, or addition to tax relates.

☐ 706    ☐ 709    ☐ 940    ☐ 941    ☐ 943    ☐ 945
☐ 990-PF    ☐ 1040    ☐ 1120    ☐ 4720    ☑ Other (specify) ▶  3520

7  **Explanation.** Explain why you believe this claim or request should be allowed and show the computation of the amount shown on line 2. If you need more space, attach additional sheets.

Please see attached statement.

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the officer's title must be shown.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| | |
|---|---|
| _____ <br> Signature (Title, if applicable. Claims by corporations must be signed by an officer.) | Date  3/31/20 |
| _____ <br> Signature (spouse, if joint return) | Date |

| Paid Preparer Use Only | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | Firm's name  ▶ | | | Firm's EIN ▶ | |
| | Firm's address ▶ | | | Phone no. | |

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.    Cat. No. 10180R    Form **843** (Rev. 8-2011)

Claim for Refund, 3520 Penalty                                    Raju Mukhi, ███████-8618

## EXPLANATION OF CIRCUMSTANCES IN SUPPORT OF FORMS 843

Taxpayer, Raju Mukhi, is claiming a refund and abatement[1] of Form 3520 penalties listed on the face of this Form 843. The Form 3520 penalties were assessed under 26 U.S.C. § 6677, as set forth in the IRS's Letter 3946 with enclosures dated September 6, 2017. A copy of that Letter (without enclosures[2]) in enclosed as *Exhibit 1*.

In asserting these penalties, the Government erroneously assumed that Sukhmani Gurkukh Nivas Foundation ("SGN Foundation") was a foreign trust that engaged in transactions with and held assets of foreign entities.

The penalties assessed are improper. The payments made toward those penalties should be refunded and the penalties abated in their entirety for the following reasons:

1. No Penalty Should be Imposed

   a. *The Government cannot demonstrate that the SGN Foundation is a Foreign Trust, a prerequisite to asserting a 3520 penalty*

As an initial matter, the Government bears the burden of proof to establish that a taxpayer owes a penalty. "Notwithstanding any other provision of this title, the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty . . . imposed by this title." IRC §7491(c). To meet its burden, and for the presumption of correctness to apply to the proposed penalties, the government must produce "sufficient evidence indicating that it is appropriate to impose the relevant penalty." *Higbee v. Comm'r*, 116 T.C. 438, 446 (2001). *See also* Non Docketed Service Advice Review, IRS NSAR 20062701F (applying this standard to a penalty imposed under section 6677). The Taxpayer respectfully contends that the Government cannot sustain its burden.

In this case, the Government must first show that the Taxpayer had a duty to file a Form 3520 for any of the years in question. The Government claims that the Taxpayer had a duty, under IRC §6048(a), because the Taxpayer was a United States person who transferred money to the Sukhmani Gurkukh Nivas Foundation, a foreign trust. The Government also claims that the Taxpayer had a duty, under IRC §6048(c), because the Taxpayer was a United States person who received distributions from the Foundation.

The Government, however, cannot sustain its burden of proof because the Government cannot establish that the Foundation constitutes a trust under the internal revenue laws. "[T]he term 'trust' as used in the Internal Revenue Code refers to an arrangement created either by a will or by an inter vivos declaration whereby trustees take title to property for the purpose of protecting or conserving it for the beneficiaries." Treas.Reg. §301.7701-4(a). *See also* Rev.Rul. 2013-14,

---

[1] Taxpayer included two amounts in Box 2 on the face of Form 843. The first amount is the amount to be refunded. The second amount is the amount to be abated.

[2] Upon request, Taxpayer will provide a copy of the enclosures.

2013-26 IRB 1267 (where a trustee's only responsibility was to hold property and transfer title to it at the direction of the taxpayer, "a trust was not established" for federal tax purposes even though arrangement was formally denominated a trust and even though local law might have recognized the arrangement as a trust; "the trustee was a mere agent for the holding and transfer of title to the real property, and the taxpayer retained direct ownership of the real property for federal income tax purposes"). As the Revenue Agent noted, the Government has been unable to obtain the creation documents for the Foundation. *See Exhibit 1*. The Taxpayer respectfully submits that without these documents the Government cannot establish that the Foundation meets the definition of a trust. Absent proof of a trust, no obligation to file Forms 3520 can exist, and, therefore, no penalty for failing to file such forms can be sustained.

> b. *The Government's assertion of 3520 Penalties is Fundamentally Inconsistent with its position in the Prior Criminal Matter*

Moreover, for the Government to assert now that the bank accounts in question were actually held by a trust would contradict the theory upon which the government proceeded in its criminal case against the Taxpayer, captioned <u>United States v. Muhki</u>, 4:14-cr-00173-AGF. In that case the Government took the position that all bank accounts in question belonged to the Taxpayer and that any entity that purported to hold the accounts was a sham. The government should not now be permitted to invoke the purported existence of the Foundation as the basis for the assertion of millions and millions of dollars in penalties against the Taxpayer.

Certain reports and filings in the course of the criminal case substantiate this position and, if required, the Taxpayer will petition the Court to unseal the records for purposes of this Claim for Refund.

The Criminal Tax Manual, Section 5.01(8), interpreting *Santobello v. New York*, 404 U.S. 257 (1971), recognizes that the plea agreement is a contract between the government and the individual:

> Plea agreements are more than mere contracts, though. Because they necessarily implicate a criminal defendant's fundamental constitutional rights, and in light of the investigative and prosecutorial power of the government, the interpretation of plea agreements is subject to due process constraints to ensure that the plea bargaining defendant receives all that is due from the government.

Here, the Government and the Taxpayer agreed to treat as a sham certain foreign entities, and further agreed that the income generated by those putative entities was attributable directly to Taxpayer. Taxpayer relied on the Government's representations and position in entering into the Plea Agreement. The Government's position binds the government, including the IRS, in future determinations concerning Taxpayer and the tax years currently at issue.

c. *The Government's assertion of Penalties Violates Taxpayer's Rights under the Eighth Amendment*

Taxpayer respectfully submits that imposition of a Form 3520 penalty in excess of $5 million would represent an unconstitutional excessive fine under the Eighth Amendment to the United States Constitution. "Excessive bail shall not be required, *nor excessive fines imposed*, nor cruel or unusual punishments inflicted." U.S.CONST. AMEND. VIII (emphasis added). One Court recently stated that it does not believe that the Eighth Amendment applies to civil tax penalties but that if the Eighth Amendment does so apply, then penalties imposed for failure to file forms Form 3520-A could, in particular instances, be deemed excessive and unconstitutional. *See In re Wyly*, 552 B.R. 338, 602-24 (Bankr. N.D.Tex. 2016).

Additionally, the penalties are not acceptable under the Eighth Amendment because they do not meet the two-prong test, first set forth in first set forth in *Helvering v. Mitchell*, 303 U.S. 391 (1938): that (a) penalties must exist to protect revenue and (b) penalties must bear a relationship to the government's direct loss. "[T]ax penalties are remedial because they exist as "a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Dewees v. United States*, 272 F. Supp. 3d 96, 100-01 (D.C. Cir. 2019). The penalties asserted here are arbitrary and capricious because they bear no relationship to the loss to the government. Otherwise stated, the penalty structure violates Taxpayer's constitutional rights because the statue under which the penalties are imposed is flawed and does not comply with the requirements of *Helvering v. Mitchell*. *C.f., Timbs v. Indiana*, 139 S. Ct. 682 (2019).

d. *The Government's assertion of Penalties Violates Taxpayer's Due Process Rights under the Fifth Amendment*

A $5 million penalty under the facts and circumstances of this case constitutes a deprivation of property without due process of law, in contravention of the Fifth Amendment to the Constitution. In this case, the Government would be asking the Taxpayer to pay a huge penalty, calculated on the basis of monies that may have existed during the 2005 through 2008 timeframe but which no longer exist today because they were misappropriated by ING Bank and its personnel in 2010. That is patently unreasonable.

e. *Reasonable Cause Exists to Excuse Taxpayer's Non-Filing of a Form 3520*

In addition, the Taxpayer maintains that, if he had an obligation to File Form 3520, then his failure to have filed the form is excused by reasonable cause. "No penalty shall be imposed by this section on any failure which is shown to be due to reasonable cause and not due to willful neglect." Code §6677(d). "Whether reasonable cause exists depends upon all of the facts and circumstances of the case, including the taxpayer's reason for failing to properly file, and the extent of his efforts to comply . . . . [I]gnorance of the law may provide reasonable cause if . . . '[t]he taxpayer was unaware of a requirement and could not reasonably be expected to know of the requirement.'" *James v. United States*, No. 8-11-cv-271-T-30AEP (M.D.Fla. August 14, 2012)

(available at 2012 WL 3522610) (quoting Internal Revenue Manual). "The determination of whether a taxpayer acted with reasonable cause . . . is made on a case-by-case basis, taking into account all pertinent facts and circumstances . . . . Circumstances that may indicate reasonable cause . . . include an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including the experience, knowledge and education of the taxpayer." Treas.Reg. §1.6664-4(b)(1). In this case, the Taxpayer had no knowledge whatsoever with respect to any kind of filing or reporting obligation he might have had regarding the Foundation. The first time he ever heard of a Form 3520 was in 2016 during the civil examination of this matter. It is not the case that he knew of the obligation and decided not to meet it. It is not the case that he knew of the obligation and erroneously determined that he did not have to comply with it. It is the case that he simply had no personal knowledge as to such an obligation.

2. The Penalty Amount was Improperly Calculated

While the Taxpayer believes, for reasons stated above, that no penalty should be imposed, the Taxpayer also wishes to point out certain errors in the calculation of the penalty that have caused the proposed penalty to be overstated.

First, the calculation, to the extent it is based on money allegedly contributed to the Foundation, overstates that amount. The Revenue Agent's Report identified $9,729,249 as going into the Foundation. Of that amount, the Revenue Agent's Report determined that Sukhmani Partners II Ltd ("SPII"), a British Virgin Islands entity, contributed $5,577,465. The Report, however, calculated the Form 3520 based on all contributions to the Foundation, including those made by SP II. However, only contributions made by a United States person are required to be reported, so the penalty calculation should have excluded the amounts contributed by the non-U.S. business entity.

Second, the calculation is also based on money allegedly distributed by the Foundation to the Taxpayer. The Taxpayer respectfully submits, however, that the Government cannot sustain its burden of proving that all the funds identified as moving from the Foundation to the Taxpayer did, in fact, go to the Taxpayer. Moreover, the Taxpayer respectfully submits that the Government cannot sustain its burden of proving that, if money went to the Taxpayer, such payments represented "distributions", as that terms is used in IRC §6048(c) (United States person must report "distributions" received from a foreign trust). To the extent the Taxpayer received payments from the Foundation that were something other than "distributions," those amounts should not be included in the penalty calculation.

**Internal Revenue Service**

**Department of the Treasury**

Date:
09/06/2017
Taxpayer Identification Number:
xxx-xx-8618
IRS Contact Information:
Joyce Serangeli

Raju Mukhi

M/S 4115/OVDI
Chesterfield, MO 63017
Telephone Number:

St Louis MO 63141

Fax Number:

IRS Employee ID Number:

Respond by:

Dear Taxpayer:

**Why We Are Writing to You**
We received your statement for Sukhmani Gurkukh Nivas Foundation      dated September 30, 2016
and found that it does not establish reasonable cause.

You may delegate the duties of filing tax returns; however, it is your responsibility to ensure that all returns are
timely and accurately filed.

You have fulfilled your filing obligations for Sukhmani Gurkukh Nivas Foundation, but you filed the returns
late. Therefore, we will assess the Initial Penalty as explained in our letter dated May 31, 2016.

**What You Will Be Assessed**
The tables on page 3 show how we calculated the penalties for each return and each taxable year. As of
September 6 , 2017 , you will owe $ 10,999,868

**What You Need To Do**
- If you have not filed your complete and accurate return(s), you must send them to the IRS contact
  information as listed on page 1, to avoid additional penalties. We must receive your returns by

- If you accept our decision, you should pay $ 10,999,868 by October 6, 2017    . Make your check
  payable to the **"U.S. Treasury."** Write your taxpayer identification number, "civil penalties," and taxable
  year(s) on the memo line of the check. Mail your payment using the IRS contact information on page 1.

- If you disagree with our decision and plan to appeal, you can avoid future interest on these penalties by
  paying $ 10,999,868 .

Ex 1

Letter 3946 (Rev. 9-2011)
Catalog Number 39098A

## Penalty Calculations

| Required Returns | Penalty (IRC section 6677) | How We Calculate the Penalty |
|---|---|---|
| Form 3520 | Initial | The greater of $10,000 or 35% of gross reportable amount |
| | Continuing | $10,000 every 30 days until gross reportable amount reached |
| Form 3520-A | Initial | The greater of $10,000 or 5% of gross reportable amount |
| | Continuing | $10,000 every 30 days until gross reportable amount reached |

**Penalties Apply to Following Return(s)**

**How We Calculated the Initial Penalty**

| Form | Taxable Year | Gross Reportable Amount | Penalty Rate % | Amount of Penalty | |
|---|---|---|---|---|---|
| 3520 | 200512-200812 | 14,512,713 | 35 | $ | 5,079,449 |
| 3520A | 200512-201012 | 118,408,377 | 5 | $ | 5,920,419 |
| | | | | $ | |
| | | | | $ | |
| | | | **Total** | $ | **10,999,868** |

**How We Calculated the Continuing Penalty**

| Form | Taxable Year | Number of 30-Day Periods | Amount of Penalty | |
|---|---|---|---|---|
| | not applicable | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | **Total** | $ | **0** |

**As of September 6, 2017 , Total Penalties You Will Owe:  $ 10,999,868**

Letter 3946 (Rev. 9-2011)
Catalog Number 39098A

| | |
|---|---|
| **Taxpayer Name:** Mukhi, Raju | **Examiner:** Serangeli, Joyce |
| **TIN:** ████-8618 | |
| **Tax Form:** 1040 | **Date:** 10/21/16; 07/11/17 |
| **Tax Year (s):** 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | |

## Form 3520 Penalty Issue Lead Sheet

| Tax Period | Per Return | Per Exam | Adjustment | Reference |
|---|---|---|---|---|
| 200512 | 0.00 | 1,639,975.00 | 1,639,975.00 | |
| 200612 | 0.00 | 991,148.00 | 991,148.00 | |
| 200712 | 0.00 | 798,624.00 | 798,624.00 | |
| 200812 | 0.00 | 1,649,702.00 | 1,649,702.00 | |

**Conclusion:**

The Service has determined that failure to report distributions and contributions apply under § 6048 and § 6677(a).

**Facts:**

Raju Mukhi is a citizen of the United States currently residing in Saint Louis, MO. He owns a US business, Contract Management Services LLC that earns income from manufacturing and selling uniforms overseas. Mr. Mukhi's primary source of income reported on his originally filed 1040 tax returns are wages from Contract Management Services LLC.

Throughout 2001 and 2010, Mr. Mukhi established relationships with foreign and domestic companies to create a network of companies, trusts, and bank accounts.

Prior to 2001 Mr. Mukhi entered into a relationship with Interadvice Directorate Ltd, a British Virgin Isle company owned by Trident Trust Company

**Foreign Entity: Sukhmani Partners II Ltd**
**Entity Classification: Foreign Corporation**
**Number of Foreign Accounts Owned: 2**
**Date Incorporated: 11/21/2001**
**Date Dissolved: Still Active**

On November 21st, 2001, Sukhmani Partners II Ltd was incorporated in the British Virgin Isles as an international business corporation (Exhibit 1). According to the Memorandum of Association, Sukhmani listed Trident Trust Company Limited as its Registered Agent and Interadvice Directorate Ltd as the First Director of the Company. The primary address for Sukhmani Partners II Ltd is Landstreasse 25 PO Box 439, Vaduz LS FL 9490.



In or around 2002, Mr. Mukhi used Sukhmani Partners II Ltd to open, or cause to be open, two foreign accounts. One account was held at Clariden Leu in Switzerland. The other account was at Goldman, Sachs & Company Bank in Singapore. During a conversation with the Power of Attorney Boxerman, from Capes Sokol, on

**Taxpayer Name:** Mukhi, Raju       **Examiner:**  Serangeli, Joyce
**TIN:** ▮▮▮-8618
**Tax Form:** 1040                **Date:**     10/21/16; 07/11/17
**Tax Year (s):** 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012

## Form 3520 Penalty Issue Lead Sheet

| | Partnership Type | Inception Date | Total Capital Commitment |
|---|---|---|---|
| **PRIVATE EQUITY (USD)** | | | |
| GS PRIVATE EQUITY PARTNERS TECHNOLOGY 2000 FUND OFFSHORE, LP | Nonplated | Mar 31 2000 | 810,000.00 |
| **TOTAL PRIVATE EQUITY (USD)** | | | 810,000.00 |
| **OTHER OPPORTUNISTIC INVESTMENTS (USD)** | Partnership Type | Inception Date | Total Capital Commitment |
| GS MEZZANINE PARTNERS OFFSHORE, LP | Nonplated | Jan 21 2000 | 2,000,000.00 |
| **TOTAL OTHER OPPORTUNISTIC INVESTMENTS (USD)** | | | 2,000,000.00 |

Excerpt from the Goldman, Sachs & Company Bank statement from January 31, 2009: *"The calculations noted above (other than contributions and distributions since the last capital statement) are taken from the applicable partnership capital value statement as provided by the fund administrator. A partnership capital value statement is available upon request from your investment professional. Tax information regarding these investments, including allocations of income and realized and unrealized gains and losses will be available through a Schedule K-1 which will be mailed to you after year end."*

Through the Goldman, Sachs & Company Bank, Sukhmani Partners II Ltd was a limited foreign partner in two domestic US partnerships, Mezzanine and Technology. Goldman, Sachs & Company Bank only provided the capital account balance, all income details were to be provided by the partnerships themselves.

The examiner issued pattern letters requesting Form 5471s.

| 5471 Pattern Letter Issued | Years Requested | 5471 received date |
|---|---|---|
| April 2015 | 2006-2013 | July 21, 2015 |
| August 2015 | 2002-2005 | January 2016 |

The examiner also requested copies of the Schedule K-1's for both Mezzanine and Technology on April 6, 2015. The Power of Attorney Boxerman stated they had the K-1's for Mezzanine but not for Technology. However they did have the financial statements for Technology. When the

Form 3520 Penalty Issue Lead Sheet              Workpaper #     **300  -3**

| **Taxpayer Name:** | Mukhi, Raju | **Examiner:** | Serangeli, Joyce |
| **TIN:** | ▓▓▓▓8618 | | |
| **Tax Form:** | 1040 | **Date:** | 10/21/16; 07/11/17 |
| **Tax Year (s):** | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520 Penalty Issue Lead Sheet



In early 2002, Sukhmani Gurkukh Nivas Foundation was formed listing Mr. Mukhi as the primary beneficiary. Originally the secondary beneficiaries were his then wife, Sonia Mukhi, and his two children, Seema and Rishi Mukhi. Sonia passed away November 17, 2009 and is believed to have been a US person. Seema and Rishi are the taxpayer's children and are believed to be US persons: both were issued social security numbers within two years of their birth and they both have US residences. On August 14, 2002 the secondary beneficiaries were changed to Mr. Mukhi's mother, Kamal Mukhi (not sure if she is a US person) and Sadhu Vaswani Mission, a foreign trust held for the benefit of Kamal. Interadvice Directorate Ltd is named as the members on the Foundation's board. (See Exhibit 3)

The property in the Foundation is not identified specifically in Exhibit 3 but beneficiaries and trustees have been identified which would indicate under the IRC that there is a foreign trust.

Sukhmani Gurkukh Nivas Foundation (the "Foundation") was formed in Lichtenstein January 9, 2002 per Form 3520 prepared for the examination. The taxpayer has been unable to provide the foundation creation documents. Per the German document referred to above, the foundation was created in January 2002. On August 14, 2002, the Trustees were agreed to make changes to the beneficiaries. The property in the Foundation is not identified specifically in the German document but beneficiaries and trustees have been identified which would indicate under the IRC that there is a foreign trust.

Per the taxpayer, the Foundation did not directly hold any foreign accounts and on November 26, 2005, the foundation obtained 100% ownership of Gurdas International, by holding 100 bearer shares. Gurdas International ("Gurdas") is a corporation formed in 2005 under the laws of Panama. (Exhibit 4) Any bank accounts of Gurdas therefore, are accounts of the Foundation

| | |
|---|---|
| **Taxpayer Name:** Mukhi, Raju | **Examiner:** Serangeli, Joyce |
| **TIN:** ▆▆▆▆-8618 | |
| **Tax Form:** 1040 | **Date:** 10/21/16; 07/11/17 |
| **Tax Year (s):** 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | |

## Form 3520 Penalty Issue Lead Sheet

In addition to moving money from his offshore accounts held by Sukhmani Partners II Ltd, Mr. Mukhi also electronically transferred funds individually. Mr. Mukhi electronically transferred $2,000,000 to the Gurdas' ING account on November 22, 2006, the ING bank statement notated the transfer with "From UBS Stamford Branch CP". On March 8, 2007 Mr. Mukhi transferred $748,000 to Gurdas and 11 days later he transferred $1,198,228.52 with the notation "From SW UBSWU33XXX". On November 5, 2007 Contract Management Services, the domestic entity owned by Mr. Mukhi, transferred $205,556.70 to Gurdas' ING account.



In total Gurdas International received directly and indirectly through Mr. Mukhi's foreign and domestic entities, $9,729,249.

From a review of the bank statements of Gurdas' ING Bank account, there are several entries per month of term loans being made and paid off. The loans were used to purchase securities. In October 2005, Gurdas purchased $4 million in securities through ING Bank; at the time they had $4,678,848.68 in Fixed Deposits from additional electronic transfers from Sukhmani Partners II Ltd via the Clariden Leu account. Per the October 2005 bank statement, ING Bank reflects Gurdas as having Total Assets of $10,938,801.06 and Total Liabilities of $4,001,291.99. The Gurdas account has reflected a range of loans from $2,387,255.52 in November 2005 to a high of $38,451,209.31 in October 2006 and a low in Feb 2009 of $1,646,534.44. After February 2009, there are no loans in the Gurdas account.

ING Bank statements which list Gurdas International as the owner were provided. There are cash withdrawals, transfers and payments that the government asked about.
- Cash withdrawal of $20,030 on 07/24/2006
- Cash withdrawal of $20,000 on 11/21/2006
- Cash withdrawal of $10,000 on 09/14/2007
- Swift payment to Mukhi of $213,114 on 01/09/2008
- Swift payment to Mukhi of $4,098,360 on 02/05/2008
- Swift payment to Mukhi of $401,960 on 2/27/2008

In a December 2016 letter, Mr. Boxerman stated "Without necessarily agreeing with the IDR's statement that 'Raju withdrew $4.7 mil in 2008,' Taxpayer states that the three (3) transfers totaling approximately $4,700,000 (1.9/08, 2/4/08 and 2/27/08) referred to in the IDR went to a

| | | | |
|---|---|---|---|
| **Taxpayer Name:** | Mukhi, Raju | **Examiner:** | Serangeli, Joyce |
| **TIN:** | ▮-8618 | | |
| **Tax Form:** | 1040 | **Date:** | 10/21/16; 07/11/17 |
| **Tax Year (s):** | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520 Penalty Issue Lead Sheet

Disclosure Program. Ebert never saw any bank statements or anything else relating to Mr. Mukhi's offshore accounts.

Mr. Mukhi attempted to enter the Offshore Voluntary Disclosure Program after he received a letter from Clariden Leu. Mr. Boxerman does not know the exact date the Clariden Leu letter was received, but he confirms it was after 2010. According to Mr. Boxerman, Mr. Mukhi was rejected for the offshore program during his pre-clearance phase because Goldman, Sachs, & Company Bank had submitted information to Criminal Investigation. At that point, Mr. Mukhi was under examination for failing to file report income earned by his foreign holdings. During his examination, Mr. Mukhi did not disclose his involvement in the foundation or the foundation's ownership of Gurdas International.

**Forms 3520**
IDR 8 was issued April 1, 2016 requesting Form 3520's. Letter 3804 was issued 5/31/2016 which is the pattern letter requesting Forms 3520 and 3520A for the years 2005 through 2013. Mr. Boxerman asked for and was granted an extension until 9/30/2016. Form 3520's and 3520A's were received via courier on 9/30/2016 for tax years 2005-2013.

Taxpayer has submitted delinquent Form 3520's which detail the following distributions:
- $20,000 in December 2005
- $51,559 in 2006 – various distributions in July and November
- $46,646 in 2007 – a distribution in August and September
- $28,253 in 2008 – a distribution in January and July

### Service's Position:

#### Issue #1
**Issue #1:** whether Mr. Mukhi has a filing requirement for Form 3520.
**Government's Position regarding Issue #1:** it is the government's position that Mr. Mukhi has a filing requirement for Form 3520.

#### Argument regarding Issue #1:

Form 3520 must be filed by
- a US person who is treated as the owner of any part of the assets of a foreign trust
- a US person who received a distribution from a foreign trust

Mr. Mukhi is a US citizen.

IRC § 301.7701-4(a) defines a trust as an arrangement by which title to property is held by a person or persons, with a fiduciary responsibility to conserve or protect the property for the beneficiaries. Memorandum of association (creation documents) has been provided for Sukhmani Gurkukh Nivas Foundation. The Foundation was incorporated on November 21, 2001 in the British Virgin Islands. (In the case file, these documents are stamped as "Treaty Information". However, these documents came from Mr. Mukhi's power of attorney.) Mr. Mukhi

**Form 3520 Penalty Issue Lead Sheet**   Workpaper #   300 -9

**Taxpayer Name:** Mukhi, Raju        **Examiner:** Serangeli, Joyce
**TIN:** ███8618
**Tax Form:** 1040        **Date:** 10/21/16; 07/11/17
**Tax Year (s):** 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012

## Form 3520 Penalty Issue Lead Sheet

| | | |
|---|---|---|
| contribution | 5/19/2006 | 272,000 |
| distribution | 7/24/2006 | 20,030 |
| contribution | 8/29/2006 | 70,012 |
| contribution | 9/1/2006 | 90,124 |
| contribution | 9/4/2006 | 81,686 |
| contribution | 10/11/2006 | 110,000 |
| distribution | 11/21/2006 | 20,000 |
| contribution | 11/22/2006 | 2,000,000 |
| penalty base | | 2,831,852 |
| penalty rate 35% | | 0.35 |
| 3520 penalty-2006 | | 991,148 |
| | | |
| contribution | 1/18/2007 | 120,000 |
| contribution | 3/8/2007 | 748,000 |
| contribution | 3/19/2007 | 1,198,228 |
| distribution | 9/14/2007 | 10,000 |
| contribution | 11/5/2007 | 205,556 |
| penalty base | | 2,281,784 |
| penalty rate 35% | | 0.35 |
| 3520 penalty-2007 | | 798,624 |
| | | |
| payment to TP | 1/9/2008 | 213,114 |
| payment to TP | 2/4/2008 | 4,098,360 |
| payment to TP | 2/27/2008 | 401,960 |
| | | |
| penalty base | | 4,713,434 |
| penalty rate 35% | | 0.35 |
| 3520 penalty-2008 | | 1,649,702 |

Note: distributions are what the taxpayer's accountant included on Form 3520's. Contributions are from the bank statements and the narrative on the bank statement includes the taxpayer's name.

Taxpayer indicates on Form 3520's filed that he only filed them to avoid the harsh penalty structure set out in the IRC. However, taxpayer has received distributions from and made contributions to what the IRS has determined to be a foreign trust. Therefore, Form 3520's are required to be filed.

**Form 3520 Penalty Issue Lead Sheet**        **Workpaper #**    **300   -11**

| | |
|---|---|
| **Taxpayer Name:** Mukhi, Raju | **Examiner:** Serangeli, Joyce |
| **TIN:** ▉▉▉-8618 | |
| **Tax Form:** 1040 | **Date:** 10/21/16; 07/11/17 |
| **Tax Year (s):** 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | |

## Form 3520 Penalty Issue Lead Sheet

**IRC § 6677(c) (3)** – Defines the "gross reportable amount" as the gross amount of distributions in the failure relating to IRC 6048(c).

**IRC § 6048 – Information reporting with respect to certain foreign trusts:**

**IRC § 6048(c) (1)** – Requires a U.S person that receives a distribution from a foreign trust to furnish certain information about the trust and the distribution to the secretary.

**IRC § 7701(a)(30)** – defines "United States person" as:
- (A) a citizen or resident of the United States,
- (B) a domestic partnership,
- (C) a domestic corporation,
- (D) any estate [other than a foreign estate within the meaning of paragraph (31)], and
- (E) any trust over which a United States court may exercise primary supervision and which one or more United States persons control all substantial decisions of the trust.

**IRC § 7701(a)(31)** defines the term a "foreign trust" broadly to mean any trust other than a trust treated as a US person.

**26 CFR 301.7701-4** defines a trust as an arrangement whereby trustees take title to property for the purpose of protecting or conserving it for the beneficiaries.

**IRC § 6501(c) (8)** – Provides exceptions to the normal 3-year statute of limitations for failures to provide the Secretary with the information required under IRC §§ 6038, 6038A, 6038B, 6046, 6046A, or 6048. The time for assessment of tax related to such failures shall not expire prior to the date which is three years after the date the Secretary was provided with the required information.

**Taxpayer Name:** Mukhi, Raju

**TIN:** ▇▇▇-8618

**Tax Form:** 1040

**Examiner:** Serangeli, Joyce

**Date:** 10/27/16; 06/09/17; 07/11/17

**Tax Year (s):** 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012

## Form 3520-A Penalty Issue Lead Sheet

| Transactions with Foreign Trusts | Tax Year 2005 | Tax Year 2006 | Tax Year 2007 | Tax Year 2008 |
|---|---|---|---|---|
| IRC 6677 (PRN 660)-Initial | 791,273.00 | 2,281,882.00 | 2,137,028.00 | 469,496.00 |
| Transactions with Foreign Trusts | Tax Year 2009 | Tax Year 2010 | | |
| IRC 6677 (PRN 660)-Initial | 118,118.00 | 122,622.00 | N/A | N/A |
| IRC 6677 (PRN 703)-Continuation | 0 | 0 | 0 | 0 |
| | | | | |

**Conclusion:** (Reflects the final determination on the issue.)
The Service has concluded penalties under § 6677 apply and should be assessed.

**Taxpayer Name:** Mukhi, Raju
**TIN:** ████████8618
**Tax Form:** 1040

**Examiner:** Serangeli, Joyce

**Date:** 10/27/16; 06/09/17; 07/11/17

**Tax Year (s):** 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012

## Form 3520-A Penalty Issue Lead Sheet

**Clariden Bank**

| Date | Balance |
|------|---------|
| 12/31/2003 | $ 8,306,440.00 |
| 12/31/2004 | $ 11,588,740.00 |
| 12/31/2005 | $ 3,448,363.00 |
| 3/31/2006 | $ 627,501.00 |
| 9/30/2007 | $ 322,254.00 |
| 12/31/2008 | $ 299,463.00 |
| 12/31/2009 | $ 208,761.00 |
| 12/31/2010 | $ 154,000.00 |

**Goldman, Sachs, & Company Bank**

| Date | Balance |
|------|---------|
| 8/31/2005 | $ 3,037,524.00 |
| 4/30/2006 | $ 272,746.00 |
| 12/31/2007 | $ 195,592.00 |
| 9/30/2008 | $ 1,377,415.00 |
| 1/31/2009 | $ 1,360,401.00 |
| 2/28/2010 | $ 1,240,910.00 |

At the time the accounts at Goldman, Sachs & Company Bank and Clariden Leu were opened, Mr. Mukhi had been filing US tax returns since 1988.

On April 2, 2015, the examiner reviewed Clariden Leu and Goldman, Sachs & Company Bank statements for tax years 2009 and 2010. The 2006 bank statements were provided on April 13, 2015.

According to the bank statements, the two foreign accounts generated investment income ranging from interest, dividends, and capital losses to gains from PFIC (Passive Foreign Investment Companies).

As the examiner was reviewing the bank statements she noted that the Goldman, Sachs & Company Bank account was reporting two investment activities in a category titled "Alternative Investments". The activities were identified as GS Mezzanine Partners II Offshore LP(Mezzanine) and GS Private Equity Partners Technology 2000 Fund Offshore LP(Technology), see excerpt below from the 2006 Goldman, Sachs & Company Bank account statement.

| **Taxpayer Name:** | Mukhi, Raju | **Examiner:** | Serangeli, Joyce |
| --- | --- | --- | --- |
| **TIN:** | ▇▇-8618 | **Date:** | 10/27/16; 06/09/17; 07/11/17 |
| **Tax Form:** | 1040 | | |

**Tax Year (s):**   200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012

## Form 3520-A Penalty Issue Lead Sheet

Power of Attorney stated that the items were not provided, no explanation was given as to why the statements were withheld from the Special Agent.

Mezzanine issued Schedule K-1's to Sukhmani Partners II Ltd to report their share of income and expenses. The address listed on the K-1 was Trident Chambers Road Town, Tortola, British Virgin Islands. The K-1's were not filed with the IRS.

Technology provided a Capital Analysis statement to Mr. Mukhi for tax years 2009 and 2010. Using this information the examiner was able to identify the various types of flow thru income taxable to Mr. Mukhi.

Per the financial statements for Technology and the Schedule K-1's for Mezzanine and the bank statements for Clariden Leu and Goldman, Sachs & Company Bank, Mr. Mukhi failed to report $2,044,671.00 in Subpart F Income years 2003, 2004, 2005, 2006, 2007, 2008, 2009, and 2010. In addition Mr. Mukhi failed to meet his foreign filing requirements under IRC § 6038A, by not filing form 5471 *Information Return of a US Person with Respect to Certain Foreign Corporations*.

| | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
| --- | --- | --- | --- | --- | --- | --- |
| Subpart F Income (1040 Ord Div) | $170,602.00 | $601,414.00 | $959,429.00 | $158,961.00 | $61,146.00 | $47,713.00 |

| | 2009 | 2010 | 2011 | 2012 | 2013 |
| --- | --- | --- | --- | --- | --- |
| | $ 20,766.00 | $ - | $ - | $ 12,243.00 | $12,397.00 |

**Foreign Entity: Sukhmani Gurkukh Nivas Foundation**
**Entity Classification: Foreign Grantor Trust**
**Number of Foreign Accounts Owned: 0**
**Date Incorporated: Jan 2002**
**Date Dissolved: Still Active**

| **Taxpayer Name:** | Mukhi, Raju | **Examiner:** | Serangeli, Joyce |
|---|---|---|---|
| **TIN:** | ▮▮▮▮8618 | | |
| **Tax Form:** | 1040 | **Date:** | 10/27/16; 06/09/17; 07/11/17 |
| **Tax Year (s):** | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520-A Penalty Issue Lead Sheet

Foundation…" (Exhibit 5)

**Foreign Entity: Gurdas International Ltd SA**
**Entity Classification: Foreign Corporation**
**Number of Foreign Accounts Owned: 1**
**Date Incorporated: 9/28/2005**
**Date Dissolved: Still Active**

On September 28, 2005 Gurdas International Ltd SA was incorporated in Panama (Exhibit 6). Per the Articles of Incorporation, Interadvice Directorate Ltd is listed as the Initial Officers and Directors.



On June 10, 2005 Interadvice Directorate Ltd signed account opening documents at ING Bank to open the account 400843-1 at their ING Asia Private Bank branch under Gurdas International. The account held a $0 balance until $2 mil was transferred from the Goldman Sachs account held by Sukhmani Partners II Ltd on September 29, 2005. In total the Clariden Leu account held by Sukhmani Partners II Ltd transferred $2,297,779 to the ING account held by Gurdas International in 2005 and 2006. The Goldman, Sachs & Company Bank account transferred over $3,198,000 to Gurdas' ING account between 2005 and 2007. All transfers were electronic. (Exhibit 7)

In addition to moving money from his offshore accounts held by Sukhmani Partners II Ltd, Mr. Mukhi also electronically transferred funds individually. Mr. Mukhi electronically transferred $2,000,000 to the Gurdas' ING account on November 22, 2006, the ING bank statement notated the transfer with "From UBS Stamford Branch CP". On March 8, 2007 Mr. Mukhi transferred $748,000 to Gurdas and 11 days later he transferred $1,198,228.52 with the notation "From SW UBSWU33XXX". On November 5, 2007 Contract Management Services, the domestic entity owned by Mr. Mukhi, transferred $205,556.70 to Gurdas' ING account.

| | | Examiner: | Serangeli, Joyce |
|---|---|---|---|
| **Taxpayer Name:** | Mukhi, Raju | | |
| **TIN:** | ▮▮▮▮-8618 | | |
| **Tax Form:** | 1040 | **Date:** | 10/27/16; 06/09/17; 07/11/17 |
| **Tax Year (s):** | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520-A Penalty Issue Lead Sheet

based in Seattle, with offices in Singapore, who advertises life insurance policies for high wealth individuals. Per their website, "RE Lee has innovative strategies to increase the advantages of life insurance in a tax- efficient manner." Kabool 1 LLC was incorporated in the state of Washington on March 28, 2006 listing RE Lee as the registering agent, Kabool has been inactive since July 1, 2010.

Mr. Mukhi signed and filed a life insurance application with ING Security Life of Denver Insurance Policy Company on April 17, 2006. The application lists Kabool Trust as the beneficiary of the life insurance policy, according to the application the trust was established on March 15, 2006. Mr. Mukhi identifies the owner of the trust as Kabool 1 LLC (See Exhibit 8).

On May 5, 2006 Kabool 1 LLC wire transferred $6,495,058.67 to ING Security Life of Denver Insurance Policy Company to purchase the $16.5 mil life insurance policy listing Mr. Mukhi as the insured party. (See Exhibit 9)

According to the ING Bank December 2006 bank statements for Kabool 1 LLC's account 401137-1, the entity took out a Term Loan for $6,559,585.94. Following the same pattern as Gurdas, Kabool 1 LLC began taking out and paying back multiple short term loans to purchase and sell currencies. On the October 2007, Portfolio Distribution Overview, an External – Insurance Policy for $6,150,572.08 is listed as an asset with over $7 Million in loans. In April 2009, the Insurance Policy is listed with a value of $6,321,943.15. In May 2009, the line item for the insurance policy is zero. A payment is made to Security Life of Denver Ins Co for $6,336,686.76 and the account balance is a negative $2,388,995.98. (See Exhibit 10)

**Tax Preparation**

Between 2004 through 2010, Mr. Mukhi had two different paid tax preparers handling his individual income tax returns. John Brandvein, CPA prepared the 2004 individual income tax return, and Reece Ebert, CPA prepared the returns between 2005 through 2010. The returns did not disclose Mr. Mukhi's involvement with the foreign entities or the foreign bank account.

According to a statement made by Mr. Boxerman, Ebert told the Special Agent he sent out tax organizers every year which included questions about foreign accounts and income. Ebert verified that Mr. Mukhi filled out and sent back the organizers indicating he did not have any foreign accounts or income. Ebert states he was not aware Mr. Mukhi had any connection to foreign accounts until Mr. Mukhi approached him about entering the Offshore Voluntary Disclosure Program. Ebert never saw any bank statements or anything else relating to Mr. Mukhi's offshore accounts.

Mr. Mukhi attempted to enter the Offshore Voluntary Disclosure Program after he received a letter from Clariden Leu. Mr. Boxerman does not know the exact date the Clariden Leu letter was received, but he confirms it was after 2010. According to Mr. Boxerman, Mr. Mukhi was rejected for the offshore program during his pre-clearance phase because Goldman, Sachs, & Company Bank had submitted information to Criminal Investigation. At that point, Mr. Mukhi was under examination for failing to file report income earned by his foreign holdings. During his examination, Mr. Mukhi did not disclose his involvement in the foundation or the foundation's ownership of Gurdas International.

| Taxpayer Name: | Mukhi, Raju | **Examiner:** | Serangeli, Joyce |
| --- | --- | --- | --- |
| TIN: | ▮▮8618 | | |
| Tax Form: | 1040 | **Date:** | 10/27/16; 06/09/17; 07/11/17 |

Tax Year (s):  200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012

## Form 3520-A Penalty Issue Lead Sheet

**Issues and Government's Position:**

### Issue #1:

**Issue #1:** whether Mr. Mukhi has a filing requirement for Form 3520A

**Position regarding issue #1:** It is the government's position that Mr. Mukhi has a filing requirement for Form 3520A

Form 3520-A must be filed by a foreign trust with a US owner in order for the US owner to satisfy its annual information reporting requirements under IRC 6048(b). Each person treated as an owner of any portion of a foreign trust under the grantor trust rules is responsible for ensuring that the foreign trust files 3520-A and furnishes the required annual statements to is US owners.

IRC § 301.7701-4(a) defines a trust as an arrangement by which title to property is held by a person or persons, with a fiduciary responsibility to conserve or protect the property for the beneficiaries. Sukhmani Gurkukh Nivas Foundation was formed and listed Mr. Muhki as the primary beneficiary. Per Mr. Mukhi, the foundation does not directly hold any foreign accounts. The foundation owns 100% of Gurdas International. Gurdas has a bank account with ING. Mr. Mukhi directly transferred funds into the Gurdas account and made withdrawals directly. Within the Gurdas bank account, investment securities were purchased. Per the 3520As, interest, capital gains (losses), dividends, and foreign exchange gains (losses) were earned in the Gurdas bank account. Because the Foundation owns Gurdas and Mr. Mukhi is the beneficiary of the Foundation, the income per the 3520As flow through to Mr. Mukhi's 1040 tax return.

The Foundation is a trust per internal revenue laws. Because the foundation is the owner of all of the stock of Gurdas International and Sukhmani Partners II LTD, then the only assets owned by the Foundation is the stock of Gurdas and Sukhmani. The bank accounts of Gurdas and Sukhmani then are tantamount to being accounts of the Foundation.

The "grantor trust rules" of IRC §§671-679 may operate to treat the grantor or another person as owner of all, or a portion, of a trust. The grantor trust rules are based upon the idea that a trust should not be recognized as a separate taxable entity if some person has such dominion and control over it as to create an identity of interest between that person and the trust. The grantor or other owner should be taxed on the income of the trust assets.

It is the government's position that Sukhmani Gurkukh Nikas Foundation be treated as a foreign grantor trust and Mr. Mukhi has a filing requirement for Form 3520A.

### Issue #2:

**Issue #2:** whether Mr. Mukhi is subject to penalties under § 6677

**Position regarding issue #2:** it is the government's position that Mr. Mukhi is subject to penalties under § 6677 for his failure to file timely Forms 3520A. Letter 3804, Notice Required by IRC 6677, was issued in May 2016, requesting Forms 3520 and Forms 3520-A for tax years 2005-2013. POA requested extensions and forms were secured in September 2016.

Penalty_Form_3520-A_Lead_Sheet update 11_18        Workpaper #   300

1.11

11-2013 SAA Draft Job Aid

| **Taxpayer Name:** | Mukhi, Raju | **Examiner:** | Serangeli, Joyce |
| TIN: | ▆▆▆-8618 | | |
| **Tax Form:** | 1040 | **Date:** | 10/27/16; 06/09/17; 07/11/17 |

**Tax Year (s):**    200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012

## Form 3520-A Penalty Issue Lead Sheet

31, 2016, requesting Forms 3520 and Forms 3520-A for tax years 2006-2012. Sanford Boxerman, POA from Capes Sokol, asked for an extension which was granted and Forms 3520 and 3520-A for tax years 2005 through 2013 were received by IRS in September 30m 2016.

**Taxpayer Position:** *(If applicable)*

Mr. Mukhi has submitted delinquent Form 3520As under protest and does not concede that he had or has an obligation to file any of the forms demanded of him in Letter 3804. Mr. Mukhi has filed them because of the harsh penalty structure described in Letter 3804 with the understanding that the submission of the forms does not represent a concession of any kind and does not admit that he has or had any obligation to file them.

Mr. Sandy Boxerman and Mr. David Capes represent Mr. Mukhi before the IRS.
In June 2017, Mr. Capes says that Mr. Mukhi did not set up the foreign entities. He says that the funds in the foreign account are gone and they have not been able to find out where the funds went. They are not even certain if the life insurance policy is in place. They have not provided any kind of loss figures to the Revenue Agent but want those "losses" taken into account against any income tax changes that the IRS proposes.

3520

**RAJU J MUKHI**
**REV LIV TRT** DTD 9/3/2002
CREVE COEUR, MO 63141

3/27/20

Pay to the
Order of   United State Missouri — $ 5000

Five Thousand Dollar only                           Dollars

Corn Coeur
11901 Olive Blvd.
Creve Coeur, MO 63141
1-800-799-BANK (2265)

For

3520 Pending in tax year 2006 —

**RAJU J MUKHI**
**REV LIV TRT** DTD 9/3/2002

CREVE COEUR, MO 63141

80-0942/0810
800

3/27/20

*date*

Pay to the Order of UNITED STATE MISSOURI — $ 5000

Five Thousand Dollars only *dollars*

FIRST BANK
Creve Coeur
11901 Olive Blvd.
Creve Coeur, MO 63141
1-800-760-BANK (2265)
www.firstbanks.com

Form **843**

(Rev. August 2011)
Department of the Treasury
Internal Revenue Service

## Claim for Refund and Request for Abatement

▶ See separate instructions.

OMB No. 1545-0024

Use Form 843 if your claim or request involves:

- **(a)** a refund of one of the taxes (other than income taxes or an employer's claim for FICA tax, RRTA tax, or income tax withholding) or a fee, shown on line 3,
- **(b)** an abatement of FUTA tax or certain excise taxes, or
- **(c)** a refund or abatement of interest, penalties, or additions to tax for one of the reasons shown on line 5a.

Do not use Form 843 if your claim or request involves:

- **(a)** an overpayment of income taxes or an employer's claim for FICA tax, RRTA tax, or income tax withholding (use the appropriate amended tax return),
- **(b)** a refund of excise taxes based on the nontaxable use or sale of fuels, or
- **(c)** an overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.

| | |
|---|---|
| Name(s)<br>Raju J. Mukhi | Your social security number<br>█████8618 |
| Address (number, street, and room or suite no.)<br>████████ | Spouse's social security number |
| City or town, state, and ZIP code<br>St. Louis, MO 63141 | Employer identification number (EIN) |
| Name and address shown on return if different from above | Daytime telephone number<br>████████ |

**1** **Period.** Prepare a separate Form 843 for each tax period or fee year.

From 01/01/2007 to 12/31/2007

**2** Amount to be refunded or abated:
$ 5,000.00/$798,624.00

**3** **Type of tax or fee.** Indicate the type of tax or fee to be refunded or abated or to which the interest, penalty, or addition to tax is related.

☐ Employment   ☐ Estate   ☐ Gift   ☐ Excise   ☐ Income   ☐ Fee

**4** **Type of penalty.** If the claim or request involves a penalty, enter the Internal Revenue Code section on which the penalty is based (see instructions). IRC section: 6677(a)

**5a** **Interest, penalties, and additions to tax.** Check the box that indicates your reason for the request for refund or abatement. (If none apply, go to line 6.)

☐ Interest was assessed as a result of IRS errors or delays.

☐ A penalty or addition to tax was the result of erroneous written advice from the IRS.

☑ Reasonable cause or other reason allowed under the law (other than erroneous written advice) can be shown for not assessing a penalty or addition to tax.

**b** Date(s) of payment(s) ▶ 04/01/2020

**6** **Original return.** Indicate the type of fee or return, if any, filed to which the tax, interest, penalty, or addition to tax relates.

☐ 706   ☐ 709   ☐ 940   ☐ 941   ☐ 943   ☐ 945
☐ 990-PF   ☐ 1040   ☐ 1120   ☐ 4720   ☑ Other (specify) ▶ 3520

**7** **Explanation.** Explain why you believe this claim or request should be allowed and show the computation of the amount shown on line 2. If you need more space, attach additional sheets.

Please see attached statement.

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the officer's title must be shown.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature (Title, if applicable. Claims by corporations must be signed by an officer.)   Date 3/31/20

Signature (spouse, if joint return)   Date

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| Firm's name ▶ | | | Firm's EIN ▶ | |
| Firm's address ▶ | | | Phone no. | |

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.   Cat. No. 10180R   Form **843** (Rev. 8-2011)

## EXPLANATION OF CIRCUMSTANCES IN SUPPORT OF FORMS 843

Taxpayer, Raju Mukhi, is claiming a refund and abatement[1] of Form 3520 penalties listed on the face of this Form 843.  The Form 3520 penalties were assessed under 26 U.S.C. § 6677, as set forth in the IRS's Letter 3946 with enclosures dated September 6, 2017.  A copy of that Letter (without enclosures[2]) in enclosed as *Exhibit 1*.

In asserting these penalties, the Government erroneously assumed that Sukhmani Gurkukh Nivas Foundation ("SGN Foundation") was a foreign trust that engaged in transactions with and held assets of foreign entities.

The penalties assessed are improper.  The payments made toward those penalties should be refunded and the penalties abated in their entirety for the following reasons:

1. No Penalty Should be Imposed

    a. *The Government cannot demonstrate that the SGN Foundation is a Foreign Trust, a prerequisite to asserting a 3520 penalty*

As an initial matter, the Government bears the burden of proof to establish that a taxpayer owes a penalty.  "Notwithstanding any other provision of this title, the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty . . . imposed by this title."  IRC §7491(c).  To meet its burden, and for the presumption of correctness to apply to the proposed penalties, the government must produce "sufficient evidence indicating that it is appropriate to impose the relevant penalty."  *Higbee v. Comm'r*, 116 T.C. 438, 446 (2001).  *See also* Non Docketed Service Advice Review, IRS NSAR 20062701F (applying this standard to a penalty imposed under section 6677).  The Taxpayer respectfully contends that the Government cannot sustain its burden.

In this case, the Government must first show that the Taxpayer had a duty to file a Form 3520 for any of the years in question.  The Government claims that the Taxpayer had a duty, under IRC §6048(a), because the Taxpayer was a United States person who transferred money to the Sukhmani Gurkukh Nivas Foundation, a foreign trust.  The Government also claims that the Taxpayer had a duty, under IRC §6048(c), because the Taxpayer was a United States person who received distributions from the Foundation.

The Government, however, cannot sustain its burden of proof because the Government cannot establish that the Foundation constitutes a trust under the internal revenue laws.  "[T]he term 'trust' as used in the Internal Revenue Code refers to an arrangement created either by a will or by an inter vivos declaration whereby trustees take title to property for the purpose of protecting or conserving it for the beneficiaries."  Treas.Reg. §301.7701-4(a).  *See also* Rev.Rul. 2013-14,

---

[1] Taxpayer included two amounts in Box 2 on the face of Form 843.  The first amount is the amount to be refunded.  The second amount is the amount to be abated.

[2] Upon request, Taxpayer will provide a copy of the enclosures.

2013-26 IRB 1267 (where a trustee's only responsibility was to hold property and transfer title to it at the direction of the taxpayer, "a trust was not established" for federal tax purposes even though arrangement was formally denominated a trust and even though local law might have recognized the arrangement as a trust; "the trustee was a mere agent for the holding and transfer of title to the real property, and the taxpayer retained direct ownership of the real property for federal income tax purposes"). As the Revenue Agent noted, the Government has been unable to obtain the creation documents for the Foundation. *See Exhibit 1.* The Taxpayer respectfully submits that without these documents the Government cannot establish that the Foundation meets the definition of a trust. Absent proof of a trust, no obligation to file Forms 3520 can exist, and, therefore, no penalty for failing to file such forms can be sustained.

> b. *The Government's assertion of 3520 Penalties is Fundamentally Inconsistent with its position in the Prior Criminal Matter*

Moreover, for the Government to assert now that the bank accounts in question were actually held by a trust would contradict the theory upon which the government proceeded in its criminal case against the Taxpayer, captioned United States v. Muhki, 4:14-cr-00173-AGF. In that case the Government took the position that all bank accounts in question belonged to the Taxpayer and that any entity that purported to hold the accounts was a sham. The government should not now be permitted to invoke the purported existence of the Foundation as the basis for the assertion of millions and millions of dollars in penalties against the Taxpayer.

Certain reports and filings in the course of the criminal case substantiate this position and, if required, the Taxpayer will petition the Court to unseal the records for purposes of this Claim for Refund.

The Criminal Tax Manual, Section 5.01(8), interpreting *Santobello v. New York*, 404 U.S. 257 (1971), recognizes that the plea agreement is a contract between the government and the individual:

> Plea agreements are more than mere contracts, though. Because they necessarily implicate a criminal defendant's fundamental constitutional rights, and in light of the investigative and prosecutorial power of the government, the interpretation of plea agreements is subject to due process constraints to ensure that the plea bargaining defendant receives all that is due from the government.

Here, the Government and the Taxpayer agreed to treat as a sham certain foreign entities, and further agreed that the income generated by those putative entities was attributable directly to Taxpayer. Taxpayer relied on the Government's representations and position in entering into the Plea Agreement. The Government's position binds the government, including the IRS, in future determinations concerning Taxpayer and the tax years currently at issue.

c. *The Government's assertion of Penalties Violates Taxpayer's Rights under the Eighth Amendment*

Taxpayer respectfully submits that imposition of a Form 3520 penalty in excess of $5 million would represent an unconstitutional excessive fine under the Eighth Amendment to the United States Constitution. "Excessive bail shall not be required, *nor excessive fines imposed*, nor cruel or unusual punishments inflicted." U.S.CONST. AMEND. VIII (emphasis added). One Court recently stated that it does not believe that the Eighth Amendment applies to civil tax penalties but that if the Eighth Amendment does so apply, then penalties imposed for failure to file forms Form 3520-A could, in particular instances, be deemed excessive and unconstitutional. *See In re Wyly*, 552 B.R. 338, 602-24 (Bankr. N.D.Tex. 2016).

Additionally, the penalties are not acceptable under the Eighth Amendment because they do not meet the two-prong test, first set forth in first set forth in *Helvering v. Mtichell*, 303 U.S. 391 (1938): that (a) penalties must exist to protect revenue and (b) penalties must bear a relationship to the government's direct loss. "[T]ax penalties are remedial because they exist as "a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Dewees v. United States*, 272 F. Supp. 3d 96, 100-01 (D.C. Cir. 2019). The penalties asserted here are arbitrary and capricious because they bear no relationship to the loss to the government. Otherwise stated, the penalty structure violates Taxpayer's constitutional rights because the statue under which the penalties are imposed is flawed and does not comply with the requirements of *Helvering v. Mitchell*. *C.f., Timbs v. Indiana*, 139 S. Ct. 682 (2019).

d. *The Government's assertion of Penalties Violates Taxpayer's Due Process Rights under the Fifth Amendment*

A $5 million penalty under the facts and circumstances of this case constitutes a deprivation of property without due process of law, in contravention of the Fifth Amendment to the Constitution. In this case, the Government would be asking the Taxpayer to pay a huge penalty, calculated on the basis of monies that may have existed during the 2005 through 2008 timeframe but which no longer exist today because they were misappropriated by ING Bank and its personnel in 2010. That is patently unreasonable.

e. *Reasonable Cause Exists to Excuse Taxpayer's Non-Filing of a Form 3520*

In addition, the Taxpayer maintains that, if he had an obligation to File Form 3520, then his failure to have filed the form is excused by reasonable cause. "No penalty shall be imposed by this section on any failure which is shown to be due to reasonable cause and not due to willful neglect." Code §6677(d). "Whether reasonable cause exists depends upon all of the facts and circumstances of the case, including the taxpayer's reason for failing to properly file, and the extent of his efforts to comply . . . . [I]gnorance of the law may provide reasonable cause if . . . '[t]he taxpayer was unaware of a requirement and could not reasonably be expected to know of the requirement.'" *James v. United States*, No. 8-11-cv-271-T-30AEP (M.D.Fla. August 14, 2012)

(available at 2012 WL 3522610) (quoting Internal Revenue Manual). "The determination of whether a taxpayer acted with reasonable cause . . . is made on a case-by-case basis, taking into account all pertinent facts and circumstances . . . . Circumstances that may indicate reasonable cause . . . include an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including the experience, knowledge and education of the taxpayer." Treas.Reg. §1.6664-4(b)(1). In this case, the Taxpayer had no knowledge whatsoever with respect to any kind of filing or reporting obligation he might have had regarding the Foundation. The first time he ever heard of a Form 3520 was in 2016 during the civil examination of this matter. It is not the case that he knew of the obligation and decided not to meet it. It is not the case that he knew of the obligation and erroneously determined that he did not have to comply with it. It is the case that he simply had no personal knowledge as to such an obligation.

## 2. The Penalty Amount was Improperly Calculated

While the Taxpayer believes, for reasons stated above, that no penalty should be imposed, the Taxpayer also wishes to point out certain errors in the calculation of the penalty that have caused the proposed penalty to be overstated.

First, the calculation, to the extent it is based on money allegedly contributed to the Foundation, overstates that amount. The Revenue Agent's Report identified $9,729,249 as going into the Foundation. Of that amount, the Revenue Agent's Report determined that Sukhmani Partners II Ltd ("SPII"), a British Virgin Islands entity, contributed $5,577,465. The Report, however, calculated the Form 3520 based on all contributions to the Foundation, including those made by SP II. However, only contributions made by a United States person are required to be reported, so the penalty calculation should have excluded the amounts contributed by the non-U.S. business entity.

Second, the calculation is also based on money allegedly distributed by the Foundation to the Taxpayer. The Taxpayer respectfully submits, however, that the Government cannot sustain its burden of proving that all the funds identified as moving from the Foundation to the Taxpayer did, in fact, go to the Taxpayer. Moreover, the Taxpayer respectfully submits that the Government cannot sustain its burden of proving that, if money went to the Taxpayer, such payments represented "distributions", as that terms is used in IRC §6048(c) (United States person must report "distributions" received from a foreign trust). To the extent the Taxpayer received payments from the Foundation that were something other than "distributions," those amounts should not be included in the penalty calculation.

**Internal Revenue Service**

**Department of the Treasury**

Date:
09/06/2017
Taxpayer Identification Number:
xxx-xx-8618
IRS Contact Information:
Joyce Serangeli

Raju Mukhi

████████████████

St Louis MO 63141

M/S 4115/OVDI
Chesterfield, MO 63017
Telephone Number:
████████████

Fax Number:
████████4
IRS Employee ID Number:
████████████

Respond by:

Dear Taxpayer:

**Why We Are Writing to You**
We received your statement for Sukhmani Gurkukh Nivas Foundation          dated September 30, 2016
and found that it does not establish reasonable cause.

You may delegate the duties of filing tax returns; however, it is your responsibility to ensure that all returns are
timely and accurately filed.

You have fulfilled your filing obligations for Sukhmani Gurkukh Nivas Foundation, but you filed the returns
late. Therefore, we will assess the Initial Penalty as explained in our letter dated May 31, 2016.

**What You Will Be Assessed**
The tables on page 3 show how we calculated the penalties for each return and each taxable year. As of
September 6, 2017, you will owe $ 10,999,868

**What You Need To Do**
- If you have not filed your complete and accurate return(s), you must send them to the IRS contact
  information as listed on page 1, to avoid additional penalties. We must receive your returns by

- If you accept our decision, you should pay $ 10,999,868 by October 6, 2017   . Make your check
  payable to the **"U.S. Treasury."** Write your taxpayer identification number, "civil penalties," and taxable
  year(s) on the memo line of the check. Mail your payment using the IRS contact information on page 1.

- If you disagree with our decision and plan to appeal, you can avoid future interest on these penalties by
  paying $ 10,999,868 .

Ex 1

Letter **3946** (Rev. 9-2011)
Catalog Number 39098A

## Penalty Calculations

| Required Returns | Penalty (IRC section 6677) | How We Calculate the Penalty |
|---|---|---|
| Form 3520 | Initial | The greater of $10,000 or 35% of gross reportable amount |
| | Continuing | $10,000 every 30 days until gross reportable amount reached |
| Form 3520-A | Initial | The greater of $10,000 or 5% of gross reportable amount |
| | Continuing | $10,000 every 30 days until gross reportable amount reached |

**Penalties Apply to Following Return(s)**

**How We Calculated the Initial Penalty**

| Form | Taxable Year | Gross Reportable Amount | Penalty Rate % | Amount of Penalty |
|---|---|---|---|---|
| 3520 | 200512-200812 | 14,512,713 | 35 | $ 5,079,449 |
| 3520A | 200512-201012 | 118,408,377 | 5 | $ 5,920,419 |
| | | | | $ |
| | | | | $ |
| | | | Total | $ 10,999,868 |

**How We Calculated the Continuing Penalty**

| Form | Taxable Year | Number of 30-Day Periods | Amount of Penalty |
|---|---|---|---|
| | not applicable | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | | Total | $ 0 |

**As of September 6, 2017 , Total Penalties You Will Owe:  $ 10,999,868**

**Letter 3946 (Rev. 9-2011)**
Catalog Number 39098A

| Taxpayer Name: | Mukhi, Raju | Examiner: | Serangeli, Joyce |
|---|---|---|---|
| TIN: | ▓▓▓-8618 | | |
| Tax Form: | 1040 | Date: | 10/21/16; 07/11/17 |
| Tax Year (s): | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520 Penalty Issue Lead Sheet

| Tax Period | Per Return | Per Exam | Adjustment | Reference |
|---|---|---|---|---|
| 200512 | 0.00 | 1,639,975.00 | 1,639,975.00 | |
| 200612 | 0.00 | 991,148.00 | 991,148.00 | |
| 200712 | 0.00 | 798,624.00 | 798,624.00 | |
| 200812 | 0.00 | 1,649,702.00 | 1,649,702.00 | |

**Conclusion:**

The Service has determined that failure to report distributions and contributions apply under § 6048 and § 6677(a).

**Facts:**

Raju Mukhi is a citizen of the United States currently residing in Saint Louis, MO. He owns a US business, Contract Management Services LLC that earns income from manufacturing and selling uniforms overseas. Mr. Mukhi's primary source of income reported on his originally filed 1040 tax returns are wages from Contract Management Services LLC.

Throughout 2001 and 2010, Mr. Mukhi established relationships with foreign and domestic companies to create a network of companies, trusts, and bank accounts.

Prior to 2001 Mr. Mukhi entered into a relationship with Interadvice Directorate Ltd, a British Virgin Isle company owned by Trident Trust Company

**Foreign Entity: Sukhmani Partners II Ltd**
**Entity Classification: Foreign Corporation**
**Number of Foreign Accounts Owned: 2**
**Date Incorporated: 11/21/2001**
**Date Dissolved: Still Active**

On November 21st, 2001, Sukhmani Partners II Ltd was incorporated in the British Virgin Isles as an international business corporation (Exhibit 1). According to the Memorandum of Association, Sukhmani listed Trident Trust Company Limited as its Registered Agent and Interadvice Directorate Ltd as the First Director of the Company. The primary address for Sukhmani Partners II Ltd is Landstreasse 25 PO Box 439, Vaduz LS FL 9490.



In or around 2002, Mr. Mukhi used Sukhmani Partners II Ltd to open, or cause to be open, two foreign accounts. One account was held at Clariden Leu in Switzerland. The other account was at Goldman, Sachs & Company Bank in Singapore. During a conversation with the Power of Attorney Boxerman, from Capes Sokol, on

**Taxpayer Name:** Mukhi, Raju                   **Examiner:** Serangeli, Joyce
**TIN:** ▆▆▆8618
**Tax Form:** 1040                               **Date:** 10/21/16; 07/11/17
**Tax Year (s):** 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012

## Form 3520 Penalty Issue Lead Sheet



Excerpt from the Goldman, Sachs & Company Bank statement from January 31, 2009. "*The calculations noted above (other than contributions and distributions since the last capital statement) are taken from the applicable partnership capital value statement as provided by the fund administrator. A partnership capital value statement is available upon request from your investment professional. Tax information regarding these investments, including allocations of income and realized and unrealized gains and losses will be available through a Schedule K-1 which will be mailed to you after year end.*"

Through the Goldman, Sachs & Company Bank, Sukhmani Partners II Ltd was a limited foreign partner in two domestic US partnerships, Mezzanine and Technology. Goldman, Sachs & Company Bank only provided the capital account balance, all income details were to be provided by the partnerships themselves.

The examiner issued pattern letters requesting Form 5471s.

| 5471 Pattern Letter Issued | Years Requested | 5471 received date |
|---|---|---|
| April 2015 | 2006-2013 | July 21, 2015 |
| August 2015 | 2002-2005 | January 2016 |

The examiner also requested copies of the Schedule K-1's for both Mezzanine and Technology on April 6, 2015. The Power of Attorney Boxerman stated they had the K-1's for Mezzanine but not for Technology. However they did have the financial statements for Technology. When the

| Taxpayer Name: | Mukhi, Raju | Examiner: | Serangeli, Joyce |
|---|---|---|---|
| TIN: | ▉▉▉▉-8618 | | |
| Tax Form: | 1040 | Date: | 10/21/16; 07/11/17 |
| Tax Year (s): | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520 Penalty Issue Lead Sheet



In early 2002, Sukhmani Gurkukh Nivas Foundation was formed listing Mr. Mukhi as the primary beneficiary. Originally the secondary beneficiaries were his then wife, Sonia Mukhi, and his two children, Seema and Rishi Mukhi. Sonia passed away November 17, 2009 and is believed to have been a US person. Seema and Rishi are the taxpayer's children and are believed to be US persons: both were issued social security numbers within two years of their birth and they both have US residences. On August 14, 2002 the secondary beneficiaries were changed to Mr. Mukhi's mother, Kamal Mukhi (not sure if she is a US person) and Sadhu Vaswani Mission, a foreign trust held for the benefit of Kamal. Interadvice Directorate Ltd is named as the members on the Foundation's board. (See Exhibit 3)

The property in the Foundation is not identified specifically in Exhibit 3 but beneficiaries and trustees have been identified which would indicate under the IRC that there is a foreign trust.

Sukhmani Gurkukh Nivas Foundation (the "Foundation") was formed in Lichtenstein January 9, 2002 per Form 3520 prepared for the examination. The taxpayer has been unable to provide the foundation creation documents. Per the German document referred to above, the foundation was created in January 2002. On August 14, 2002, the Trustees were agreed to make changes to the beneficiaries. The property in the Foundation is not identified specifically in the German document but beneficiaries and trustees have been identified which would indicate under the IRC that there is a foreign trust.

Per the taxpayer, the Foundation did not directly hold any foreign accounts and on November 26, 2005, the foundation obtained 100% ownership of Gurdas International, by holding 100 bearer shares. Gurdas International ("Gurdas") is a corporation formed in 2005 under the laws of Panama. (Exhibit 4) Any bank accounts of Gurdas therefore, are accounts of the Foundation

| **Taxpayer Name:** | Mukhi, Raju | **Examiner:** | Serangeli, Joyce |
|---|---|---|---|
| **TIN:** | ▮▮▮-8618 | | |
| **Tax Form:** | 1040 | **Date:** | 10/21/16; 07/11/17 |
| **Tax Year (s):** | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520 Penalty Issue Lead Sheet

In addition to moving money from his offshore accounts held by Sukhmani Partners II Ltd, Mr. Mukhi also electronically transferred funds individually. Mr. Mukhi electronically transferred $2,000,000 to the Gurdas' ING account on November 22, 2006, the ING bank statement notated the transfer with "From UBS Stamford Branch CP". On March 8, 2007 Mr. Mukhi transferred $748,000 to Gurdas and 11 days later he transferred $1,198,228.52 with the notation "From SW UBSWU33XXX". On November 5, 2007 Contract Management Services, the domestic entity owned by Mr. Mukhi, transferred $205,556.70 to Gurdas' ING account.



In total Gurdas International received directly and indirectly through Mr. Mukhi's foreign and domestic entities, $9,729,249.

From a review of the bank statements of Gurdas' ING Bank account, there are several entries per month of term loans being made and paid off. The loans were used to purchase securities. In October 2005, Gurdas purchased $4 million in securities through ING Bank; at the time they had $4,678,848.68 in Fixed Deposits from additional electronic transfers from Sukhmani Partners II Ltd via the Clariden Leu account. Per the October 2005 bank statement, ING Bank reflects Gurdas as having Total Assets of $10,938,801.06 and Total Liabilities of $4,001,291.99. The Gurdas account has reflected a range of loans from $2,387,255.52 in November 2005 to a high of $38,451,209.31 in October 2006 and a low in Feb 2009 of $1,646,534.44. After February 2009, there are no loans in the Gurdas account.

ING Bank statements which list Gurdas International as the owner were provided. There are cash withdrawals, transfers and payments that the government asked about.
- Cash withdrawal of $20,030 on 07/24/2006
- Cash withdrawal of $20,000 on 11/21/2006
- Cash withdrawal of $10,000 on 09/14/2007
- Swift payment to Mukhi of $213,114 on 01/09/2008
- Swift payment to Mukhi of $4,098,360 on 02/05/2008
- Swift payment to Mukhi of $401,960 on 2/27/2008

In a December 2016 letter, Mr. Boxerman stated "Without necessarily agreeing with the IDR's statement that 'Raju withdrew $4.7 mil in 2008,' Taxpayer states that the three (3) transfers totaling approximately $4,700,000 (1.9/08, 2/4/08 and 2/27/08) referred to in the IDR went to a

| | | | |
|---|---|---|---|
| **Taxpayer Name:** | Mukhi, Raju | **Examiner:** | Serangeli, Joyce |
| **TIN:** | ■■-8618 | | |
| **Tax Form:** | 1040 | **Date:** | 10/21/16; 07/11/17 |
| **Tax Year (s):** | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520 Penalty Issue Lead Sheet

Disclosure Program. Ebert never saw any bank statements or anything else relating to Mr. Mukhi's offshore accounts.

Mr. Mukhi attempted to enter the Offshore Voluntary Disclosure Program after he received a letter from Clariden Leu. Mr. Boxerman does not know the exact date the Clariden Leu letter was received, but he confirms it was after 2010. According to Mr. Boxerman, Mr. Mukhi was rejected for the offshore program during his pre-clearance phase because Goldman, Sachs, & Company Bank had submitted information to Criminal Investigation. At that point, Mr. Mukhi was under examination for failing to file report income earned by his foreign holdings. During his examination, Mr. Mukhi did not disclose his involvement in the foundation or the foundation's ownership of Gurdas International.

### Forms 3520

IDR 8 was issued April 1, 2016 requesting Form 3520's. Letter 3804 was issued 5/31/2016 which is the pattern letter requesting Forms 3520 and 3520A for the years 2005 through 2013. Mr. Boxerman asked for and was granted an extension until 9/30/2016. Form 3520's and 3520A's were received via courier on 9/30/2016 for tax years 2005-2013.

Taxpayer has submitted delinquent Form 3520's which detail the following distributions:
- $20,000 in December 2005
- $51,559 in 2006 — various distributions in July and November
- $46,646 in 2007 — a distribution in August and September
- $28,253 in 2008 — a distribution in January and July

### Service's Position

#### Issue #1

**Issue #1:** whether Mr. Mukhi has a filing requirement for Form 3520.
**Government's Position regarding Issue #1:** it is the government's position that Mr. Mukhi has a filing requirement for Form 3520.

#### Argument regarding Issue #1:

Form 3520 must be filed by
- a US person who is treated as the owner of any part of the assets of a foreign trust
- a US person who received a distribution from a foreign trust

Mr. Mukhi is a US citizen.

IRC § 301.7701-4(a) defines a trust as an arrangement by which title to property is held by a person or persons, with a fiduciary responsibility to conserve or protect the property for the beneficiaries. Memorandum of association (creation documents) has been provided for Sukhmani Gurkukh Nivas Foundation. The Foundation was incorporated on November 21, 2001 in the British Virgin Islands. (In the case file, these documents are stamped as "Treaty Information". However, these documents came from Mr. Mukhi's power of attorney.) Mr. Mukhi

Form 3520 Penalty Issue Lead Sheet                    Workpaper #        300  -9

| Taxpayer Name: | Mukhi, Raju | | **Examiner:** | Serangeli, Joyce |
| TIN: | ▇▇▇-8618 | | | |
| Tax Form: | 1040 | | **Date:** | 10/21/16; 07/11/17 |
| Tax Year (s): | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | | |

## Form 3520 Penalty Issue Lead Sheet

| | | |
|---|---|---|
| contribution | 5/19/2006 | 272,000 |
| distribution | 7/24/2006 | 20,030 |
| contribution | 8/29/2006 | 70,012 |
| contribution | 9/1/2006 | 90,124 |
| contribution | 9/4/2006 | 81,686 |
| contribution | 10/11/2006 | 110,000 |
| distribution | 11/21/2006 | 20,000 |
| contribution | 11/22/2006 | 2,000,000 |
| penalty base | | 2,831,852 |
| penalty rate 35% | | 0.35 |
| 3520 penalty-2006 | | 991,148 |
| | | |
| contribution | 1/18/2007 | 120,000 |
| contribution | 3/8/2007 | 748,000 |
| contribution | 3/19/2007 | 1,198,228 |
| distribution | 9/14/2007 | 10,000 |
| contribution | 11/5/2007 | 205,556 |
| penalty base | | 2,281,784 |
| penalty rate 35% | | 0.35 |
| 3520 penalty-2007 | | 798,624 |
| | | |
| payment to TP | 1/9/2008 | 213,114 |
| payment to TP | 2/4/2008 | 4,098,360 |
| payment to TP | 2/27/2008 | 401,960 |
| | | |
| penalty base | | 4,713,434 |
| penalty rate 35% | | 0.35 |
| 3520 penalty-2008 | | 1,649,702 |

Note: distributions are what the taxpayer's accountant included on Form 3520's. Contributions are from the bank statements and the narrative on the bank statement includes the taxpayer's name.

Taxpayer indicates on Form 3520's filed that he only filed them to avoid the harsh penalty structure set out in the IRC. However, taxpayer has received distributions from and made contributions to what the IRS has determined to be a foreign trust. Therefore, Form 3520's are required to be filed.

**Form 3520 Penalty Issue Lead Sheet**                    Workpaper #      300   -11

| | | | |
|---|---|---|---|
| **Taxpayer Name:** | Mukhi, Raju | **Examiner:** | Serangeli, Joyce |
| **TIN:** | ▮▮▮-8618 | | |
| **Tax Form:** | 1040 | **Date:** | 10/21/16; 07/11/17 |
| **Tax Year (s):** | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520 Penalty Issue Lead Sheet

**IRC § 6677(c) (3)** – Defines the "gross reportable amount" as the gross amount of distributions in the failure relating to IRC 6048(c).

**IRC § 6048 – Information reporting with respect to certain foreign trusts:**

**IRC § 6048(c) (1)** – Requires a U.S person that receives a distribution from a foreign trust to furnish certain information about the trust and the distribution to the secretary.

**IRC § 7701(a)(30)** – defines "United States person" as:
  (A) a citizen or resident of the United States,
  (B) a domestic partnership,
  (C) a domestic corporation,
  (D) any estate [other than a foreign estate within the meaning of paragraph (31)], and
  (E) any trust over which a United States court may exercise primary supervision and which one or more United States persons control all substantial decisions of the trust.

**IRC § 7701(a)(31)** defines the term a "foreign trust" broadly to mean any trust other than a trust treated as a US person.

**26 CFR 301.7701-4** defines a trust as an arrangement whereby trustees take title to property for the purpose of protecting or conserving it for the beneficiaries.

**IRC § 6501(c) (8)** – Provides exceptions to the normal 3-year statute of limitations for failures to provide the Secretary with the information required under IRC §§ 6038, 6038A, 6038B, 6046, 6046A, or 6048. The time for assessment of tax related to such failures shall not expire prior to the date which is three years after the date the Secretary was provided with the required information.

| Taxpayer Name: | Mukhi, Raju | Examiner: | Serangeli, Joyce |
| TIN: | ▮▮▮-8618 | | |
| Tax Form: | 1040 | Date: | 10/27/16; 06/09/17; 07/11/17 |

Tax Year (s):  200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012

## Form 3520-A Penalty Issue Lead Sheet

| Transactions with Foreign Trusts | Tax Year 2005 | Tax Year 2006 | Tax Year 2007 | Tax Year 2008 |
|---|---|---|---|---|
| IRC 6677 (PRN 660)- Initial | 791,273.00 | 2,281,882.00 | 2,137,028.00 | 469,496.00 |
| Transactions with Foreign Trusts | Tax Year 2009 | Tax Year 2010 | | |
| IRC 6677 (PRN 660)- Initial | 118,118.00 | 122,622.00 | N/A | N/A |
| IRC 6677 (PRN 703)- Continuation | 0 | 0 | 0 | 0 |
| | | | | |

**Conclusion:** *(Reflects the final determination on the issue.)*
The Service has concluded penalties under § 6677 apply and should be assessed.

**Taxpayer Name:** Mukhi, Raju  
**TIN:** ███-8618  
**Tax Form:** 1040  

**Examiner:** Serangeli, Joyce  

**Date:** 10/27/16; 06/09/17; 07/11/17  

**Tax Year (s):** 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012

## Form 3520-A Penalty Issue Lead Sheet

### Clariden Bank

| Date | Balance |
|------|---------|
| 12/31/2003 | $ 8,306,440.00 |
| 12/31/2004 | $11,588,740.00 |
| 12/31/2005 | $ 3,448,363.00 |
| 3/31/2006 | $ 627,501.00 |
| 9/30/2007 | $ 322,254.00 |
| 12/31/2008 | $ 299,463.00 |
| 12/31/2009 | $ 208,761.00 |
| 12/31/2010 | $ 154,000.00 |

### Goldman, Sachs, & Company Bank

| Date | Balance |
|------|---------|
| 8/31/2005 | $ 3,037,524.00 |
| 4/30/2006 | $ 272,746.00 |
| 12/31/2007 | $ 195,592.00 |
| 9/30/2008 | $ 1,377,415.00 |
| 1/31/2009 | $ 1,360,401.00 |
| 2/28/2010 | $ 1,240,910.00 |

At the time the accounts at Goldman, Sachs & Company Bank and Clariden Leu were opened, Mr. Mukhi had been filing US tax returns since 1988.

On April 2, 2015, the examiner reviewed Clariden Leu and Goldman, Sachs & Company Bank statements for tax years 2009 and 2010. The 2006 bank statements were provided on April 13, 2015.

According to the bank statements, the two foreign accounts generated investment income ranging from interest, dividends, and capital losses to gains from PFIC (Passive Foreign Investment Companies).

As the examiner was reviewing the bank statements she noted that the Goldman, Sachs & Company Bank account was reporting two investment activities in a category titled "Alternative Investments". The activities were identified as GS Mezzanine Partners II Offshore LP(Mezzanine) and GS Private Equity Partners Technology 2000 Fund Offshore LP(Technology), see excerpt below from the 2006 Goldman, Sachs & Company Bank account statement.

| **Taxpayer Name:** | Mukhi, Raju | **Examiner:** | Serangeli, Joyce |
|---|---|---|---|
| **TIN:** | ▮▮▮-8618 | | |
| **Tax Form:** | 1040 | **Date:** | 10/27/16; 06/09/17; 07/11/17 |

**Tax Year (s):** 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012

## Form 3520-A Penalty Issue Lead Sheet

Power of Attorney stated that the items were not provided, no explanation was given as to why the statements were withheld from the Special Agent.

Mezzanine issued Schedule K-1's to Sukhmani Partners II Ltd to report their share of income and expenses. The address listed on the K-1 was Trident Chambers Road Town, Tortola, British Virgin Islands. The K-1's were not filed with the IRS.

Technology provided a Capital Analysis statement to Mr. Mukhi for tax years 2009 and 2010. Using this information the examiner was able to identify the various types of flow thru income taxable to Mr. Mukhi.

Per the financial statements for Technology and the Schedule K-1's for Mezzanine and the bank statements for Clariden Leu and Goldman, Sachs & Company Bank, Mr. Mukhi failed to report $2,044,671.00 in Subpart F Income years 2003, 2004, 2005, 2006, 2007, 2008, 2009, and 2010. In addition Mr. Mukhi failed to meet his foreign filing requirements under IRC § 6038A, by not filing form 5471 *Information Return of a US Person with Respect to Certain Foreign Corporations.*

| | | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| Subpart F Income (1040 Ord Div) | | $170,602.00 | $601,414.00 | $959,429.00 | $158,961.00 | $61,146.00 | $47,713.00 |
| | | **2009** | **2010** | **2011** | **2012** | **2013** | |
| | | $ 20,766.00 | $ - | $ - | $ 12,243.00 | $12,397.00 | |

**Foreign Entity: Sukhmani Gurkukh Nivas Foundation**
**Entity Classification: Foreign Grantor Trust**
**Number of Foreign Accounts Owned: 0**
**Date Incorporated: Jan 2002**
**Date Dissolved: Still Active**

| Taxpayer Name: | Mukhi, Raju | Examiner: | Serangeli, Joyce |
| --- | --- | --- | --- |
| TIN: | ████-8618 | | |
| Tax Form: | 1040 | Date: | 10/27/16; 06/09/17; 07/11/17 |
| Tax Year (s): | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520-A Penalty Issue Lead Sheet

Foundation…" (Exhibit 5)

**Foreign Entity: Gurdas International Ltd SA**
**Entity Classification: Foreign Corporation**
**Number of Foreign Accounts Owned: 1**
**Date Incorporated: 9/28/2005**
**Date Dissolved: Still Active**

On September 28, 2005 Gurdas International Ltd SA was incorporated in Panama (Exhibit 6). Per the Articles of Incorporation, Interadvice Directorate Ltd is listed as the Initial Officers and Directors.



On June 10, 2005 Interadvice Directorate Ltd signed account opening documents at ING Bank to open the account 400843-1 at their ING Asia Private Bank branch under Gurdas International. The account held a $0 balance until $2 mil was transferred from the Goldman Sachs account held by Sukhmani Partners II Ltd on September 29, 2005. In total the Clariden Leu account held by Sukhmani Partners II Ltd transferred $2,297,779 to the ING account held by Gurdas International in 2005 and 2006. The Goldman, Sachs & Company Bank account transferred over $3,198,000 to Gurdas' ING account between 2005 and 2007.  All transfers were electronic. (Exhibit 7)

In addition to moving money from his offshore accounts held by Sukhmani Partners II Ltd, Mr. Mukhi also electronically transferred funds individually. Mr. Mukhi electronically transferred $2,000,000 to the Gurdas' ING account on November 22, 2006, the ING bank statement notated the transfer with "From UBS Stamford Branch CP". On March 8, 2007 Mr. Mukhi transferred $748,000 to Gurdas and 11 days later he transferred $1,198,228.52 with the notation "From SW UBSWU33XXX).  On November 5, 2007 Contract Management Services, the domestic entity owned by Mr. Mukhi, transferred $205,556.70 to Gurdas' ING account.

| Taxpayer Name: | Mukhi, Raju | Examiner: | Serangeli, Joyce |
|---|---|---|---|
| TIN: | ▉▉▉-8618 | | |
| Tax Form: | 1040 | Date: | 10/27/16; 06/09/17; 07/11/17 |
| Tax Year (s): | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520-A Penalty Issue Lead Sheet

based in Seattle, with offices in Singapore, who advertises life insurance policies for high wealth individuals. Per their website, "RE Lee has innovative strategies to increase the advantages of life insurance in a tax- efficient manner." Kabool 1 LLC was incorporated in the state of Washington on March 28, 2006 listing RE Lee as the registering agent, Kabool has been inactive since July 1, 2010.

Mr. Mukhi signed and filed a life insurance application with ING Security Life of Denver Insurance Policy Company on April 17, 2006. The application lists Kabool Trust as the beneficiary of the life insurance policy, according to the application the trust was established on March 15, 2006. Mr. Mukhi identifies the owner of the trust as Kabool 1 LLC (See Exhibit 8).

On May 5, 2006 Kabool 1 LLC wire transferred $6,495,058.67 to ING Security Life of Denver Insurance Policy Company to purchase the $16.5 mil life insurance policy listing Mr. Mukhi as the insured party. (See Exhibit 9)

According to the ING Bank December 2006 bank statements for Kabool 1 LLC's account 401137-1, the entity took out a Term Loan for $6,559,585.94. Following the same pattern as Gurdas, Kabool 1 LLC began taking out and paying back multiple short term loans to purchase and sell currencies. On the October 2007, Portfolio Distribution Overview, an External – Insurance Policy for $6,150,572.08 is listed as an asset with over $7 Million in loans. In April 2009, the Insurance Policy is listed with a value of $6,321,943.15. In May 2009, the line item for the insurance policy is zero. A payment is made to Security Life of Denver Ins Co for $6,336,686.76 and the account balance is a negative $2,388,995.98. (See Exhibit 10)

### Tax Preparation

Between 2004 through 2010, Mr. Mukhi had two different paid tax preparers handling his individual income tax returns. John Brandvein, CPA prepared the 2004 individual income tax return, and Reece Ebert, CPA prepared the returns between 2005 through 2010. The returns did not disclose Mr. Mukhi's involvement with the foreign entities or the foreign bank account.

According to a statement made by Mr. Boxerman, Ebert told the Special Agent he sent out tax organizers every year which included questions about foreign accounts and income. Ebert verified that Mr. Mukhi filled out and sent back the organizers indicating he did not have any foreign accounts or income. Ebert states he was not aware Mr. Mukhi had any connection to foreign accounts until Mr. Mukhi approached him about entering the Offshore Voluntary Disclosure Program. Ebert never saw any bank statements or anything else relating to Mr. Mukhi's offshore accounts.

Mr. Mukhi attempted to enter the Offshore Voluntary Disclosure Program after he received a letter from Clariden Leu. Mr. Boxerman does not know the exact date the Clariden Leu letter was received, but he confirms it was after 2010. According to Mr. Boxerman, Mr. Mukhi was rejected for the offshore program during his pre-clearance phase because Goldman, Sachs, & Company Bank had submitted information to Criminal Investigation. At that point, Mr. Mukhi was under examination for failing to file report income earned by his foreign holdings. During his examination, Mr. Mukhi did not disclose his involvement in the foundation or the foundation's ownership of Gurdas International.

| **Taxpayer Name:** | Mukhi, Raju | **Examiner:** | Serangeli, Joyce |
|---|---|---|---|
| **TIN:** | ▮▮-8618 | | |
| **Tax Form:** | 1040 | **Date:** | 10/27/16; 06/09/17; 07/11/17 |
| **Tax Year (s):** | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520-A Penalty Issue Lead Sheet

**Issues and Government's Position:**

### Issue #1:

**Issue #1:** whether Mr. Mukhi has a filing requirement for Form 3520A

**Position regarding issue #1:** It is the government's position that Mr. Mukhi has a filing requirement for Form 3520A

Form 3520-A must be filed by a foreign trust with a US owner in order for the US owner to satisfy its annual information reporting requirements under IRC 6048(b). Each person treated as an owner of any portion of a foreign trust under the grantor trust rules is responsible for ensuring that the foreign trust files 3520-A and furnishes the required annual statements to is US owners.

IRC § 301.7701-4(a) defines a trust as an arrangement by which title to property is held by a person or persons, with a fiduciary responsibility to conserve or protect the property for the beneficiaries. Sukhmani Gurkukh Nivas Foundation was formed and listed Mr. Muhki as the primary beneficiary. Per Mr. Mukhi, the foundation does not directly hold any foreign accounts. The foundation owns 100% of Gurdas International. Gurdas has a bank account with ING. Mr. Mukhi directly transferred funds into the Gurdas account and made withdrawals directly. Within the Gurdas bank account, investment securities were purchased. Per the 3520As, interest, capital gains (losses), dividends, and foreign exchange gains (losses) were earned in the Gurdas bank account. Because the Foundation owns Gurdas and Mr. Mukhi is the beneficiary of the Foundation, the income per the 3520As flow through to Mr. Mukhi's 1040 tax return.

The Foundation is a trust per internal revenue laws. Because the foundation is the owner of all of the stock of Gurdas International and Sukhmani Partners II LTD, then the only assets owned by the Foundation is the stock of Gurdas and Sukhmani. The bank accounts of Gurdas and Sukhmani then are tantamount to being accounts of the Foundation.

The "grantor trust rules" of IRC §§671-679 may operate to treat the grantor or another person as owner of all, or a portion, of a trust. The grantor trust rules are based upon the idea that a trust should not be recognized as a separate taxable entity if some person has such dominion and control over it as to create an identity of interest between that person and the trust. The grantor or other owner should be taxed on the income of the trust assets.

It is the government's position that Sukhmani Gurkukh Nikas Foundation be treated as a foreign grantor trust and Mr. Mukhi has a filing requirement for Form 3520A.

### Issue #2:

**Issue #2:** whether Mr. Mukhi is subject to penalties under § 6677

**Position regarding issue #2:** it is the government's position that Mr. Mukhi is subject to penalties under § 6677 for his failure to file timely Forms 3520A. Letter 3804, Notice Required by IRC 6677, was issued in May 2016, requesting Forms 3520 and Forms 3520-A for tax years 2005-2013. POA requested extensions and forms were secured in September 2016.

| | | | |
|---|---|---|---|
| **Taxpayer Name:** | Mukhi, Raju | **Examiner:** | Serangeli, Joyce |
| **TIN:** | ▮▮▮▮-8618 | | |
| **Tax Form:** | 1040 | **Date:** | 10/27/16; 06/09/17; 07/11/17 |
| **Tax Year (s):** | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520-A Penalty Issue Lead Sheet

31, 2016, requesting Forms 3520 and Forms 3520-A for tax years 2006-2012: Sanford Boxerman, POA from Capes Sokol, asked for an extension which was granted and Forms 3520 and 3520-A for tax years 2005 through 2013 were received by IRS in September 30m 2016.

**Taxpayer Position:** *(If applicable)*

Mr. Mukhi has submitted delinquent Form 3520As under protest and does not concede that he had or has an obligation to file any of the forms demanded of him in Letter 3804. Mr. Mukhi has filed them because of the harsh penalty structure described in Letter 3804 with the understanding that the submission of the forms does not represent a concession of any kind and does not admit that he has or had any obligation to file them.

Mr. Sandy Boxerman and Mr. David Capes represent Mr. Mukhi before the IRS.
In June 2017, Mr. Capes says that Mr. Mukhi did not set up the foreign entities. He says that the funds in the foreign account are gone and they have not been able to find out where the funds went. They are not even certain if the life insurance policy is in place. They have not provided any kind of loss figures to the Revenue Agent but want those "losses" taken into account against any income tax changes that the IRS proposes.



3520 PENALTY IN TAX YEAR 2007

**RAJU J MUKHI**
**REV LIV TRT** DTD 9/3/2002

CREVE COEUR, MO 63141

80-0942/0810
800

3/27/20
date

Pay to the Order of ~~United States Treasury~~ $ 5,000

Five Thousand Dollars ~~of~~ dollars

Creve Coeur
11901 Olive Blvd.
Creve Coeur, MO 63141
1-800-760-BANK (2265)
www.firstbanks.com

| Form **843**<br>(Rev. August 2011)<br>Department of the Treasury<br>Internal Revenue Service | **Claim for Refund and Request for Abatement**<br><br>▶ See separate instructions. | OMB No. 1545-0024 |
|---|---|---|

Use Form 843 if your claim or request involves:

- **(a)** a refund of one of the taxes (other than income taxes or an employer's claim for FICA tax, RRTA tax, or income tax withholding) or a fee, shown on line 3,
- **(b)** an abatement of FUTA tax or certain excise taxes, or
- **(c)** a refund or abatement of interest, penalties, or additions to tax for one of the reasons shown on line 5a.

Do not use Form 843 if your claim or request involves:

- **(a)** an overpayment of income taxes or an employer's claim for FICA tax, RRTA tax, or income tax withholding (use the appropriate amended tax return),
- **(b)** a refund of excise taxes based on the nontaxable use or sale of fuels, or
- **(c)** an overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.

| Name(s)<br>Raju J. Mukhi | Your social security number<br>▬-8618 |
|---|---|
| Address (number, street, and room or suite no.)<br>▬ | Spouse's social security number |
| City or town, state, and ZIP code<br>St. Louis, MO 63141 | Employer identification number (EIN) |
| Name and address shown on return if different from above | Daytime telephone number<br>▬ |

**1** Period. Prepare a separate Form 843 for each tax period or fee year.
From 01/01/2008 to 12/31/2008

**2** Amount to be refunded or abated:
$ 5,000.00/$1,649,702.00

**3** Type of tax or fee. Indicate the type of tax or fee to be refunded or abated or to which the interest, penalty, or addition to tax is related.

☐ Employment  ☐ Estate  ☐ Gift  ☐ Excise  ☐ Income  ☐ Fee

**4** Type of penalty. If the claim or request involves a penalty, enter the Internal Revenue Code section on which the penalty is based (see instructions). IRC section: 6677(a)

**5a** Interest, penalties, and additions to tax. Check the box that indicates your reason for the request for refund or abatement. (If none apply, go to line 6.)

☐ Interest was assessed as a result of IRS errors or delays.

☐ A penalty or addition to tax was the result of erroneous written advice from the IRS.

☑ Reasonable cause or other reason allowed under the law (other than erroneous written advice) can be shown for not assessing a penalty or addition to tax.

**b** Date(s) of payment(s) ▶ 04/01/2020

**6** Original return. Indicate the type of fee or return, if any, filed to which the tax, interest, penalty, or addition to tax relates.

☐ 706  ☐ 709  ☐ 940  ☐ 941  ☐ 943  ☐ 945
☐ 990-PF  ☐ 1040  ☐ 1120  ☐ 4720  ☑ Other (specify) ▶ 3520

**7** Explanation. Explain why you believe this claim or request should be allowed and show the computation of the amount shown on line 2. If you need more space, attach additional sheets.

Please see attached statement.

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the officer's title must be shown.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| | Date 3/31/20 |
|---|---|
| Signature (Title, if applicable. Claims by corporations must be signed by an officer.) | |
| | Date |
| Signature (spouse, if joint return) | |

| Paid<br>Preparer<br>Use Only | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | Firm's name ▶ | | | Firm's EIN ▶ | |
| | Firm's address ▶ | | | Phone no. | |

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.     Cat. No. 10180R     Form **843** (Rev. 8-2011)

## EXPLANATION OF CIRCUMSTANCES IN SUPPORT OF FORMS 843

Taxpayer, Raju Mukhi, is claiming a refund and abatement[1] of Form 3520 penalties listed on the face of this Form 843. The Form 3520 penalties were assessed under 26 U.S.C. § 6677, as set forth in the IRS's Letter 3946 with enclosures dated September 6, 2017. A copy of that Letter (without enclosures[2]) in enclosed as *Exhibit 1*.

In asserting these penalties, the Government erroneously assumed that Sukhmani Gurkukh Nivas Foundation ("SGN Foundation") was a foreign trust that engaged in transactions with and held assets of foreign entities.

The penalties assessed are improper. The payments made toward those penalties should be refunded and the penalties abated in their entirety for the following reasons:

1. No Penalty Should be Imposed

   a. *The Government cannot demonstrate that the SGN Foundation is a Foreign Trust, a prerequisite to asserting a 3520 penalty*

As an initial matter, the Government bears the burden of proof to establish that a taxpayer owes a penalty. "Notwithstanding any other provision of this title, the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty . . . imposed by this title." IRC §7491(c). To meet its burden, and for the presumption of correctness to apply to the proposed penalties, the government must produce "sufficient evidence indicating that it is appropriate to impose the relevant penalty." *Higbee v. Comm'r*, 116 T.C. 438, 446 (2001). *See also* Non Docketed Service Advice Review, IRS NSAR 20062701F (applying this standard to a penalty imposed under section 6677). The Taxpayer respectfully contends that the Government cannot sustain its burden.

In this case, the Government must first show that the Taxpayer had a duty to file a Form 3520 for any of the years in question. The Government claims that the Taxpayer had a duty, under IRC §6048(a), because the Taxpayer was a United States person who transferred money to the Sukhmani Gurkukh Nivas Foundation, a foreign trust. The Government also claims that the Taxpayer had a duty, under IRC §6048(c), because the Taxpayer was a United States person who received distributions from the Foundation.

The Government, however, cannot sustain its burden of proof because the Government cannot establish that the Foundation constitutes a trust under the internal revenue laws. "[T]he term 'trust' as used in the Internal Revenue Code refers to an arrangement created either by a will or by an inter vivos declaration whereby trustees take title to property for the purpose of protecting or conserving it for the beneficiaries." Treas.Reg. §301.7701-4(a). *See also* Rev.Rul. 2013-14,

---

[1] Taxpayer included two amounts in Box 2 on the face of Form 843. The first amount is the amount to be refunded. The second amount is the amount to be abated.

[2] Upon request, Taxpayer will provide a copy of the enclosures.

2013-26 IRB 1267 (where a trustee's only responsibility was to hold property and transfer title to it at the direction of the taxpayer, "a trust was not established" for federal tax purposes even though arrangement was formally denominated a trust and even though local law might have recognized the arrangement as a trust; "the trustee was a mere agent for the holding and transfer of title to the real property, and the taxpayer retained direct ownership of the real property for federal income tax purposes"). As the Revenue Agent noted, the Government has been unable to obtain the creation documents for the Foundation. *See Exhibit 1*. The Taxpayer respectfully submits that without these documents the Government cannot establish that the Foundation meets the definition of a trust. Absent proof of a trust, no obligation to file Forms 3520 can exist, and, therefore, no penalty for failing to file such forms can be sustained.

> b. *The Government's assertion of 3520 Penalties is Fundamentally Inconsistent with its position in the Prior Criminal Matter*

Moreover, for the Government to assert now that the bank accounts in question were actually held by a trust would contradict the theory upon which the government proceeded in its criminal case against the Taxpayer, captioned United States v. Muhki, 4:14-cr-00173-AGF. In that case the Government took the position that all bank accounts in question belonged to the Taxpayer and that any entity that purported to hold the accounts was a sham. The government should not now be permitted to invoke the purported existence of the Foundation as the basis for the assertion of millions and millions of dollars in penalties against the Taxpayer.

Certain reports and filings in the course of the criminal case substantiate this position and, if required, the Taxpayer will petition the Court to unseal the records for purposes of this Claim for Refund.

The Criminal Tax Manual, Section 5.01(8), interpreting *Santobello v. New York*, 404 U.S. 257 (1971), recognizes that the plea agreement is a contract between the government and the individual:

> Plea agreements are more than mere contracts, though. Because they necessarily implicate a criminal defendant's fundamental constitutional rights, and in light of the investigative and prosecutorial power of the government, the interpretation of plea agreements is subject to due process constraints to ensure that the plea bargaining defendant receives all that is due from the government.

Here, the Government and the Taxpayer agreed to treat as a sham certain foreign entities, and further agreed that the income generated by those putative entities was attributable directly to Taxpayer. Taxpayer relied on the Government's representations and position in entering into the Plea Agreement. The Government's position binds the government, including the IRS, in future determinations concerning Taxpayer and the tax years currently at issue.

c.  *The Government's assertion of Penalties Violates Taxpayer's Rights under the Eighth Amendment*

Taxpayer respectfully submits that imposition of a Form 3520 penalty in excess of $5 million would represent an unconstitutional excessive fine under the Eighth Amendment to the United States Constitution. "Excessive bail shall not be required, *nor excessive fines imposed*, nor cruel or unusual punishments inflicted." U.S.CONST. AMEND. VIII (emphasis added). One Court recently stated that it does not believe that the Eighth Amendment applies to civil tax penalties but that if the Eighth Amendment does so apply, then penalties imposed for failure to file forms Form 3520-A could, in particular instances, be deemed excessive and unconstitutional. *See In re Wyly*, 552 B.R. 338, 602-24 (Bankr. N.D.Tex. 2016).

Additionally, the penalties are not acceptable under the Eighth Amendment because they do not meet the two-prong test, first set forth in first set forth in *Helvering v. Mitchell*, 303 U.S. 391 (1938): that (a) penalties must exist to protect revenue and (b) penalties must bear a relationship to the government's direct loss. "[T]ax penalties are remedial because they exist as "a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Dewees v. United States*, 272 F. Supp. 3d 96, 100-01 (D.C. Cir. 2019). The penalties asserted here are arbitrary and capricious because they bear no relationship to the loss to the government. Otherwise stated, the penalty structure violates Taxpayer's constitutional rights because the statue under which the penalties are imposed is flawed and does not comply with the requirements of *Helvering v. Mitchell. C.f., Timbs v. Indiana*, 139 S. Ct. 682 (2019).

d.  *The Government's assertion of Penalties Violates Taxpayer's Due Process Rights under the Fifth Amendment*

A $5 million penalty under the facts and circumstances of this case constitutes a deprivation of property without due process of law, in contravention of the Fifth Amendment to the Constitution. In this case, the Government would be asking the Taxpayer to pay a huge penalty, calculated on the basis of monies that may have existed during the 2005 through 2008 timeframe but which no longer exist today because they were misappropriated by ING Bank and its personnel in 2010. That is patently unreasonable.

e.  *Reasonable Cause Exists to Excuse Taxpayer's Non-Filing of a Form 3520*

In addition, the Taxpayer maintains that, if he had an obligation to File Form 3520, then his failure to have filed the form is excused by reasonable cause. "No penalty shall be imposed by this section on any failure which is shown to be due to reasonable cause and not due to willful neglect." Code §6677(d). "Whether reasonable cause exists depends upon all of the facts and circumstances of the case, including the taxpayer's reason for failing to properly file, and the extent of his efforts to comply . . . . [I]gnorance of the law may provide reasonable cause if . . . '[t]he taxpayer was unaware of a requirement and could not reasonably be expected to know of the requirement.'" *James v. United States*, No. 8-11-cv-271-T-30AEP (M.D.Fla. August 14, 2012)

(available at 2012 WL 3522610) (quoting Internal Revenue Manual). "The determination of whether a taxpayer acted with reasonable cause . . . is made on a case-by-case basis, taking into account all pertinent facts and circumstances . . . . Circumstances that may indicate reasonable cause . . . include an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including the experience, knowledge and education of the taxpayer." Treas.Reg. §1.6664-4(b)(1). In this case, the Taxpayer had no knowledge whatsoever with respect to any kind of filing or reporting obligation he might have had regarding the Foundation. The first time he ever heard of a Form 3520 was in 2016 during the civil examination of this matter. It is not the case that he knew of the obligation and decided not to meet it. It is not the case that he knew of the obligation and erroneously determined that he did not have to comply with it. It is the case that he simply had no personal knowledge as to such an obligation.


2. The Penalty Amount was Improperly Calculated

While the Taxpayer believes, for reasons stated above, that no penalty should be imposed, the Taxpayer also wishes to point out certain errors in the calculation of the penalty that have caused the proposed penalty to be overstated.

First, the calculation, to the extent it is based on money allegedly contributed to the Foundation, overstates that amount. The Revenue Agent's Report identified $9,729,249 as going into the Foundation. Of that amount, the Revenue Agent's Report determined that Sukhmani Partners II Ltd ("SPII"), a British Virgin Islands entity, contributed $5,577,465. The Report, however, calculated the Form 3520 based on all contributions to the Foundation, including those made by SP II. However, only contributions made by a United States person are required to be reported, so the penalty calculation should have excluded the amounts contributed by the non-U.S. business entity.

Second, the calculation is also based on money allegedly distributed by the Foundation to the Taxpayer. The Taxpayer respectfully submits, however, that the Government cannot sustain its burden of proving that all the funds identified as moving from the Foundation to the Taxpayer did, in fact, go to the Taxpayer. Moreover, the Taxpayer respectfully submits that the Government cannot sustain its burden of proving that, if money went to the Taxpayer, such payments represented "distributions", as that terms is used in IRC §6048(c) (United States person must report "distributions" received from a foreign trust). To the extent the Taxpayer received payments from the Foundation that were something other than "distributions," those amounts should not be included in the penalty calculation.

**Internal Revenue Service**

**Department of the Treasury**

Date:
  09/06/2017
Taxpayer Identification Number:
  xxx-xx-8618
IRS Contact Information:
  Joyce Serangeli

Raju Mukhi

St Louis MO 63141

M/S 4115/OVDI
Chesterfield, MO 63017
Telephone Number:

Fax Number:

IRS Employee ID Number:

Respond by:

Dear Taxpayer:

**Why We Are Writing to You**
We received your statement for Sukhmani Gurkukh Nivas Foundation         dated September 30, 2016
and found that it does not establish reasonable cause.

You may delegate the duties of filing tax returns; however, it is your responsibility to ensure that all returns are
timely and accurately filed.

You have fulfilled your filing obligations for Sukhmani Gurkukh Nivas Foundation, but you filed the returns
late. Therefore, we will assess the Initial Penalty as explained in our letter dated May 31, 2016.

**What You Will Be Assessed**
The tables on page 3 show how we calculated the penalties for each return and each taxable year. As of
September 6 , 2017 , you will owe $ 10,999,868

**What You Need To Do**
  • If you have not filed your complete and accurate return(s), you must send them to the IRS contact
    information as listed on page 1, to avoid additional penalties. We must receive your returns by

  • If you accept our decision, you should pay $ 10,999,868 by October 6, 2017    . Make your check
    payable to the **"U.S. Treasury."** Write your taxpayer identification number, "civil penalties," and taxable
    year(s) on the memo line of the check. Mail your payment using the IRS contact information on page 1.

  • If you disagree with our decision and plan to appeal, you can avoid future interest on these penalties by
    paying $ 10,999,868 .



Letter 3946 (Rev. 9-2011)
Catalog Number 39098A

## Penalty Calculations

| Required Returns | Penalty (IRC section 6677) | How We Calculate the Penalty |
|---|---|---|
| Form 3520 | Initial | The greater of $10,000 or 35% of gross reportable amount |
| | Continuing | $10,000 every 30 days until gross reportable amount reached |
| Form 3520-A | Initial | The greater of $10,000 or 5% of gross reportable amount |
| | Continuing | $10,000 every 30 days until gross reportable amount reached |

**Penalties Apply to Following Return(s)**

## How We Calculated the Initial Penalty

| Form | Taxable Year | Gross Reportable Amount | Penalty Rate % | Amount of Penalty | |
|---|---|---|---|---|---|
| 3520 | 200512-200812 | 14,512,713 | 35 | $ | 5,079,449 |
| 3520A | 200512-201012 | 118,408,377 | 5 | $ | 5,920,419 |
| | | | | $ | |
| | | | | $ | |
| | | | Total | $ | 10,999,868 |

## How We Calculated the Continuing Penalty

| Form | Taxable Year | Number of 30-Day Periods | Amount of Penalty | |
|---|---|---|---|---|
| | not applicable | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | Total | $ | 0 |

As of **September 6, 2017** , Total Penalties You Will Owe:  $ 10,999,868

Letter 3946 (Rev. 9-2011)
Catalog Number 39098A

| Taxpayer Name: | Mukhi, Raju | Examiner: | Serangeli, Joyce |
|---|---|---|---|
| TIN: | [████]-8618 | | |
| Tax Form: | 1040 | Date: | 10/21/16; 07/11/17 |
| Tax Year (s): | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520 Penalty Issue Lead Sheet

| Tax Period | Per Return | Per Exam | Adjustment | Reference |
|---|---|---|---|---|
| 200512 | 0.00 | 1,639,975.00 | 1,639,975.00 | |
| 200612 | 0.00 | 991,148.00 | 991,148.00 | |
| 200712 | 0.00 | 798,624.00 | 798,624.00 | |
| 200812 | 0.00 | 1,649,702.00 | 1,649,702.00 | |

**Conclusion:**

The Service has determined that failure to report distributions and contributions apply under § 6048 and § 6677(a).

**Facts:**

Raju Mukhi is a citizen of the United States currently residing in Saint Louis, MO. He owns a US business, Contract Management Services LLC that earns income from manufacturing and selling uniforms overseas. Mr. Mukhi's primary source of income reported on his originally filed 1040 tax returns are wages from Contract Management Services LLC.

Throughout 2001 and 2010, Mr. Mukhi established relationships with foreign and domestic companies to create a network of companies, trusts, and bank accounts.

Prior to 2001 Mr. Mukhi entered into a relationship with Interadvice Directorate Ltd, a British Virgin Isle company owned by Trident Trust Company

**Foreign Entity: Sukhmani Partners II Ltd**
**Entity Classification: Foreign Corporation**
**Number of Foreign Accounts Owned: 2**
**Date Incorporated: 11/21/2001**
**Date Dissolved: Still Active**

On November 21st, 2001, Sukhmani Partners II Ltd was incorporated in the British Virgin Isles as an international business corporation (Exhibit 1). According to the Memorandum of Association, Sukhmani listed Trident Trust Company Limited as its Registered Agent and Interadvice Directorate Ltd as the First Director of the Company. The primary address for Sukhmani Partners II Ltd is Landstreasse 25 PO Box 439, Vaduz LS FL 9490.



In or around 2002, Mr. Mukhi used Sukhmani Partners II Ltd to open, or cause to be open, two foreign accounts. One account was held at Clariden Leu in Switzerland. The other account was at Goldman, Sachs & Company Bank in Singapore. During a conversation with the Power of Attorney Boxerman, from Capes Sokol, on

| | |
|---|---|
| **Taxpayer Name:** Mukhi, Raju | **Examiner:** Serangeli, Joyce |
| **TIN:** ▬-8618 | |
| **Tax Form:** 1040 | **Date:** 10/21/16; 07/11/17 |
| **Tax Year (s):** 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | |



### Form 3520 Penalty Issue Lead Sheet

Excerpt from the Goldman, Sachs & Company Bank statement from January 31, 2009. *"The calculations noted above (other than contributions and distributions since the last capital statement) are taken from the applicable partnership capital value statement as provided by the fund administrator. A partnership capital value statement is available upon request from your investment professional. Tax information regarding these investments, including allocations of income and realized and unrealized gains and losses will be available through a Schedule K-1 which will be mailed to you after year end."*

Through the Goldman, Sachs & Company Bank, Sukhmani Partners II Ltd was a limited foreign partner in two domestic US partnerships, Mezzanine and Technology. Goldman, Sachs & Company Bank only provided the capital account balance, all income details were to be provided by the partnerships themselves.

The examiner issued pattern letters requesting Form 5471s.

| 5471 Pattern Letter Issued | Years Requested | 5471 received date |
|---|---|---|
| April 2015 | 2006-2013 | July 21, 2015 |
| August 2015 | 2002-2005 | January 2016 |

The examiner also requested copies of the Schedule K-1's for both Mezzanine and Technology on April 6, 2015. The Power of Attorney Boxerman stated they had the K-1's for Mezzanine but not for Technology. However they did have the financial statements for Technology. When the

**Taxpayer Name:** Mukhi, Raju
**TIN:** ██████-8618
**Tax Form:** 1040
**Tax Year (s):** 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012

**Examiner:** Serangeli, Joyce

**Date:** 10/21/16; 07/11/17

## Form 3520 Penalty Issue Lead Sheet



In early 2002, Sukhmani Gurkukh Nivas Foundation was formed listing Mr. Mukhi as the primary beneficiary. Originally the secondary beneficiaries were his then wife, Sonia Mukhi, and his two children, Seema and Rishi Mukhi. Sonia passed away November 17, 2009 and is believed to have been a US person. Seema and Rishi are the taxpayer's children and are believed to be US persons: both were issued social security numbers within two years of their birth and they both have US residences. On August 14, 2002 the secondary beneficiaries were changed to Mr. Mukhi's mother, Kamal Mukhi (not sure if she is a US person) and Sadhu Vaswani Mission, a foreign trust held for the benefit of Kamal. Interadvice Directorate Ltd is named as the members on the Foundation's board. (See Exhibit 3)

The property in the Foundation is not identified specifically in Exhibit 3 but beneficiaries and trustees have been identified which would indicate under the IRC that there is a foreign trust.

Sukhmani Gurkukh Nivas Foundation (the "Foundation") was formed in Lichtenstein January 9, 2002 per Form 3520 prepared for the examination. The taxpayer has been unable to provide the foundation creation documents. Per the German document referred to above, the foundation was created in January 2002. On August 14, 2002, the Trustees were agreed to make changes to the beneficiaries. The property in the Foundation is not identified specifically in the German document but beneficiaries and trustees have been identified which would indicate under the IRC that there is a foreign trust.

Per the taxpayer, the Foundation did not directly hold any foreign accounts and on November 26, 2005, the foundation obtained 100% ownership of Gurdas International, by holding 100 bearer shares. Gurdas International ("Gurdas") is a corporation formed in 2005 under the laws of Panama. (Exhibit 4) Any bank accounts of Gurdas therefore, are accounts of the Foundation

**Taxpayer Name:** Mukhi, Raju  **Examiner:** Serangeli, Joyce
**TIN:** ▆▆▆▆-8618
**Tax Form:** 1040  **Date:** 10/21/16; 07/11/17
**Tax Year (s):** 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012

## Form 3520 Penalty Issue Lead Sheet

In addition to moving money from his offshore accounts held by Sukhmani Partners II Ltd, Mr. Mukhi also electronically transferred funds individually. Mr. Mukhi electronically transferred $2,000,000 to the Gurdas' ING account on November 22, 2006, the ING bank statement notated the transfer with "From UBS Stamford Branch CP". On March 8, 2007 Mr. Mukhi transferred $748,000 to Gurdas and 11 days later he transferred $1,198,228.52 with the notation "From SW UBSWU33XXX". On November 5, 2007 Contract Management Services, the domestic entity owned by Mr. Mukhi, transferred $205,556.70 to Gurdas' ING account.



In total Gurdas International received directly and indirectly through Mr. Mukhi's foreign and domestic entities, $9,729,249.

From a review of the bank statements of Gurdas' ING Bank account, there are several entries per month of term loans being made and paid off. The loans were used to purchase securities. In October 2005, Gurdas purchased $4 million in securities through ING Bank; at the time they had $4,678,848.68 in Fixed Deposits from additional electronic transfers from Sukhmani Partners II Ltd via the Clariden Leu account. Per the October 2005 bank statement, ING Bank reflects Gurdas as having Total Assets of $10,938,801.06 and Total Liabilities of $4,001,291.99. The Gurdas account has reflected a range of loans from $2,387,255.52 in November 2005 to a high of $38,451,209.31 in October 2006 and a low in Feb 2009 of $1,646,534.44. After February 2009, there are no loans in the Gurdas account.

ING Bank statements which list Gurdas International as the owner were provided. There are cash withdrawals, transfers and payments that the government asked about.
- Cash withdrawal of $20,030 on 07/24/2006
- Cash withdrawal of $20,000 on 11/21/2006
- Cash withdrawal of $10,000 on 09/14/2007
- Swift payment to Mukhi of $213,114 on 01/09/2008
- Swift payment to Mukhi of $4,098,360 on 02/05/2008
- Swift payment to Mukhi of $401,960 on 2/27/2008

In a December 2016 letter, Mr. Boxerman stated "Without necessarily agreeing with the IDR's statement that 'Raju withdrew $4.7 mil in 2008,' Taxpayer states that the three (3) transfers totaling approximately $4,700,000 (1.9/08, 2/4/08 and 2/27/08) referred to in the IDR went to a

| **Taxpayer Name:** | Mukhi, Raju | **Examiner:** | Serangeli, Joyce |
| **TIN:** | ▬-8618 | | |
| **Tax Form:** | 1040 | **Date:** | 10/21/16; 07/11/17 |
| **Tax Year (s):** | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520 Penalty Issue Lead Sheet

Disclosure Program. Ebert never saw any bank statements or anything else relating to Mr. Mukhi's offshore accounts.

Mr. Mukhi attempted to enter the Offshore Voluntary Disclosure Program after he received a letter from Clariden Leu. Mr. Boxerman does not know the exact date the Clariden Leu letter was received, but he confirms it was after 2010. According to Mr. Boxerman, Mr. Mukhi was rejected for the offshore program during his pre-clearance phase because Goldman, Sachs, & Company Bank had submitted information to Criminal Investigation. At that point, Mr. Mukhi was under examination for failing to file report income earned by his foreign holdings. During his examination, Mr. Mukhi did not disclose his involvement in the foundation or the foundation's ownership of Gurdas International.

### Forms 3520

IDR 8 was issued April 1, 2016 requesting Form 3520's. Letter 3804 was issued 5/31/2016 which is the pattern letter requesting Forms 3520 and 3520A for the years 2005 through 2013. Mr. Boxerman asked for and was granted an extension until 9/30/2016. Form 3520's and 3520A's were received via courier on 9/30/2016 for tax years 2005-2013.

Taxpayer has submitted delinquent Form 3520's which detail the following distributions:
- $20,000 in December 2005
- $51,559 in 2006 — various distributions in July and November
- $46,646 in 2007 — a distribution in August and September
- $28,253 in 2008 — a distribution in January and July

### Service's Position:

#### Issue #1

**Issue #1:** whether Mr. Mukhi has a filing requirement for Form 3520.
**Government's Position regarding Issue #1:** it is the government's position that Mr. Mukhi has a filing requirement for Form 3520.

#### Argument regarding Issue #1:

Form 3520 must be filed by
- a US person who is treated as the owner of any part of the assets of a foreign trust
- a US person who received a distribution from a foreign trust

Mr. Mukhi is a US citizen.

IRC § 301.7701-4(a) defines a trust as an arrangement by which title to property is held by a person or persons, with a fiduciary responsibility to conserve or protect the property for the beneficiaries. Memorandum of association (creation documents) has been provided for Sukhmani Gurkukh Nivas Foundation. The Foundation was incorporated on November 21, 2001 in the British Virgin Islands. (In the case file, these documents are stamped as "Treaty Information". However, these documents came from Mr. Mukhi's power of attorney.) Mr. Mukhi

Form 3520 Penalty Issue Lead Sheet                    Workpaper #      300  -9

| Taxpayer Name: | Mukhi, Raju | | Examiner: | Serangeli, Joyce |
|---|---|---|---|---|
| TIN: | ▮▮▮-8618 | | | |
| Tax Form: | 1040 | | Date: | 10/21/16; 07/11/17 |
| Tax Year (s): | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | | |

## Form 3520 Penalty Issue Lead Sheet

| | | | |
|---|---|---|---|
| contribution | 5/19/2006 | 272,000 | |
| distribution | 7/24/2006 | 20,030 | |
| contribution | 8/29/2006 | 70,012 | |
| contribution | 9/1/2006 | 90,124 | |
| contribution | 9/4/2006 | 81,686 | |
| contribution | 10/11/2006 | 110,000 | |
| distribution | 11/21/2006 | 20,000 | |
| contribution | 11/22/2006 | 2,000,000 | |
| penalty base | | 2,831,852 | |
| penalty rate 35% | | 0.35 | |
| 3520 penalty-2006 | | 991,148 | |
| | | | |
| contribution | 1/18/2007 | 120,000 | |
| contribution | 3/8/2007 | 748,000 | |
| contribution | 3/19/2007 | 1,198,228 | |
| distribution | 9/14/2007 | 10,000 | |
| contribution | 11/5/2007 | 205,556 | |
| penalty base | | 2,281,784 | |
| penalty rate 35% | | 0.35 | |
| 3520 penalty-2007 | | 798,624 | |
| | | | |
| payment to TP | 1/9/2008 | 213,114 | |
| payment to TP | 2/4/2008 | 4,098,360 | |
| payment to TP | 2/27/2008 | 401,960 | |
| | | | |
| penalty base | | 4,713,434 | |
| penalty rate 35% | | 0.35 | |
| 3520 penalty-2008 | | 1,649,702 | |

Note: distributions are what the taxpayer's accountant included on Form 3520's. Contributions are from the bank statements and the narrative on the bank statement includes the taxpayer's name.

Taxpayer indicates on Form 3520's filed that he only filed them to avoid the harsh penalty structure set out in the IRC. However, taxpayer has received distributions from and made contributions to what the IRS has determined to be a foreign trust. Therefore, Form 3520's are required to be filed.

Form 3520 Penalty Issue Lead Sheet                    Workpaper #      300  -11

| | | | |
|---|---|---|---|
| **Taxpayer Name:** | Mukhi, Raju | **Examiner:** | Serangeli, Joyce |
| **TIN:** | ▮▮▮▮-8618 | | |
| **Tax Form:** | 1040 | **Date:** | 10/21/16; 07/11/17 |
| **Tax Year (s):** | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520 Penalty Issue Lead Sheet

**IRC § 6677(c) (3)** – Defines the "gross reportable amount" as the gross amount of distributions in the failure relating to IRC 6048(c).

**IRC § 6048 – Information reporting with respect to certain foreign trusts:**

**IRC § 6048(c) (1)** – Requires a U.S person that receives a distribution from a foreign trust to furnish certain information about the trust and the distribution to the secretary.

**IRC § 7701(a)(30)** – defines "United States person" as:
   (A) a citizen or resident of the United States,
   (B) a domestic partnership,
   (C) a domestic corporation,
   (D) any estate [other than a foreign estate within the meaning of paragraph (31)], and
   (E) any trust over which a United States court may exercise primary supervision and which one or more United States persons control all substantial decisions of the trust.

**IRC § 7701(a)(31)** defines the term a "foreign trust" broadly to mean any trust other than a trust treated as a US person.

**26 CFR 301.7701-4** defines a trust as an arrangement whereby trustees take title to property for the purpose of protecting or conserving it for the beneficiaries.

**IRC § 6501(c) (8)** – Provides exceptions to the normal 3-year statute of limitations for failures to provide the Secretary with the information required under IRC §§ 6038, 6038A, 6038B, 6046, 6046A, or 6048. The time for assessment of tax related to such failures shall not expire prior to the date which is three years after the date the Secretary was provided with the required information.

**Taxpayer Name:** Mukhi, Raju   **Examiner:** Serangeli, Joyce
**TIN:** ████8618
**Tax Form:** 1040   **Date:** 10/27/16; 06/09/17; 07/11/17

**Tax Year (s):**   200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012

## Form 3520-A Penalty Issue Lead Sheet

| Transactions with Foreign Trusts | Tax Year 2005 | Tax Year 2006 | Tax Year 2007 | Tax Year 2008 |
|---|---|---|---|---|
| IRC 6677 (PRN 660)- Initial | 791,273.00 | 2,281,882.00 | 2,137,028.00 | 469,496.00 |
| Transactions with Foreign Trusts | Tax Year 2009 | Tax Year 2010 | | |
| IRC 6677 (PRN 660)- Initial | 118,118.00 | 122,622.00 | N/A | N/A |
| IRC 6677 (PRN 703)- Continuation | 0 | 0 | 0 | 0 |
| | | | | |

**Conclusion:** *(Reflects the final determination on the issue.)*
The Service has concluded penalties under § 6677 apply and should be assessed.

**Taxpayer Name:** Mukhi, Raju      **Examiner:** Serangeli, Joyce
**TIN:** ██████0-8618
**Tax Form:** 1040      **Date:** 10/27/16; 06/09/17; 07/11/17

**Tax Year (s):** 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012

## Form 3520-A Penalty Issue Lead Sheet

**Clariden Bank**

| Date | | Balance | |
|---|---|---|---|
| 12/31/2003 | | $ 8,306,440.00 | |
| 12/31/2004 | | $11,588,740.00 | |
| 12/31/2005 | | $ 3,448,363.00 | |
| 3/31/2006 | | $ 627,501.00 | |
| 9/30/2007 | | $ 322,254.00 | |
| 12/31/2008 | | $ 299,463.00 | |
| 12/31/2009 | | $ 208,761.00 | |
| 12/31/2010 | | $ 154,000.00 | |

**Goldman, Sachs, & Company Bank**

| Date | | Balance | |
|---|---|---|---|
| 8/31/2005 | | $ 3,037,524.00 | |
| 4/30/2006 | | $ 272,746.00 | |
| 12/31/2007 | | $ 195,592.00 | |
| 9/30/2008 | | $ 1,377,415.00 | |
| 1/31/2009 | | $ 1,360,401.00 | |
| 2/28/2010 | | $ 1,240,910.00 | |

At the time the accounts at Goldman, Sachs & Company Bank and Clariden Leu were opened, Mr. Mukhi had been filing US tax returns since 1988.

On April 2, 2015, the examiner reviewed Clariden Leu and Goldman, Sachs & Company Bank statements for tax years 2009 and 2010. The 2006 bank statements were provided on April 13, 2015.

According to the bank statements, the two foreign accounts generated investment income ranging from interest, dividends, and capital losses to gains from PFIC (Passive Foreign Investment Companies).

As the examiner was reviewing the bank statements she noted that the Goldman, Sachs & Company Bank account was reporting two investment activities in a category titled "Alternative Investments". The activities were identified as GS Mezzanine Partners II Offshore LP(Mezzanine) and GS Private Equity Partners Technology 2000 Fund Offshore LP(Technology), see excerpt below from the 2006 Goldman, Sachs & Company Bank account statement.

| Taxpayer Name: | Mukhi, Raju | Examiner: | Serangeli, Joyce |
| --- | --- | --- | --- |
| TIN: | ■■■-8618 | | |
| Tax Form: | 1040 | Date: | 10/27/16; 06/09/17; 07/11/17 |
| Tax Year (s): | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520-A Penalty Issue Lead Sheet

Power of Attorney stated that the items were not provided, no explanation was given as to why the statements were withheld from the Special Agent.

Mezzanine issued Schedule K-1's to Sukhmani Partners II Ltd to report their share of income and expenses. The address listed on the K-1 was Trident Chambers Road Town, Tortola, British Virgin Islands. The K-1's were not filed with the IRS.

Technology provided a Capital Analysis statement to Mr. Mukhi for tax years 2009 and 2010. Using this information the examiner was able to identify the various types of flow thru income taxable to Mr. Mukhi.

Per the financial statements for Technology and the Schedule K-1's for Mezzanine and the bank statements for Clariden Leu and Goldman, Sachs & Company Bank, Mr. Mukhi failed to report $2,044,671.00 in Subpart F Income years 2003, 2004, 2005, 2006, 2007, 2008, 2009, and 2010. In addition Mr. Mukhi failed to meet his foreign filing requirements under IRC § 6038A, by not filing form 5471 *Information Return of a US Person with Respect to Certain Foreign Corporations.*

| | | | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Subpart F Income (1040 Ord Div) | | | $170,602.00 | $601,414.00 | $959,429.00 | $158,961.00 | $61,146.00 | $47,713.00 |
| | | | 2009 | 2010 | 2011 | 2012 | 2013 | |
| | | | $ 20,766.00 | $ - | $ - | $ 12,243.00 | $12,397.00 | |

**Foreign Entity: Sukhmani Gurkukh Nivas Foundation**
**Entity Classification: Foreign Grantor Trust**
**Number of Foreign Accounts Owned: 0**
**Date Incorporated: Jan 2002**
**Date Dissolved: Still Active**

| **Taxpayer Name:** | Mukhi, Raju | **Examiner:** | Serangeli, Joyce |
|---|---|---|---|
| **TIN:** | ▬-8618 | | |
| **Tax Form:** | 1040 | **Date:** | 10/27/16; 06/09/17; 07/11/17 |
| **Tax Year (s):** | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520-A Penalty Issue Lead Sheet

Foundation…" (Exhibit 5)

**Foreign Entity: Gurdas International Ltd SA**
**Entity Classification: Foreign Corporation**
**Number of Foreign Accounts Owned: 1**
**Date Incorporated: 9/28/2005**
**Date Dissolved: Still Active**

On September 28, 2005 Gurdas International Ltd SA was incorporated in Panama (Exhibit 6). Per the Articles of Incorporation, Interadvice Directorate Ltd is listed as the Initial Officers and Directors.



On June 10, 2005 Interadvice Directorate Ltd signed account opening documents at ING Bank to open the account 400843-1 at their ING Asia Private Bank branch under Gurdas International. The account held a $0 balance until $2 mil was transferred from the Goldman Sachs account held by Sukhmani Partners II Ltd on September 29, 2005. In total the Clariden Leu account held by Sukhmani Partners II Ltd transferred $2,297,779 to the ING account held by Gurdas International in 2005 and 2006. The Goldman, Sachs & Company Bank account transferred over $3,198,000 to Gurdas' ING account between 2005 and 2007. All transfers were electronic. (Exhibit 7)

In addition to moving money from his offshore accounts held by Sukhmani Partners II Ltd, Mr. Mukhi also electronically transferred funds individually. Mr. Mukhi electronically transferred $2,000,000 to the Gurdas' ING account on November 22, 2006, the ING bank statement notated the transfer with "From UBS Stamford Branch CP". On March 8, 2007 Mr. Mukhi transferred $748,000 to Gurdas and 11 days later he transferred $1,198,228.52 with the notation "From SW UBSWU33XXX). On November 5, 2007 Contract Management Services, the domestic entity owned by Mr. Mukhi, transferred $205,556.70 to Gurdas' ING account.

| | | | |
|---|---|---|---|
| **Taxpayer Name:** | Mukhi, Raju | **Examiner:** | Serangeli, Joyce |
| **TIN:** | ▇▇▇-8618 | | |
| **Tax Form:** | 1040 | **Date:** | 10/27/16; 06/09/17; 07/11/17 |
| **Tax Year (s):** | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520-A Penalty Issue Lead Sheet

based in Seattle, with offices in Singapore, who advertises life insurance policies for high wealth individuals. Per their website, "RE Lee has innovative strategies to increase the advantages of life insurance in a tax- efficient manner." Kabool 1 LLC was incorporated in the state of Washington on March 28, 2006 listing RE Lee as the registering agent, Kabool has been inactive since July 1, 2010.

Mr. Mukhi signed and filed a life insurance application with ING Security Life of Denver Insurance Policy Company on April 17, 2006. The application lists Kabool Trust as the beneficiary of the life insurance policy, according to the application the trust was established on March 15, 2006. Mr. Mukhi identifies the owner of the trust as Kabool 1 LLC (See Exhibit 8).

On May 5, 2006 Kabool 1 LLC wire transferred $6,495,058.67 to ING Security Life of Denver Insurance Policy Company to purchase the $16.5 mil life insurance policy listing Mr. Mukhi as the insured party. (See Exhibit 9)

According to the ING Bank December 2006 bank statements for Kabool 1 LLC's account 401137-1, the entity took out a Term Loan for $6,559,585.94. Following the same pattern as Gurdas, Kabool 1 LLC began taking out and paying back multiple short term loans to purchase and sell currencies. On the October 2007, Portfolio Distribution Overview, an External – Insurance Policy for $6,150,572.08 is listed as an asset with over $7 Million in loans. In April 2009, the Insurance Policy is listed with a value of $6,321,943.15. In May 2009, the line item for the insurance policy is zero. A payment is made to Security Life of Denver Ins Co for $6,336,686.76 and the account balance is a negative $2,388,995.98. (See Exhibit 10)

### Tax Preparation

Between 2004 through 2010, Mr. Mukhi had two different paid tax preparers handling his individual income tax returns. John Brandvein, CPA prepared the 2004 individual income tax return, and Reece Ebert, CPA prepared the returns between 2005 through 2010. The returns did not disclose Mr. Mukhi's involvement with the foreign entities or the foreign bank account.

According to a statement made by Mr. Boxerman, Ebert told the Special Agent he sent out tax organizers every year which included questions about foreign accounts and income. Ebert verified that Mr. Mukhi filled out and sent back the organizers indicating he did not have any foreign accounts or income. Ebert states he was not aware Mr. Mukhi had any connection to foreign accounts until Mr. Mukhi approached him about entering the Offshore Voluntary Disclosure Program. Ebert never saw any bank statements or anything else relating to Mr. Mukhi's offshore accounts.
Mr. Mukhi attempted to enter the Offshore Voluntary Disclosure Program after he received a letter from Clariden Leu. Mr. Boxerman does not know the exact date the Clariden Leu letter was received, but he confirms it was after 2010. According to Mr. Boxerman, Mr. Mukhi was rejected for the offshore program during his pre-clearance phase because Goldman, Sachs, & Company Bank had submitted information to Criminal Investigation. At that point, Mr. Mukhi was under examination for failing to file report income earned by his foreign holdings. During his examination, Mr. Mukhi did not disclose his involvement in the foundation or the foundation's ownership of Gurdas International.

| **Taxpayer Name:** | Mukhi, Raju | **Examiner:** | Serangeli, Joyce |
| **TIN:** | ███-8618 | | |
| **Tax Form:** | 1040 | **Date:** | 10/27/16; 06/09/17; 07/11/17 |
| **Tax Year (s):** | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520-A Penalty Issue Lead Sheet

**Issues and Government's Position:**

### Issue #1:

**Issue #1:** whether Mr. Mukhi has a filing requirement for Form 3520A

**Position regarding issue #1:** It is the government's position that Mr. Mukhi has a filing requirement for Form 3520A

Form 3520-A must be filed by a foreign trust with a US owner in order for the US owner to satisfy its annual information reporting requirements under IRC 6048(b). Each person treated as an owner of any portion of a foreign trust under the grantor trust rules is responsible for ensuring that the foreign trust files 3520-A and furnishes the required annual statements to is US owners.

IRC § 301.7701-4(a) defines a trust as an arrangement by which title to property is held by a person or persons, with a fiduciary responsibility to conserve or protect the property for the beneficiaries. Sukhmani Gurkukh Nivas Foundation was formed and listed Mr. Muhki as the primary beneficiary. Per Mr. Mukhi, the foundation does not directly hold any foreign accounts. The foundation owns 100% of Gurdas International. Gurdas has a bank account with ING. Mr. Mukhi directly transferred funds into the Gurdas account and made withdrawals directly. Within the Gurdas bank account, investment securities were purchased. Per the 3520As, interest, capital gains (losses), dividends, and foreign exchange gains (losses) were earned in the Gurdas bank account. Because the Foundation owns Gurdas and Mr. Mukhi is the beneficiary of the Foundation, the income per the 3520As flow through to Mr. Mukhi's 1040 tax return.

The Foundation is a trust per internal revenue laws. Because the foundation is the owner of all of the stock of Gurdas International and Sukhmani Partners II LTD, then the only assets owned by the Foundation is the stock of Gurdas and Sukhmani. The bank accounts of Gurdas and Sukhmani then are tantamount to being accounts of the Foundation.

The "grantor trust rules" of IRC §§671-679 may operate to treat the grantor or another person as owner of all, or a portion, of a trust. The grantor trust rules are based upon the idea that a trust should not be recognized as a separate taxable entity if some person has such dominion and control over it as to create an identity of interest between that person and the trust. The grantor or other owner should be taxed on the income of the trust assets.

It is the government's position that Sukhmani Gurkukh Nikas Foundation be treated as a foreign grantor trust and Mr. Mukhi has a filing requirement for Form 3520A.

### Issue #2:

**Issue #2:** whether Mr. Mukhi is subject to penalties under § 6677

**Position regarding issue #2:** it is the government's position that Mr. Mukhi is subject to penalties under § 6677 for his failure to file timely Forms 3520A. Letter 3804, Notice Required by IRC 6677, was issued in May 2016, requesting Forms 3520 and Forms 3520-A for tax years 2005-2013. POA requested extensions and forms were secured in September 2016.

Penalty_Form_3520-A_Lead_Sheet update 11_18

Workpaper #   300

**11-2013 SAA Draft Job Aid**

1.11

| **Taxpayer Name:** | Mukhi, Raju | **Examiner:** | Serangeli, Joyce |
|---|---|---|---|
| **TIN:** | ▉▉▉▉-8618 | | |
| **Tax Form:** | 1040 | **Date:** | 10/27/16; 06/09/17; 07/11/17 |
| **Tax Year (s):** | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | |

## Form 3520-A Penalty Issue Lead Sheet

31, 2016, requesting Forms 3520 and Forms 3520-A for tax years 2006-2012. Sanford Boxerman, POA from Capes Sokol, asked for an extension which was granted and Forms 3520 and 3520-A for tax years 2005 through 2013 were received by IRS in September 30m 2016.

**Taxpayer Position:** *(If applicable)*

Mr. Mukhi has submitted delinquent Form 3520As under protest and does not concede that he had or has an obligation to file any of the forms demanded of him in Letter 3804. Mr. Mukhi has filed them because of the harsh penalty structure described in Letter 3804 with the understanding that the submission of the forms does not represent a concession of any kind and does not admit that he has or had any obligation to file them.

Mr. Sandy Boxerman and Mr. David Capes represent Mr. Mukhi before the IRS.
In June 2017, Mr. Capes says that Mr. Mukhi did not set up the foreign entities. He says that the funds in the foreign account are gone and they have not been able to find out where the funds went. They are not even certain if the life insurance policy is in place. They have not provided any kind of loss figures to the Revenue Agent but want those "losses" taken into account against any income tax changes that the IRS proposes.



3520 PENALTY FOR TAX YEAR 2008.

**RAJU J MUKHI**
**REV LIV TRT** DTD 9/3/2002

CREVE COEUR, MO 63141

80-0942/0810

3/29/20

Pay to the Order of UNITED STATES TREASURY. $ 5000

Five Thousand Dollars of

FIRST BANK
Creve Coeur
11901 Olive Blvd.
Creve Coeur, MO 63141
1-800-760-BANK (2265)
www.firstbanks.com

for

Form **843**
(Rev. August 2011)
Department of the Treasury
Internal Revenue Service

## Claim for Refund and Request for Abatement

▶ See separate instructions.

OMB No. 1545-0024

Use Form 843 if your claim or request involves:

(a) a refund of one of the taxes (other than income taxes or an employer's claim for FICA tax, RRTA tax, or income tax withholding) or a fee, shown on line 3,

(b) an abatement of FUTA tax or certain excise taxes, or

(c) a refund or abatement of interest, penalties, or additions to tax for one of the reasons shown on line 5a.

Do not use Form 843 if your claim or request involves:

(a) an overpayment of income taxes or an employer's claim for FICA tax, RRTA tax, or income tax withholding (use the appropriate amended tax return),

(b) a refund of excise taxes based on the nontaxable use or sale of fuels, or

(c) an overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.

| | |
|---|---|
| Name(s)<br>Raju J. Mukhi | Your social security number<br>███-8618 |
| Address (number, street, and room or suite no.)<br>████ | Spouse's social security number |
| City or town, state, and ZIP code<br>St. Louis, MO 63141 | Employer identification number (EIN) |
| Name and address shown on return if different from above | Daytime telephone number<br>████ |

| | | |
|---|---|---|
| **1** | **Period.** Prepare a separate Form 843 for each tax period or fee year.<br>From  01/01/2005  to  12/31/2005 | **2** **Amount** to be refunded or abated:<br>$  5,000.00/$791,273.00 |

**3** **Type of tax or fee.** Indicate the type of tax to be refunded or abated or to which the interest, penalty, or addition to tax is related.

☐ Employment   ☐ Estate   ☐ Gift   ☐ Excise   ☐ Income   ☐ Fee

**4** **Type of penalty.** If the claim or request involves a penalty, enter the Internal Revenue Code section on which the penalty is based (see instructions). IRC section:  6677(a) and (b)

**5a** **Interest, penalties, and additions to tax.** Check the box that indicates your reason for the request for refund or abatement. (If none apply, go to line 6.)

☐ Interest was assessed as a result of IRS errors or delays.

☐ A penalty or addition to tax was the result of erroneous written advice from the IRS.

☑ Reasonable cause or other reason allowed under the law (other than erroneous written advice) can be shown for not assessing a penalty or addition to tax.

**b** Date(s) of payment(s) ▶ _____ 04/01/2020 _____

**6** **Original return.** Indicate the type of fee or return, if any, filed to which the tax, interest, penalty, or addition to tax relates.

☐ 706   ☐ 709   ☐ 940   ☐ 941   ☐ 943   ☐ 945
☐ 990-PF   ☐ 1040   ☐ 1120   ☐ 4720   ☑ Other (specify) ▶ 3520-A

**7** **Explanation.** Explain why you believe this claim or request should be allowed and show the computation of the amount shown on line 2. If you need more space, attach additional sheets.

Please see attached statement.

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the officer's title must be shown.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| | |
|---|---|
| _signature_ | 3/31/20 |
| Signature (Title, if applicable. Claims by corporations must be signed by an officer.) | Date |
| | Date |
| Signature (spouse, if joint return) | |

| Paid Preparer Use Only | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | Firm's name ▶ | | | Firm's EIN ▶ | |
| | Firm's address ▶ | | | Phone no. | |

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.      Cat. No. 10180R      Form **843** (Rev. 8-2011)

## EXPLANATION OF CIRCUMSTANCES IN SUPPORT OF FORMS 843

Taxpayer, Raju Mukhi, is claiming a refund and abatement[1] of Form 3520-A penalties listed on the face of this Form 843. The Form 3520-A penalties were assessed under 26 U.S.C. § 6677, as set forth in the IRS's Letter 3946 with enclosures dated September 6, 2017. A copy of that Letter (without enclosures[2]) in enclosed as *Exhibit 1*.

In asserting these penalties, the Government erroneously assumed that Sukhmani Gurkukh Nivas Foundation ("SGN Foundation") was a trust. The Government's assessment is further based on the erroneous position that Taxpayer made certain contributions and took certain distributions from the alleged trust.

The penalties assessed are improper. The payments made toward those penalties should be refunded and the penalties abated in their entirety for the following reasons:

1. No Penalty Should be Imposed

    a. *IRS failed to meet its burden to demonstrate that Taxpayer had a duty to file a Form 3520-A because it can't show that the SGN Foundation is a Trust*

The Government bears the burden of proof to establish that a taxpayer owes a penalty. "Notwithstanding any other provision of this title, the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty . . . imposed by this title." IRC §7491(c). To meet its burden, and for the presumption of correctness to apply to the proposed penalties, the government must produce "sufficient evidence indicating that it is appropriate to impose the relevant penalty." *Higbee v. Comm'r*, 116 T.C. 438, 446 (2001). *See also* Non Docketed Service Advice Review, IRS NSAR 20062701F (applying this standard to a penalty imposed under section 6677). The Taxpayer respectfully contends that the Government cannot sustain its burden.

In this case, the Government must first show that the Taxpayer had a duty to file a Form 3520-A for any of the years in question. The Government claims that the Taxpayer had a duty, under IRC §6048(b), because the Taxpayer was a United States person who should be treated as the owner of the SGN Foundation, a foreign trust.

The Government, however, cannot sustain its burden of proof because the Government cannot establish that the Foundation constitutes a trust under the internal revenue laws. "[T]he term 'trust' as used in the Internal Revenue Code refers to an arrangement created either by a will or by an inter vivos declaration whereby trustees take title to property for the purpose of protecting or conserving it for the beneficiaries." Treas. Reg. §301.7701-4(a). *See also* REV. RUL. 2013-14, 2013-26 IRB 1267 (where a trustee's only responsibility was to hold property and transfer title to it at the direction of the taxpayer, "a trust was not established" for federal tax purposes even though

---

[1] Taxpayer included two amounts in Box 2 on the face of Form 843. The first amount is the amount to be refunded. The second amount is the amount to be abated.

[2] Upon request, Taxpayer will provide a copy of the enclosures.

arrangement was formally denominated a trust and even though local law might have recognized the arrangement as a trust; "the trustee was a mere agent for the holding and transfer of title to the real property, and the taxpayer retained direct ownership of the real property for federal income tax purposes"). As the Revenue Agent noted in her Lead Sheet, *see Exhibit 1*, the Government has been unable to obtain the creation documents for the Foundation. The Taxpayer respectfully submits that without these documents the Government cannot establish that the Foundation meets the definition of a trust. Absent proof of a trust, no obligation to file Forms 3520-A can exist, and, therefore, no penalty for failing to file such forms can be sustained.

Moreover, the Government cannot sustain its burden of proving that the Taxpayer should be treated as the owner of the Foundation. The Revenue Agent cites the " 'grantor trust rules' of IRC §§671-679" which "may operate to treat the grantor or another person as owner of all, or a portion, of a trust." The Report, however, does not set forth its analysis of how these rules might apply to the Taxpayer in this case to cause him to be regarded as the owner of a foreign trust. *See Exhibit 1.* The Taxpayer respectfully submits that the Government cannot establish that the Taxpayer constitutes the grantor of the Foundation.

> b. *Government's assertion of 3520-A Penalties is Fundamentally Inconsistent with its position in the Prior Criminal Matter*

For the government to assert now that bank accounts in question were actually held by a trust would contradict the theory upon which the government proceeded in its criminal case against the Taxpayer, United States v. Muhki, 4:14-cr-00173-AGF. In that case the government took the position that all bank accounts in question belonged to the Taxpayer and that any entity that purported to hold the accounts was a sham. The government should not now be permitted to invoke the purported existence of the Foundation as the basis for the assertion of millions and millions of dollars in penalties against the Taxpayer.

Certain reports and filings in the course of the criminal case substantiate this position and, if required, the Taxpayer will petition the Court to unseal the records for purposes of this Claim for Refund.

The Criminal Tax Manual, Section 5.01(8), interpreting *Santobello v. New York*, 404 U.S. 257 (1971), recognizes that the plea agreement is a contract between the government and the individual:

> Plea agreements are more than mere contracts, though. Because they necessarily implicate a criminal defendant's fundamental constitutional rights, and in light of the investigative and prosecutorial power of the government, the interpretation of plea agreements is subject to due process constraints to ensure that the plea bargaining defendant receives all that is due from the government.

Here, the Government and the Taxpayer agreed to treat as a sham certain foreign entities, and further agreed that the income generated by those putative entities was attributable directly to

Taxpayer. Taxpayer relied on the Government's representations and position in entering into the Plea Agreement. The Government's position binds the government, including the IRS, in future determinations concerning Taxpayer and the tax years currently at issue.

### c. The Government's assertion of Penalties Violates Taxpayer's Rights under the Eighth Amendment

Taxpayer respectfully submits that imposition of a Form 3520-A penalty of nearly $6 million would represent an unconstitutional excessive fine under the Eighth Amendment to the United States Constitution. "Excessive bail shall not be required, *nor excessive fines imposed*, nor cruel or unusual punishments inflicted." U.S.CONST. AMEND. VIII (emphasis added).  One Court recently stated that it does not believe that the Eighth Amendment applies to civil tax penalties but that if the Eighth Amendment does so apply, then penalties imposed for failure to file forms Form 3520-A could, in particular instances, be deemed excessive and unconstitutional. *See In re Wyly*, 552 B.R. 338, 602-24 (Bankr. N.D.Tex. 2016).

Additionally, the penalties are not acceptable under the Eighth Amendment because they do not meet the two-prong test, first set forth in first set forth in *Helvering v. Mtichell*, 303 U.S. 391 (1938): that (a) penalties must exist to protect revenue and (b) penalties must bear a relationship to the government's direct loss. "[T]ax penalties are remedial because they exist as "a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Dewees v. United States*, 272 F. Supp. 3d 96, 100-01 (D.C. Cir. 2019).  The penalties asserted here are arbitrary and capricious because they bear no relationship to the loss to the government.  Otherwise stated, the penalty structure violates Taxpayer's constitutional rights because the statue under which the penalties are imposed is flawed and does not comply with the requirements of *Helvering v. Mitchell*. *C.f., Timbs v. Indiana*, 139 S. Ct. 682 (2019).

### d. The Government's assertion of Penalties Violates Taxpayer's Due Process Rights under the Fifth Amendment

A $6 million penalty under the facts and circumstances of this case constitutes a deprivation of property without due process of law, in contravention of the Fifth Amendment to the Constitution.  In this case, the Government would be asking the Taxpayer to pay a huge penalty, calculated on the basis of monies that may have existed during the 2005 through 2008 timeframe but which no longer exist today because they were misappropriated by ING Bank and its personnel in 2010.  That is patently unreasonable.

### e. Reasonable Cause Exists to Excuse Taxpayer's Non-Filing of a Form 3520-A

In addition, the Taxpayer maintains that, if he had an obligation to File Form 3520-A, then his failure to have filed the form is excused by reasonable cause. "No penalty shall be imposed by this section on any failure which is shown to be due to reasonable cause and not due to willful neglect." Code §6677(d). "Whether reasonable cause exists depends upon all of the facts and circumstances of the case, including the taxpayer's reason for failing to properly file, and the extent of his efforts to comply . . . . [I]gnorance of the law may provide reasonable cause if . . . '[t]he

taxpayer was unaware of a requirement and could not reasonably be expected to know of the requirement.'" *James v. United States*, No. 8-11-cv-271-T-30AEP (M.D.Fla. August 14, 2012) (available at 2012 WL 3522610) (quoting Internal Revenue Manual). "The determination of whether a taxpayer acted with reasonable cause . . . is made on a case-by-case basis, taking into account all pertinent facts and circumstances . . . . Circumstances that may indicate reasonable cause . . . include an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including the experience, knowledge and education of the taxpayer." Treas. Reg. §1.6664-4(b)(1). In this case, the Taxpayer had no knowledge whatsoever with respect to any kind of filing or reporting obligation he might have had regarding the Foundation. The first time he ever heard of a Form 3520-A was in 2016 during the civil examination of this matter. It is not the case that he knew of the obligation and decided not to meet it. It is not the case that he knew of the obligation and erroneously determined that he did not have to comply with it. It is the case that he simply had no personal knowledge as to such an obligation.

2. The Penalty Amount was Improperly Calculated

While the Taxpayer believes, for reasons stated above, that no penalty should be imposed, the Taxpayer also wishes to point out certain errors in the calculation of the penalty that has caused the proposed penalty to be overstated. To the extent that Taxpayer's Claim for Refund on the above-stated bases is not accepted, Taxpayer respectfully requests that the amount of the penalty be recalculated to take into account the errors stated below and the assessment be abated to reflect such calculations.

*a. Penalty should be calculated based on the value of the trust after accounting for those assets that were pledged as collateral for margin loans*

The penalties were assessed based upon the value of assets owned by the alleged trust. However, for each year in question, the assets were encumbered by loans. The amount of the loans outstanding against the assets should be deducted from the value of the assets for purposes of calculating the penalties. The correct asset value is illustrated below:

|  | Total Assets Per Form 3520-A, Part III, Line 11(d) | Total Loans Against those Assets, Form 3520-A, Part III, Line 16(d) | Corrected Asset Value for Purposes of Calculating Form 3520-A Penalty |
|---|---|---|---|
| 2005 | $15,825,464 | $5,205,632 | $10,619,832 |
| 2006 | $45,642,782 | $31,437,270 | $14,205,512 |
| 2007 | $42,740,558 | $34,268,418 | $8,472,140 |
| 2008 | $9,389,920 | $11,049,096 | $0 |
| 2009 | $2,362,350 | $3,114,855 | $0 |
| 2010 | $2,452,437 | $2,437,271 | $15,166 |

The complete analysis, set forth in a spreadsheet and attached as Exhibit 2, illustrates (a) the Gross Reportable Amount as determined by the Revenue Agent and used to calculate the penalties; (b) the value of the Total Assets, as reported on Line 11(d) of Part III of each of the Forms 3520-A; (c) the amount of loans against those assets, as reported on Line 16(d) of Part III

of each of the Forms 3520-A; and (d) the Corrected Asset Value for purposes of calculating the penalties. The penalties calculation should be based on the Corrected Asset Value.

Also included in Exhibit 2, are the relevant pages from the Form 3520-A and the brokerage statement for each of the years 2005 through 2010, as support for the figures shown on the spreadsheet.

> ### b. *Penalty should be calculated based only on Taxpayer's alleged interest in the trust*

The penalty was calculated based upon the gross value of all the assets in the alleged trust. However, the Taxpayer did not contribute all the money in the alleged trust.[3] A Foreign entity, SP II, contributed 57% of the trust's assets. At most, therefore, the Taxpayer should be treated as the owner of only 43% of the trust, and the penalty calculation should be adjusted accordingly.

---

[3] The Revenue Agent's Report identified $9,729,249 as going into the Foundation. Of that amount, the Revenue Agent's Report determined that Sukhmani Partners II Ltd, a British Virgin Islands entity, contributed $5,577,465.