UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RAJU J. MUKHI,                                    )
                                                  )
        Plaintiff,                                )
                                                  )   Case No. 4:22-cv-00280
v.                                                )
                                                  )
UNITED STATES OF AMERICA,                         )
                                                  )
        Defendant.                                )

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiff Raju J. Mukhi ("Plaintiff"), by and through his undersigned counsel, submits the following Memorandum in Opposition to Defendant United States of America's ("Defendant") Motion to Dismiss ("Motion").

## I.    INTRODUCTION

Relying on the doctrine of abstention articulated in *Colorado River*, Defendant asks this Court to deny Plaintiff his *statutory right* to a private action for tax refund and abatement, including his *right to a jury trial*, and force him to attempt to litigate his claims in Tax Court. However, Defendant's Motion misses the mark because the doctrine of abstention does not apply for several reasons. First, this proceeding and the Tax Court proceeding are based on separate statutory rights, each triggered by a decision of the Internal Revenue Service ("IRS") and, thus, they are not parallel proceedings under *Colorado River*, second, even if this proceeding and the Tax Court proceeding are parallel, this matter was filed first and takes precedence under the First-Filed Rule, and, finally, dismissing this case does not preserve Plaintiff's choice of forum, rather it deprives him of the right to a jury trial and judicial review in this Court.

1

In addition, Defendant asks this Court to dismiss eighteen (18) of Plaintiff's twenty (22) counts based on *Flora*, two Supreme Court decisions issued over sixty years ago, because Plaintiff made partial payments on certain claims for refund prior to filing this matter. *Flora v. United States*, 357 U.S. 63 (1958), aff'd on rehearing, 362 U.S. 145 (1960). However, Plaintiff's claims should be deemed "divisible," and thus an exception to the Full-Payment Rule articulated in the *Flora* decisions, because the IRS made a single determination as to Plaintiff's liability for Form 5471, Form 3520, and Form 3520-A penalties and applied that determination to multiple tax years. Under this exception to *Flora*, Plaintiff may pay the full amount on one transaction, sue for a refund for that transaction, and have the outcome of this suit determine his liability for all the other similar transactions. *See, e.g, Flora,* 362 U.S. at 175-78, n.38.

Moreover, even if Plaintiff's claims are not divisible, which they are, the Full-Payment Rule does not apply because, first, the Eighth Circuit has not decided whether the *Flora* rule applies to the tax penalties assessed against Plaintiff as the penalties did not exist at the time the *Flora* decisions were issued and, second, the Full-Payment Rule bars access to the Courts for those, like Plaintiff, who are unable to make full payment for all assessed penalties prior to seeking judicial review, which violates Plaintiff's due process rights.

For these reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion.

## II.  **FACTS RELEVANT TO DEFENDANT'S MOTION**[1]

In September 2017, after the IRS conducted a single examination, it assessed Form 5471,

Form 3520, and Form 3520-A penalties against Plaintiff, pursuant to 26 U.S. Code §§ 6038 and

6677. *See generally* Exhibit B to the Complaint, ECF 1-2. Based on this one examination, the

IRS reached a single conclusion for each set of penalties and applied that conclusion to multiple

tax years. *Id*. For example, based on the same set of facts, the IRS concluded that Plaintiff

should be assessed Form 3520 penalties and applied that conclusion uniformly to tax years

2005-2008. *Id*., 1-2, p. 11. This is apparent from Lead Sheets provided by the IRS to Plaintiff

as part of its assessments. *See* screenshot below.

| Taxpayer Name: | Mukhi, Raju | | Examiner: | Serangeli, Joyce |
| TIN: | ▓▓▓▓-8618 | | | |
| Tax Form: | 1040 | | Date: | 10/21/16; 07/11/17 |
| Tax Year (s): | 200312, 200412, 200512, 200612, 200712, 200812, 200912, 201012 | | | |

| Form 3520 Penalty Issue Lead Sheet | | | | |
| --- | --- | --- | --- | --- |
| Tax Period | Per Return | Per Exam | Adjustment | Reference |
| 200512 | 0.00 | 1,639,975.00 | 1,639,975.00 | |
| 200612 | 0.00 | 991,148.00 | 991,148.00 | |
| 200712 | 0.00 | 798,624.00 | 798,624.00 | |
| 200812 | 0.00 | 1,649,702.00 | 1,649,702.00 | |

Conclusion:
The Service has determined that failure to report distributions and contributions apply under § 6048 and § 6677(a).

*Id*. The IRS followed the same process in making its assessment of Form 5471 and Form 3520-

A penalties. In short, the IRS engaged in a single examination and reached one conclusion,

which was applied over twelve tax years. The IRS did not, for example, conduct independent

---

[1] Plaintiff disputes the accuracy of Defendant's recitation of facts underlying the IRS's penalty assessments against him, especially with respect to the nature of his business dealings and entities with which he was affiliated. However, to the best of Plaintiff's understanding, those facts are not germane to this Motion. To the extent the Court believes those facts are relevant, Plaintiff respectfully requests the opportunity to file a supplemental brief on this subject.

examinations of each tax year before it assessed penalties. Rather, at all times, the IRS presented its findings as the result of a single investigation. *Id*.

Following the assessments, the IRS began efforts to collect the penalties and Plaintiff requested a post-assessment appeal of the penalties. On July 9, 2018, while Plaintiff's post-assessment administrative appeal of the penalties was still outstanding, the IRS issued a Final Notice of Intent to Levy. Thereafter, on November 14, 2018, the IRS issued a Notice of Federal Tax Lien and subsequently sent notice of the same to Plaintiff. Both a Final Notice of Intent to Levy and a Notice of Federal Tax Lien give a taxpayer a statutory right to request a Collection Due Process (CDP) Hearing, which is an administrative process to review the actions of IRS Collection. In response to the IRS's collection efforts, Plaintiff timely submitted two CDP Hearing Requests on July 13, 2018, and January 3, 2019, respectively. The CDP Hearing Requests challenged the assessment of penalties and requested that the IRS Independent Office of Appeals consider collection alternatives other than liens and levies. But for the IRS's decision to begin collection activity, plaintiff would not have had a right to a CDP Hearing. At the point at which the IRS engaged in specific collection activity (i.e., issuing a Final Notice of Intent to Levy or filing a Lien), Plaintiff had to exercise his right to request a CDP Hearing *or lose the right forever*. Thus, it was the IRS's actions that triggered the CDP Hearing.

Between June 6, 2019 and February 2022, the IRS Independent Office of Appeals conducted the CDP Hearing through various meetings and telephone calls. On April 1, 2020, while the CDP Hearing process was ongoing, Plaintiff submitted "Forms 843, Claim for Refund/Request for Abatement for the IRS Claims for Refund and Request for Abatement," along with payments to be applied toward the penalties. See Complaint, ¶¶ 9 and 14. At any point after assessment (September 2017), Plaintiff had a right to pay and file a Claim for Refund

4

and Abatement, giving basis to his statutory right to file a refund suit. He chose to pay and file in April 2020 and his right to sue arose six months after - notwithstanding the IRS's collection actions. *See* 26 U.S.C. § 6532(a).

On March 8, 2022, over six (6) months following Plaintiff's submission of his claims for refund, Plaintiff filed his Complaint for Refund and Abatement against Defendant. See ECF 1. The Complaint seeks a tax refund under Section 7422 of the Internal Revenue Code ("IRC") (26 U.S.C. § 7422) or the recovery of federal income tax erroneously or illegally assessed and collected by Defendant, together with interest assessed on this amount and collected from Plaintiff. ECF 1, ¶ 1. Importantly, Plaintiff is *statutorily required* to litigate the claims for refund and abatement in the United States District Court or Court of Federal Claims. *See* 28 U.S.C. § 1346 ("The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of…[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws…") and Internal Revenue Manual 34.5.2.2 (12-21-2012) ("A taxpayer must file a suit for refund of taxes paid in the U.S. district court where the taxpayer resides (or where a corporation has its principal place of business), or in the Court of Federal Claims.").

On February 9, 2022, the IRS Independent Office of Appeals issued a Notice of Determination, closing the CDP Hearing, for the taxable years ending December 31, 2002 through December 31, 2013. In order to preserve his rights to an appeal of the CDP Hearing, Plaintiff was required to file a tax court petition within thirty (30) days. *See* 26 U.S.C. § 6330(d)(1). On March 9, 2022, Plaintiff filed a Petition for Lien and Levy Action Under Code

Sections 6320(c) and 6630(d) ("Tax Court Proceeding"). See the Tax Court Petition, ECF 11-

3, submitted by Defendant. In the petition, Plaintiff alleged that the Commissioner of Internal

Revenue ("Respondent") erred in issuing a deficient Notice of Determination, erred in

sustaining the Notice of Intent to Levy, and erred in determining that the Federal Tax Lien was

appropriately issued. Plaintiff is *statutorily required* to litigate his claims for improper lien and

levy actions by Respondent in the United States Tax Court. *See* 26 U.S.C. §§ 6320 and 6330.

### III.   ARGUMENT

### A.   The Court should not abstain from hearing this case.

> i.   This proceeding and the Tax Court Proceeding are not parallel proceedings because each is based on a separate statutory right, which are required to be litigated in different forums.

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction

given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817

(1976). "This obligation does not evaporate simply because there is a pending state court action

involving the same subject matter. Nor does the potential for conflict justify the staying of the

exercise of federal jurisdiction." *Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coops.,

Inc.*, 48 F.3d 294, 297 (8th Cir. 1995) (internal citations omitted) (emphasis added).

This jurisdictional mandate prohibits abstention under *Colorado River* unless there is *a

parallel court proceeding*. *Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 544

(8th Cir. 2009). "The prevailing view is that state and federal proceedings are parallel for

purposes of *Colorado River* abstention when substantially similar parties are litigating

substantially similar issues in both state and federal court." *Id*. at 535. However, the Eighth

Circuit "requires more precision." *Id*. Specifically, to be parallel proceedings:

> The **pendency of a [separate] claim based on the same general facts or
> subject matter as a federal claim and involving the same parties is not alone**

6

> **sufficient.** Rather, a substantial similarity must exist between the [separate] and federal proceedings, which similarity occurs when there is **a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court. This analysis focuses on matters as they currently exist, not as they could be modified.** Moreover, in keeping with the Supreme Court's charge to abstain in limited instances only, **jurisdiction must be exercised if there is any doubt as to the parallel nature of the [separate] and federal proceedings.**

*Id*. (internal citations omitted) (emphasis added). When evaluating parallelism, the Eighth Circuit also "compare[s] the 'sources of law, required evidentiary showings, measures of damages, and treatment on appeal' for each claim." *Cottrell v. Duke*, 737 F.3d 1238, 1245 (8th Cir. 2013) (quoting *Fru-Con*, 574 F.3d at 536).

Defendant urges the Court to follow the precedent of *Ritchie Cap. Mgmt., L.L.C. v. BMO Harris Bank, N.A.* However, *Ritchie* bears little relationship to the procedural or factual posture of this matter. In *Ritchie*, the U.S. District Court for the District of Minnesota, sitting in diversity, considered whether it should hear plaintiff's New York common law claims for fraud and misrepresentation, aiding and abetting fraud, and civil conspiracy against defendant, a bank, which allegedly participated in a Ponzi scheme. *Ritchie Cap. Mgmt., L.L.C. v. BMO Harris Bank, N.A*, 868 F.3d 661, 663 (8th Cir. 2017). Six years prior to filing its common law claims against defendant, plaintiff filed proofs of claim in the bankruptcy proceeding against the company perpetrating the Ponzi scheme and which allegedly deposited its funds with defendant. *Id*. In the bankruptcy proceeding, the bankruptcy trustee instituted adverse proceedings against plaintiff to disallow its claims because it was aware of and allegedly participated in the Ponzi scheme. *Id*. At the time plaintiff filed its common law claims in New York, the bankruptcy and adverse proceedings were still ongoing and, unlike this case, plaintiff had no independent statutory right to pursue its claims against defendant in a separate forum. *Id*. As such, the District Court determined that the common law issues in both cases rendered them "sufficiently

aligned" to warrant abstention by the federal district court to allow the bankruptcy matter to proceed to conclusion. *Id*. at 664. The Eighth Circuit agreed but found that the court should have stayed the case rather than dismiss the plaintiff's claims. *Id*. at 665-666.

Here, this action was filed pursuant to Plaintiff's statutory right under 28 U.S.C. § 1346. Likewise, the Tax Court Proceeding was filed pursuant to Plaintiff's statutory rights under 26 U.S.C. §§ 6620 and 6330. As such the questions faced by this Court and the questions faced by the Tax Court, while related, are independent inquires. In this proceeding, the trier of fact will consider whether the IRS assessments were erroneous and whether Plaintiff is owed a refund and abatement. The Tax Court, on the other hand, is charged with reviewing the procedures and determinations of IRS Independent Office of Appeals, which in this case happens to include consideration of the penalties. Plaintiff acknowledges that it has raised similar defenses to the IRS's assessments in the Tax Court Proceeding to those raised in this proceeding, but Plaintiff was required to raise those defenses in order to preserve those issues. Thus, while it is *possible* the Tax Court may address the merits of the IRS's assessments against Plaintiff, *this Court* is the only one which can, with certainty, dispose of all claims as they currently exist. *See Fru-Con,* 574 F.3d at 535. And, unlike the plaintiff in *Ritchie* or any other case cited by Defendant, *Plaintiff is* statutorily *required* to litigate his claims in two separate forums.

Moreover, for reasons more fully discussed in section iii below, it is improper for this Court to determine this is a parallel proceeding and apply the abstention doctrine when the IRS initiates collection activity, triggering a CDP Hearing and subsequent Tax Court proceeding, resulting in the deprivation of a taxpayer's statutory right to litigate a claim for refund in the District Court. Thus, this proceeding and the Tax Court Proceeding are not parallel proceedings as each is based on a separate statutory right requiring the claims to be litigated in separate

8

forums and, therefore, *Colorado River* abstention does not apply. For these reasons, Plaintiff respectfully requests that the Court deny the Motion.

ii.   Even if the Court determines this proceeding and the Tax Court Proceeding are parallel, it should apply the First-Filed Rule and allow this case to proceed.

The well-established rule is that in cases of concurrent jurisdiction, "the first court in which jurisdiction attaches has priority to consider the case." *Orthmann v. Apple River Campground Inc.*, 765 F.2d 119, 121 (8th Cir.1985). "The rule is not intended to be rigid, mechanical, or inflexible but is to be applied in a manner best serving the interests of justice." *Id*. The prevailing standard is that the First-Filed Rule should apply in the absence of compelling circumstances. See *RK Dixon Co. v. Dealer Mktg. Servs., Inc.*, 284 F.Supp.2d 1204, 1213–14 (S.D.Iowa 2003). The Eighth Circuit does not subscribe to a firm list of factors constituting compelling circumstances, but in *Northwest Airlines, Inc. v. American Airlines, Inc.*, it identified two "red flags" that serve as compelling circumstances: (1) when the plaintiff filing the first case had notice of an imminent lawsuit and (2) when the first-filed action seeks declaratory judgment. 989 F.2d 1002, 1006 (8th Cir. 1993).

Here, no "red flags" suggest compelling circumstances as to why this proceeding should not take precedence over the Tax Court Proceeding. This matter was filed on March 8, 2022 and does not seek declaratory relief. Plaintiff filed the Tax Court Proceeding the following day, on March 9, 2022, because Plaintiff was *required* to file his petition within thirty (30) days of the Notice of Determination. Moreover, and contrary to Defendant's argument, Plaintiff has not been litigating the merits of the IRS's assessment for two and half years. Rather, as a result of the IRS's decision to issue a Final Notice of Intent to Levy and Notice of Federal Tax Lien, Plaintiff filed two Requests for a CDP Hearing. Thereafter, the CDP Hearing – a completely administrative proceeding – focused primarily on the IRS's collection activity. Thus, the notion

9

that the parties have been in a prolonged litigation over the merits of the IRS's assessments is simply not true.

Therefore, even if the Court determines this proceeding and the Tax Court Proceeding are parallel, it should apply the First-Filed Rule and allow this case to proceed. For these reasons, Plaintiff respectfully requests that the Court deny the Motion.

    iii.   <u>Dismissing this case does not promote Plaintiff's choice of forum.</u>

The United States District Court for the Eastern District of Missouri is Plaintiff's choice of forum. This case was not filed by accident. Inexplicably, in its Motion, Defendant claims that by dismissing this case, the Court would preserve Plaintiff's choice of forum because Plaintiff can simply refile this case when, and if, the IRS ever formally denies his claim for refund and abatement. But Plaintiff *does not* have to wait. *See* 26 U.S.C. § 6532(a) (taxpayer may bring refund suit if IRS does not issue a decision on taxpayer's administrative claim for refund). On the contrary, Plaintiff has a right to litigate the issues in the District Court immediately. Defendant does not dispute that Plaintiff satisfied the necessary administrative process prior to filing this lawsuit or that he failed to wait six months from the date he filed his request for refund and abatement. Here, the IRS's inaction in not accepting or rejecting Plaintiff's claim for refund and abatement is not grounds to deny Plaintiff a right to pursue relief in this Court.

Moreover, if the Defendant is concerned about the expenditure of government resources, as it claims in the Motion, then the IRS should have waited to begin collection proceedings until after a determination on the merits of its assessments. But for the IRS's decision to begin collection activities against Plaintiff, the parties would not be in the current procedural posture. Now, Defendant seeks to benefit from the IRS's rush to begin collection proceedings and

prevent Plaintiff from exercising his right to seek a refund and abatement. Furthermore, Defendant, by coordinating with IRS counsel, is free to seek a stay of the Tax Court Proceeding, which Plaintiff would not oppose. This would address Defendant's concern for judicial economy *and* preserve Plaintiff's choice of forum.

Therefore, dismissing this case does not promote Plaintiff's choice of forum – just the opposite. For these reasons, Plaintiff respectfully requests the Court deny the Motion.

**B.  <u>The Full Payment Rule does not apply to this case.</u>**

i.  <u>Plaintiff's claims are divisible, an exception to the Full Payment Rule.</u>

"If an assessment or penalty is merely the sum of several independent assessments triggered by separate transactions, it is considered 'divisible' such that the taxpayer may pay the full amount on one transaction, sue for a refund for that transaction, and have the outcome of this suit determine his liability for all the other, similar transactions." *Diversified Grp. Inc. v. United States*, 841 F.3d 975, 981–82 (Fed. Cir. 2016) (internal citations and quotations omitted). "This observation forms the basis for what courts have recognized as the 'divisibility exception' to *Flora's* full payment rule." *Id*. For example, the Eighth Circuit has recognized that employment taxes are divisible. *Steele v. United States*, 280 F.2d 89, 91 (8th Cir. 1960) ("Thus, the officers would be legally entitled to make payment of the amount of the penalty applicable to the withheld taxes of any individual employee, to make claim for refund, and to institute suit for recovery, ***as a means of settling the question of the right of the Government to have made penalty assessment against them personally in the circumstances of the situation.***") (emphasis added).

Here, the IRS's assessments were "merely the sum of several independent assessments triggered by separate transactions." *See Diversified Grp. Inc.,* 841 F.3d at 981. The IRS

conducted one examination and reached one conclusion when assessing Form 5471, Form 3520, and Form 3520-A penalties against Plaintiff. That conclusion was then applied, or divided, by the IRS into penalties for individual tax years. This is evident from the face of the IRS's assessments and Lead Sheets. Similar to the taxpayer in in *Steele*, Plaintiff fully paid the penalty for a Form 5471 and a penalty for Form 3520-A[2] as a means of settling the question of the right of the Defendant to make the same penalty assessments against him in other years based on the IRS's singular conclusion with respect to those penalties. *Steele*, 280 F.2d at 91. As a result, this Court should treat penalties assessed against Plaintiff as divisible *because that is how the IRS treated them when conducting its examination, making its determination, and sending Plaintiff its assessments collectively.*

For these reasons, Plaintiff respectfully requests the Court deny the Motion.[3]

    ii.    <u>The Eighth Circuit has not decided that the Full Payment Rule applies to the penalties assessed against Plaintiff.</u>

When the Full Payment Rule was adopted in 1960, neither Congress nor the Court could have contemplated the large number of assessable penalties that exist today and the magnitude of the penalties. In fact, the penalties assessed against Plaintiff did not exist at the time *Flora* was decided. See 26 U.S.C. § 6038, enacted later in 1960, and 26 U.S.C. § 6677, enacted in 1962.

---

[2] The IRS's assessment of Form 3520 and Form 3520-A penalties against Plaintiff was based on the same conclusion.

[3] Even if the Court determines the Full Payment Rule applies, it should not dismiss his claims because Plaintiff made partial payments. Rather, the Court should limit Plaintiff's the recovery to the amounts he paid. *See Gaynor v. United States*, 150 Fed. Cl. 519, 532 (2020) ("In other words, at times, a tax refund plaintiff, such as Mr. Gaynor, may successfully satisfy the 'full payment rule even if outstanding amounts of taxes or penalties remain owed – provided that the plaintiff only seeks recovery of that portion actually paid "in full.'").

When it affirmed its decision on rehearing, the Supreme Court referred to "a vexing situation--statutory language which is inconclusive and legislative history which is irrelevant." *Flora v. United States*, 362 U.S. 145, 152 (1960). However, the Court looked to "additional factors" that were "dispositive" for direction on how to proceed. *Id*. at 157. Among these factors were Congress's creation of the Board of Tax Appeals (the Tax Court's predecessor) and the concomitant enactment of the Declaratory Judgment Act resulting in a "system in which there is one tribunal for prepayment litigation and another for post-payment litigation, with no room contemplated for a hybrid" regime, where the same tax could be litigated in both tribunals. *Id*. at 163. The Court called this "the harmony of our carefully structured... system of tax litigation..." *Id*. at 176. However, when the jurisdictional statute was enacted in 1954, the Internal Revenue Code consisted of *three* assessable penalties. Public L. 95–628, NOVEMBER 10, 1978. Today, by contrast, Subchapter B of Chapter 68 contains approximately fifty (50) different civil assessable penalties. *See generally* 26 U.S.C. §§6671-6720C.

As a result, Congress could not have intended for the Full Payment Rule to apply to civil assessable penalties *which did not exist when the jurisdictional statute was enacted*. Furthermore, the Eighth Circuit *has made no determination* that the Full Payment Rule applies to the penalties assessed against Plaintiff. It is well within this Court's purview to consider whether the Full Payment Rule should not apply to this case.

For these reasons, Plaintiff respectfully requests the Court deny the Motion.

  iii.    The Full Payment Rule violates Plaintiff's access to the Courts.

"Under that well-settled and strong presumption [favoring judicial review of administrative action], when a statutory provision is reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic

13

principles: that executive determinations generally are subject to judicial review." *Guerrero-Lasprilla v. Barr*, 206 L. Ed. 2d 271, 140 S. Ct. 1062, 1069 (2020) (internal citations and quotations omitted). In the absence of an express statutory prohibition, the agency "bears the heavy burden of overcoming the strong presumption that Congress did not mean to prohibit all judicial review of [the Agency's] decision." *Dunlop v. Bachowski*, 421 U.S. 560, 567 (1975). Because of this presumption, 28 U.S.C. 1346(a) should not be interpreted to bar a District Court's jurisdiction if doing so would result in an assessment being judicially unreviewable.

Due process requires access to the Courts. Fifth Amendment due process jurisprudence requires that the core requirement is meaningful review – both in time and in manner. "'Due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy*, 367 U. S. 886, 895 (1961). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (citing *Morrissey v. Brewer,* 408 U. S. 471, 481 (1972)). However, in practice, taxpayers who cannot pay the assessable penalties lose access to the Courts under 28 U.S.C. 1346(a). In 2000, U.S. Tax Court Judge Howard Dowson summarized the situation as follows:

> It is unfortunate and unfair that a taxpayer's financial condition is an important aspect of forum selection. It is obviously inequitable to have a procedure where the doors of certain courts are open to those with the financial resources to pay their putative tax liability in advance and closed to those who cannot raise the money required. This is an aberration in the system that is indefensible. . .

Howard Dawson, Should the Federal Civil Tax Litigation System Be Restructured?, 40 TAX NOTES 1427 (2000).

Here, it is undisputed that Plaintiff has no practical ability to pay the assessed penalties against him.[4] However, the ability to pay (or lack thereof) cannot bar Plaintiff from this forum and the right to a jury trial on the merits because doing so would violate Plaintiff's due process rights.

For these reasons, Plaintiff respectfully requests the Court deny the Motion.

## IV.   CONCLUSION AND REQUEST FOR ORAL ARGUMENT

For the forgoing reasons, Plaintiff respectfully requests the Court deny Defendant's Motion. To the extent the Court is inclined toward abstention, Plaintiff requests the Court stay, not dismiss, this action.

Given the procedural history and novel legal issues, Plaintiff respectfully requests oral argument on Defendant's Motion.

Respectfully submitted,

**CAPES, SOKOL, GOODMAN
& SARACHAN, P.C.**

By: */s/ Sanford J. Boxerman*
       Sanford J. Boxerman #34736MO
       Michelle Feit Schwerin #62882MO
       Andrew W. Blackwell #64734MO
       8182 Maryland Ave, Fifteenth Floor
       St. Louis, MO  63105
       Telephone: (314) 721-7701
       Facsimile: (314) 721-0554
       boxerman@capessokol.com
       schwerin@capessokol.com
       blackwell@capessokol.com

*Attorneys for Plaintiff Raju J. Mukhi*

---

[4] The penalties assessed against Plaintiff before interest totaled approximately $11,119,868.00. In rejecting Plaintiff's Offer in Compromise, the IRS determined Plaintiff's total net worth at $5,765,448. See Exhibit A, Appeals Offer in Compromise Rejection Memorandum dated November 17, 2021, p. 4 "Taxpayer Equity." The IRS itself recognizes that Plaintiff has no ability to pay the penalties in full prior to filing a claim for refund.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was served by filing a copy of the same with the Court's electronic filing system this 11th day of October, 2022.

 _/s/ Sandford J. Boxerman_____